UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------  x
JOHN R. WALCOTT, FRANK                              :
MAISANO, and MARY E. BISHOP,                        :
                                                    :
            Plaintiffs,                             :        07 CIV 7072 (AKH)
                                                    :
            v.                                      :
                                                    :
WTC CAPTIVE INSURANCE                               :        DEFENDANTS' MEMORANDUM OF
COMPANY, INC.; CHRISTINE                            :        LAW IN SUPPORT OF
LASALA; THE HONORABLE                               :        MOTION TO DISMISS FOR
MICHAEL BLOOMBERG; MARSH                            :        FAILURE TO STATE A CLAIM
MANAGEMENT SERVICES, INC.;                          :
GAB ROBINS NORTH AMERICA,                           :
INC.; MARK PAGE; LEWIS                              :
FINKELMAN; JEFFREY                                  :
FRIEDLANDER; MEREDITH JONES;                        :
MARK MELSON; JAMES                                  :
SCHOENBECK; and KENNETH                             :
BECKER, ESQUIRE,                                    :
                                                    :
            Defendants.                             :
--------------------------------------------------  x
```

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 3

    A.    The Federal Funding of the WTCC to Defend and Indemnify the City and Its Contractors ................................................................................................. 3

    B.    The Creation of the WTCC to Defend and Indemnify the City and Its Contractors ................................................................................................. 5

    C.    The WTCC's Defense of Tort Suits Against the City and Its Contractors ........... 7

    D.    The Defendants in This Action ................................................................................. 8

LEGAL STANDARD ............................................................................................................. 8

ARGUMENT ...................................................................................................................... 9

I.    ALL DEFENDANTS EXCEPT THE WTCC ENJOY STATUTORY IMMUNITY FROM PLAINTIFFS' STATE LAW CLAIMS ................................... 9

II.    THE COMPLAINT'S FIRST CAUSE OF ACTION FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY ................................................... 11

    A.    The Complaint Fails to Plead Any Facts Supporting the Existence of Any Fiduciary Duty ................................................................................................. 12

    B.    The WTCC Owes Plaintiffs No Duty ................................................................. 13

    C.    The Individual Defendants Owe No Duties to the Plaintiffs ............................... 14

III.    THE COMPLAINT'S SECOND CAUSE OF ACTION FOR DECLARATORY AND ANCILLARY RELIEF FAILS TO STATE A CLAIM ................................... 15

    A.    Alleged Violation of and Relief Sought under Federal Law ............................... 15

        1.    Public Law No. 108-7 ................................................................................. 15

        2.    FEMA Grant Agreement ............................................................................. 18

    B.    Alleged Violations of and Relief Sought under New York Law ......................... 20

        1.    Insurance Law Section 2601 ...................................................................... 20

        2.    Insurance Law Section 7003(c)(5) ............................................................ 20

        3.    Request to Remove WTCC Directors and Officers Law for Alleged Wasting and Depletion of WTCC Funds and Request to Recover Such Funds ................................................................................. 22

        4.    Alleged Breach of WTCC "Corporate Charter," Bylaws, and Policy by Defending Against Rather than Paying Plaintiffs' Claims ...... 24

**TABLE OF CONTENTS**
(continued)

Page

IV.   THE COMPLAINT'S THIRD (FOIL) AND FOURTH (OML) CAUSES OF
      ACTION FAIL TO STATE A CLAIM ................................................................ 25

      A.    Plaintiffs' FOIL Claim Should Be Dismissed ................................... 25

      B.    Plaintiffs' OML Cause of Action Fails to State a Claim ..................... 28

V.    THE COMPLAINT'S FIFTH (REPLEVIN) AND SIXTH (CONVERSION)
      CAUSES OF ACTION FAIL TO STATE A CLAIM ...................................... 29

      A.    The Conversion Claim Must Be Dismissed ........................................ 30

            1.    Plaintiffs Have No Right to Possess the WTCC's Funds | .................... 31

            2.    Plaintiffs Have Identified No Specific Property | ................................. 31

      B.    The Replevin Claim Also Must Be Dismissed | ................................. 32

CONCLUSION ................................................................................................... 33

## TABLE OF AUTHORITIES

Page

**Cases**

*Affordable Hous. Found. v. Silva*, 469 F.3d 219, 251–252 (2d Cir. 2006) ................................. 15

*Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F. Supp. 579, 585 (S.D.N.Y. 1989) ........ 15

*Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) ........................................................... 18

*Attick v. Valeria Assocs.*, 835 F. Supp. 103, 111–112 (S.D.N.Y. 1992) .................................. 12

*Austin v. Wauful*, 13 N.Y.S. 184, 185 (Sup. Ct. 1891) ..................................................... 36

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–1965 (2007) ................................... 10, 14

*Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) ........................................ 18

*BHC Interim Funding L.P. v. Finantra Capital, Inc.*, 283 F. Supp. 2d 968, 989–990 (S.D.N.Y. 2003) ...................................................................................................................... 15

*Brown v. AXA Re*, No. 02 Civ. 10138, 2004 U.S. Dist. LEXIS 7624, at *12, 2004 WL 941959, at *4 (S.D.N.Y. May 4, 2004) ............................................................................................ 21

*Cerro v. Town of Kingsburg*, 250 A.D.2d 978, 980, 672 N.Y.S.2d 953, 956 (3d Dep't 1998) .... 29

*Certain Underwriters at Lloyd's v. Plasmanet Inc.*, No. 01 Civ. 6023, 2002 U.S. Dist. LEXIS 14190, at *9, 2002 WL 1788020, at *3 (S.D.N.Y. Aug. 1, 2002) ...................................... 23

*Cf. Perez v. City of New York*, 41 A.D.3d 378, 837 N.Y.S.2d 571 (1st Dep't 2007) .................. 11

*Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000) ............. 35

*Compania Sud-Americana de Vapores v. IBJ Schroder Bank & Trust Co.*, 785 F. Supp. 411, 426 (S.D.N.Y. 1992) ............................................................................................................ 13

*DeCorse v. City of Buffalo*, 239 A.D.2d 949, 950, 659 N.Y.S.2d 604, 605 (4th Dep't 1997) ..... 28

*ECC v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 243 (2d Cir. 1997) ........................ 13

*Farey-Jones v. Buckingham*, 132 F. Supp. 2d 92, 106 (E.D.N.Y. 2001) ................................. 35

*Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) (internal .................................................................................... 34

*Guardians Ass'n v. Civil Serv. Comm'n of City of N.Y.*, 463 U.S. 582, 603 n.24 (1983) ........... 20

*Hayes v. Gibbs*, 111 Misc. 2d 1062, 1063, 445 N.Y.S.2d 910, 911 (Sup. Ct. Albany Co. 1981) 31

*HBL Indus. v. Chase Manhattan Bank*, No. 81 Civ. 4242, 1985 U.S. Dist. LEXIS 23608, at *13 (S.D.N.Y. Jan. 8, 1985) ................................................................................................ 21

*Health Care Plan, Inc. v. Aetna Life Ins. Co.*, 966 F.2d 738, 743 (2d Cir. 1992) ..................... 17

*Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp. 2d 208, 214 (S.D.N.Y. 2002) ............... 16

*In re African-American Slave Descendants Litig.*, 375 F. Supp. 2d 721, 768 (N.D. Ill. 2005) .... 37

*In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005) ........................................................ 7

*Isik Jewelry v. Mars Media, Inc.*, 418 F. Supp. 2d 112, 125 (E.D.N.Y. 2005) ......................... 34

*Jackson Nat'l Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 204–205 (S.D.N.Y. 1996) ................ 16

*John Paul Mitchell Sys. v. Quality King Distribs.*, 106 F. Supp. 2d 462, 478 (S.D.N.Y. 2000) .. 36

*Kirkland v. Am. Title Ins. Co.*, 692 F. Supp. 153, 156–157 (E.D.N.Y. 1988) ............................ 14

*Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 353, 787 N.Y.S.2d 211, 213 (2004) ..................... 15, 35

*Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 707 (2d Cir. 1998) ........................................... 13

*Louisiana Landmarks Soc'y v. City of New Orleans*, 85 F.3d 1119, 1125 (5th Cir. 1996) .......... 19

*Mair v. City of Albany*, 303 F. Supp. 2d 237, 246 (N.D.N.Y. 2004) ...................................... 20

*Mars v. Flatiron Servs., Inc.*, 34 Misc. 2d 579, 580, 226 N.Y.S.2d 247, 249 (City Ct. 1962) ..... 14

*Martha Graham Sch. & Dance Found. v. Martha Graham Ctr. of Contemporary Dance*, 224 F. Supp. 2d 567, 603 (S.D.N.Y. 2002) .............................................................................. 36

*McGrif v. Bratton*, 293 A.D.2d 401, 402, 740 N.Y.S.2d 342, 343 (1st Dep't 2002) ................... 29

*Nguyen v. United States Catholic Conference*, 719 F.2d 52, 55 (3rd Cir. 1983) ...................... 19

## TABLE OF AUTHORITIES
(continued)

**Page**

*Pena v. Robles*, 12 Misc. 3d 1163A, 819 N.Y.S.2d 211, at *13 (Sup. Ct. N.Y. Co. 2006).......... 31

*People ex rel. Elkind v. Rosenblum*, 184 Misc. 916, 921, 54 N.Y.S.2d 295, 300 ....................... 11

*Perez v. City Univ. of N.Y.*, 5 N.Y.3d at 528, 806 N.Y.S.2d at 463............................................. 32

*Petrello v. White*, 412 F. Supp. 2d 215, 224 (E.D.N.Y. 2006) ...................................................... 13

*Putnam Realty Corp. v. Chubb Custom Ins. Co.*, 14 A.D.3d 310, 312, 788 N.Y.S.2d 64, 66 (1st
   Dep't 2005)............................................................................................................................. 23

*Regions Bank v. Wieder & Mastroianni, P.C.,* 423 F. Supp. 2d 265, 270 (S.D.N.Y. 2006) ........ 12

*Regions Bank*, 423 F. Supp. 2d at 270 .......................................................................... 13, 33, 35

*Reubens v. Murray*, 194 A.D.2d 492, 599 N.Y.S.2d 580 (1st Dep't 1993)................................. 29

*Rocanova v. Equitable Life Assur. Soc'y*, 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 343 (1994) . 22

*Roth v. Jennings*, 489 F.3d 499, 2007 U.S. App. LEXIS 13035, at *25–26 (2d Cir. 2007)........... 9

*Rozsa v. May Davis Group, Inc.,* 152 F. Supp. 2d 526, 534 (S.D.N.Y. 2001) ............................ 34

*Rumore v. Bd. of Educ.*, 35 A.D.3d 1178, 1180, 826 N.Y.S.2d 545, 546 (4th Dep't 2006)......... 30

*Russo v. Nassau County Cmty. Coll.*, 81 N.Y.2d 690, 697, 603 N.Y.S.2d 294, 297 (1993) ........ 32

*Salzman v. Holiday Inns, Inc.*, 48 A.D.2d 258, 369 N.Y.S.2d 238 (4th Dep't 1975)................... 21

*Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 633–634; 543 N.Y.S.2d 18, 20 (1989)..... 25

*Simon v. Weaver*, 327 F. Supp. 2d 258, 262 (S.D.N.Y. 2004)...................................................... 34

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) ....................... 9

*Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979) ........................................................ 18

*Traffix, Inc. v. Herold,*  269 F. Supp. 2d at 228 ........................................................................... 35

*Traffix, Inc. v. Herold*, 269 F. Supp. 2d 223, 228 (S.D.N.Y. 2003) ............................................. 33

*Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1473 (S.D.N.Y. 1992) ..................................... 37

*Van Steenburg v. Thomas*, 242 A.D.2d. 802, 661 N.Y.S.2d 317 (3d Dep't 1997)....................... 29

*Westchester v. New York*, 286 F.3d 150, 153 (2d Cir. 2002)....................................................... 17

**Statutes**

117 Stat. 517, 518 ........................................................................................................................ 17

21 N.Y.C.R.R. 1401.7(c) .............................................................................................................. 26

N.Y. Not-For-Profit Corp. Law § 714 .......................................................................................... 23

N.Y. Ins. Law § 3420 .................................................................................................................... 31

N.Y. Ins. Law § 7002(a) ................................................................................................................. 5

N.Y. Ins. Law § 7003(a)(1)............................................................................................................. 5

N.Y. Ins. Law § 7003(c)(5)........................................................................................................... 21

N.Y. Ins. Law § 7005(a)(3) ........................................................................................................... 10

N.Y. Ins. Law § 7008 .................................................................................................................... 20

N.Y. Not-For-Profit Corp. Law § 706 .......................................................................................... 23

N.Y.C.P.L.R. § 7801(1) ................................................................................................................ 28

N.Y.C.P.L.R. § 7802(a) ................................................................................................................ 28

N.Y. Public Officers Law § 102(2) ............................................................................................... 28

N.Y. Public Officers Law § 86(3)................................................................................................. 27

117 Stat. 517 ................................................................................................................................. 16

N.Y. Ins. Law § 7005(a) ................................................................................................................. 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------- x
                                            :

JOHN R. WALCOTT, FRANK           :
MAISANO, and MARY E. BISHOP,    :
                                            :

         Plaintiffs,                 :              07 CIV 7072 (AKH)

            v.                       :

                                            :
WTC CAPTIVE INSURANCE           :      **DEFENDANTS' MEMORANDUM OF**
COMPANY, INC.; CHRISTINE          :      **LAW IN SUPPORT OF**
LASALA; THE HONORABLE           :      **MOTION TO DISMISS FOR**
MICHAEL BLOOMBERG; MARSH     :      **FAILURE TO STATE A CLAIM**
MANAGEMENT SERVICES, INC.;    :
GAB ROBINS NORTH AMERICA,    :
INC.; MARK PAGE; LEWIS           :
FINKELMAN; JEFFREY              :
FRIEDLANDER; MEREDITH JONES;  :
MARK MELSON; JAMES           :
SCHOENBECK; and KENNETH     :
BECKER, ESQUIRE,              :

                                            :
         Defendants.                :
--------------------------------------------------- x

     Defendants WTC Captive Insurance Company, Inc ("WTCC"), Christine LaSala, Mark

Page, Lewis Finkelman, Jeffrey Friedlander, Meredith Jones, Mark Melson, James Schoenbeck,

Kenneth Becker, and Mayor Michael Bloomberg hereby submit this memorandum of law in

support of their motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

     Plaintiffs in this action are among those that have asserted tort claims against the City of

New York ("City") and its contractors for injuries allegedly sustained in connection with the

City's rescue, recovery, and debris removal operations after 9/11.  In this meritless suit, Plaintiffs

and their counsel assert that Congress and the Federal Emergency Management Agency

("FEMA") funded, and the New York State Legislature authorized, the WTCC not for the purpose of defending and indemnifying the City and its contractors in the tort system, but rather for the purpose of operating a claims processing facility to unconditionally pay Plaintiffs' claims.

Plaintiffs and their counsel fail to acknowledge that they seek substantial damages from the City and its contractors, who face potential liability for exerting their utmost to save lives and restore order to Lower Manhattan in the aftermath of 9/11. While demanding in this action that the WTCC pay their claims, Plaintiffs and their counsel at the same time continue to press their suits in the tort system against the WTCC's insureds.

Perhaps as a matter of sound policy, Congress should have channeled, or should yet channel, all tort suits against the City and its contractors into a federally-funded compensation system along the lines of the Victims' Compensation Fund, as the WTCC and the Mayor have suggested publicly. Congress has instead chosen, at least for now, to allow the tort system to process these claims, with all of its attendant inefficiencies and potential for unlimited liability. An insurance mechanism to provide coverage against such claims for the City and its contractors from the hazards of the tort system is what Congress and FEMA funded, what the New York State Legislature authorized, and what was formed when the WTCC was created pursuant to federal and state law and the grant from FEMA. They created an insurance company with the ordinary duties of an insurance company to its insureds: the duties to defend and, if necessary, indemnify those insureds in connection with the very tort suits that Plaintiffs assert.

Hence, for the reasons outlined in more detail below, Plaintiffs' Complaint utterly fails to state a claim. Among other deficiencies,

- Plaintiffs' state law claims against all Defendants except the WTCC fail because all other Defendants enjoy statutory immunity under New York law.

- Plaintiffs' First Cause of Action for breach of fiduciary duty fails as a matter of law because Defendants have *no* duties to Plaintiffs, much less any *fiduciary* duties.

- Plaintiffs' Second Cause of Action for declaratory and ancillary relief fails as a matter of law because Plaintiffs have no right of action under the various provisions they cite, and because even if Plaintiffs had rights of action under the provisions that they invoke, they have failed to plead violations of these provisions.

- Plaintiffs' Third and Fourth Causes of Action under New York's Freedom of Information Law ("FOIL") and Open Meetings Law ("OML") fail to state a claim because the WTCC and other Defendants are not subject to either law (and, in any event, Plaintiffs' claim under FOIL is untimely and otherwise procedurally barred).

- Plaintiffs' Fifth and Sixth Causes of Action for Replevin and Conversion fail because Plaintiffs have no right or title to the assets of the WTCC.

## STATEMENT OF FACTS

**A.     The Federal Funding of the WTCC to Defend and Indemnify the City and Its Contractors**

The WTCC was funded by a Congressional appropriation, Pub. L. No. 108-7, 117 Stat.

517 (Feb. 20, 2003), in which Congress directed that FEMA provide $1 billion to fund a captive

insurance entity for the City and its contractors.[1]  *See also* Complaint ¶ 58.  FEMA provided this

---

[1]     The relevant portion of Pub. L. No. 108-7 provides: "Notwithstanding any other provision of law, including sections 403 and 407 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (43 U.S.C. 5170b and 42 U.S.C. 5173), the Federal Emergency Management Agency is directed to provide, from funds appropriated to the Federal Emergency Management Agency for disaster relief for the terrorist attacks of September 11, 2001, in Public Law 107-117, up to $ 1,000,000,000 to establish a captive insurance company or other appropriate insurance mechanism for claims arising from debris removal, which may include claims made by city employees." 117 Stat. 517–518.

The appropriation's legislative history confirms that the appropriation was directed towards the creation of a liability insurance mechanism for the benefit of the City and its contractors: "[FEMA] . . . is directed to provide . . . up to [$1 billion] to establish a captive insurance company or other appropriate insurance mechanism.  The insurance will provide the City of New York and its debris removal contractors with coverage for claims arising from debris removal performed after collapse . . . ."  H.J. RES. 2, Consolidated Appropriations

(continued...)

money to the New York State Emergency Management Office ("SEMO"), *see* FEMA Grant Agreement (Weiner Dec. Ex. A) at 1, which in turn provided the money to the City in a Sub-Grant Agreement. *See* Sub-Grant Agreement (Weiner Dec. Ex. B) at 1. Pursuant to a third agreement, this time between the City and the WTCC ("City-WTCC Agreement") (Weiner Dec. Ex. C), the City in turn used the FEMA grant money to pay the premium for the Policy to be issued by the WTCC upon receipt of the money. *See* Policy (Weiner Dec. Ex. D) at Item 7, page ii.; *see also* City-WTCC Agreement (Weiner Dec. Ex. C) at 1. [2]

The FEMA Grant Agreement provides that federal funds transferred pursuant to that agreement are required to be used by the WTCC for the WTCC's purposes, including paying defense costs provided by the Policy, which is incorporated into the FEMA Grant Agreement as Attachment D:

> 5. Upon the payment of the Grant Award to the Captive, income and investment earnings generated must be used by the Captive insurance company *for the purposes set forth in this Agreement and its Attachments A–D* . . . . The "premium" or initial capital contribution for the captive will be $999,900,000, to be paid in its entirety by the City at the Captive's inception. Thereafter, funds will be held by the Captive in accordance with this Agreement *and its Attachments A–D* . . . to be invested and used to pay all costs related to the operation of the Captive, including but not limited to losses, fees to service providers, taxes, administrative and defense costs. * * * The Captive may operate with the funds in accordance with this Agreement *and its Attachments A–D* . . . .

FEMA Grant Agreement (Weiner Dec. Ex. A) at Article VI.5 (emphasis added). *See also id.* at Article I.2 (WTCC to be established "to *insure* the City and its debris removal contractors,

---

Resolution, 2003 Conference Report, H. R. REP. NO. 108-010 (2003) (emphasis added). The report also confirms that the appropriation is for the creation of "liability insurance." *Id.*

[2] The City-WTCC Agreement is incorporated by reference as "Attachment F" in the Sub-Grant Agreement, which is in turn incorporated by reference as "Attachment A "in the FEMA Grant Agreement. *See* Sub-Grant Agreement (Weiner Dec. Ex. B) at Article II.1.; FEMA Grant Agreement (Weiner Dec. Ex. A) at 2, 10.

subcontractors and consultants at every tier, for claims arising from debris removal at the WTC site") (emphasis added); Complaint ¶ 76 (acknowledging that Article VI of the FEMA Grant Agreement authorizes the WTCC to use grant funds to pay "defense costs").

**B.     The Creation of the WTCC to Defend and Indemnify the City and Its Contractors**

In the aftermath of 9/11, the New York State Legislature amended the New York Insurance Law to authorize the City to form a "pure" captive insurance company to insure against the liability of the City and its World Trade Center contractors for claims arising out of 9/11. *See* N.Y. Ins. Law § 7005(a) ("In the case of a city with a population of one million or more, a pure captive insurance company also may be formed as a public benefit corporation or not-for-profit corporation at the discretion of the mayor of such city, for the purpose of providing insurance that is retroactive to September eleventh, two thousand one, for *risks* incurred by such city and its affiliated companies related to or arising out of activities in or near the World Trade Center site in response to the attacks of [9/11].") (emphasis added); *see also* Complaint ¶ 70.

Under New York law, a "pure" captive insurance company insures "on a primary basis, only risks of its parent and affiliated companies." N.Y. Ins. Law § 7003(a)(1). In the case of the WTCC, the authorizing legislation provides that "a pure captive insurance company formed by a city with a population of one million or more may insure or provide reinsurance for its parent, statutory subsidiaries and affiliated companies only for *liability* related to or arising out of activities in or near the World Trade Center site in response to the attacks of [9/11]." N.Y. Ins. Law § 7003(a) (emphasis added). The authorizing legislation further provides that for the WTCC, "affiliated companies" includes "any . . . contractor, subcontractor, or consultant . . . for liability related to or arising out of activities in or near the World Trade Center site in response to the attacks of [9/11]." N.Y. Ins. Law § 7002(a).

- 5 -

Pursuant to this grant of authority, the City formed the WTCC under Section 402 of the Not-For-Profit Corporation Law. WTCC Certificate of Incorporation ("Certificate") (Weiner Dec. Ex. E) at 1.[3] According to the Certificate:

> The purpose for which the Company is formed is to provide insurance on an occurrence basis for events occurring on or after September 11, 2001 for liabilities incurred by the City of New York and its affiliated companies . . . related to or arising out of activities in or near the World Trade Center site in response to the attacks of September 11, 2001 . . . . The Company shall insure the City of New York and the contractors, subcontractors and consultants of any tier of the City of New York . . . as additional named insureds, for liability related to or arising out of activities in or near the World Trade Center site in response to the attacks of September 11, 2001.

*Id.* The Certificate further provides that the WTCC "shall also have all other rights, powers, and privileges now or hereafter authorized or granted by the Not-For-Profit Corporation Law and by the Insurance Law of the State of New York . . . ." *Id.* at 4. The Certificate authorizes the WTCC to provide to the City and its contractors certain types of insurance, including "'Personal injury liability insurance,' as authorized by paragraph (13) of Section 1113(a) of the Insurance Law of the State of New York." *Id.* at 2. In December 2004, the WTCC in turn issued a "Liability Insurance Policy (Occurrence Basis)" ("Policy") (Weiner Dec. Ex. D) to the City.[4] A third-party *liability* insurance policy, the Policy provides in familiar duty-to-defend terms that the WTCC will *defend* its insureds, the City and its contractors:

---

[3]    The Complaint quotes from the Certificate at Paragraph 78. The Certificate of Incorporation was filed with the New York Secretary of State on July 1, 2004. Certificate (Weiner Dec. Ex. E) at 17 (handwritten pagination).

[4]    The Policy is referenced in ¶¶ 110, 115, and 177 of the Complaint, and also is incorporated by reference into the FEMA Grant Agreement as Attachment D. *See* FEMA Grant Agreement (Weiner Dec. Ex. A) at 10. The FEMA Grant Agreement in turn is referenced throughout Plaintiffs' Complaint, including ¶¶ 77, 78, 87, 100, and 110.

2.04   Defense of Suits and Related Defense Costs

(a)   [T]he Company has the *right and duty to defend an Insured* against Suit seeking any Damages to which this Policy may apply, even if such Suit is groundless, false, or fraudulent.

Policy § 2.04(a) (Weiner Dec. Ex. D) at 9 (emphasis added).   Similarly, the Policy provides that the WTCC will indemnify the City and its contractors:

2.01   Insurance Coverage Provided; Commencement of Insured Status

(a)   In consideration of the Premium and any Contingent Premium and subject to all of the terms, conditions and limitations of this Policy . . . the Company shall pay on behalf of the Insureds all sums which Insureds become legally obligated to pay as Damages because of Claims (including Uniformed City Worker Claims and Pre-Existing Claims) arising from or relating to Debris Removal, provided the following conditions are met:

(i)   The Claim falls within the scope of General Liability, Marine Liability, Environmental Liability, or Professional Liability; and

(ii)  The Claim arises from an Occurrence during the Exposure Period.

Policy § 2.01 (Weiner Dec. Ex. D) at 7–8.

**C.    The WTCC's Defense of Tort Suits Against the City and Its Contractors**

Numerous tort suits have been filed against the City and its contractors in connection with the City's rescue, recovery, and debris removal operations in the aftermath of 9/11.  *See In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005).  Plaintiffs allege that they were injured in connection with the City's rescue, recovery, and debris removal operations after 9/11.  Complaint ¶¶ 17–28.   These consolidated cases are pending before the Second Circuit on interlocutory appeal.  The Complaint correctly alleges that the WTCC has defended its insureds against suits brought by Plaintiffs and others.  Complaint ¶ 105.

### D.    The Defendants in This Action

In addition to suing the WTCC, Plaintiffs brought this action against other persons and entities. Defendants Christine LaSala and James Schoenbeck are the President/Chief Executive Officer and Chief Financial Officer/Treasurer of the WTCC, respectively.  Complaint ¶¶ 8, 14. Defendants Mark Page, Lewis Finkelman, Jeffrey Friedlander, Meredith Jones, and Mark Melson are members of the WTCC Board of Directors.  *Id.* ¶¶ 9–13.[5]  Defendant Kenneth Becker is alleged to be a member of the WTCC Advisory Committee and "head of the New York City Law Department's WTC Section."  *Id.* ¶ 15.[6]  Defendant Michael Bloomberg is Mayor of the City of New York.  *Id.* ¶ 16.  Defendant Marsh Management Services, Inc.[7] is alleged to be the "Administrator" of the WTCC, *id.* ¶ 6, and Defendant GAB Robins North American, Inc.,[8] is alleged to be third party claims administrator retained by the WTCC, *id.* ¶ 7.[9]

### LEGAL STANDARD

In considering a motion under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, a district court normally is required to look only to the allegations on the face of the complaint.  *Roth v. Jennings*, 489 F.3d 499, 2007 U.S. App. LEXIS 13035, at *25–26 (2d Cir. 2007).  However, "[i]n determining the adequacy of the

---

[5]    The Complaint misidentifies Mark Page as "Marc Page."  Complaint ¶ 9.  Similarly, the Complaint misidentifies Lewis Finkelman as "Lewis Finklestein."  *Id.* ¶ 10.

[6]    As Chief of the Law Department's World Trade Center Unit, Becker is one of the attorneys for the City in the underlying litigation brought by the Plaintiffs against the City and its contractors.

[7]    Though named in the Summons as a Defendant, Marsh Management has not yet been served and thus has no obligation to respond to the Complaint.

[8]    The Complaint misidentifies GAB Robins North America, Inc., as "GAB Robbins." Complaint ¶ 7.

[9]    In addition, Plaintiffs have identified in the caption of their Complaint, but not in the body of the Complaint or in the accompanying Summons, three former WTCC Board Members: Andrew Alper, Phyllis Taylor, and Michael Feigin.  As Alper, Taylor, and Feigin have not been named in the Summons, much less actually served, they are not parties to this litigation.

complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). Furthermore, courts are not obliged to accept the allegations of the complaint as to how to construe such documents. *Id.*

In considering a Rule 12(b)(6) motion, the district court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." [10] *Roth*, 2007 U.S. App. LEXIS 13035, at *29. Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,

> a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" [under Fed. R. Civ. P. 8(a)(2)] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . [O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–1965 (2007) (citations omitted).

## ARGUMENT

I.    **ALL DEFENDANTS EXCEPT THE WTCC ENJOY STATUTORY IMMUNITY FROM PLAINTIFFS' STATE LAW CLAIMS**

Though Plaintiffs acknowledge that New York Insurance Law Sections 7001 through 7008 contain "provisions relevant to the formation of the WTC Captive," *see* Complaint ¶ 70, they disregard a critical section that establishes both (1) that the WTCC's mandated purpose is to provide risk insurance to the City and its contractors, and (2) that the various non-WTCC

---

[10]    Defendants have accordingly treated Plaintiffs' factual allegations as true for the limited purposes of this motion, notwithstanding the numerous factual errors and mischaracterizations contained within the Complaint. Defendants' arguments herein should not be construed as tacit admissions regarding any of Plaintiffs' factual allegations.

Defendants are immune from personal liability for any acts taken in support of this stated

purpose:

> In the case of a city with a population of one million or more, a pure captive insurance company also may be formed as a public-benefit corporation or not-for-profit corporation at the discretion of the mayor of such city, for the purpose of providing insurance that is retroactive to September eleventh, two thousand one, for risks incurred by such city and its affiliated companies related to or arising out of activities in or near the World Trade Center site in response to the attacks of September eleventh, two thousand one. . . . *Neither the mayor of such city, nor any of the captive's members, directors, officers, employees or agents appointed by or with the approval of such city, nor any officials, officers, employees or agents of the city, while acting within the scope of their authority, shall be subject to any personal liability resulting from the exercise or carrying out of any of the city's or captive's purposes or powers under this article.*

N.Y. Ins. Law § 7005(a)(3) (emphasis added).

The face of the Plaintiffs' Complaint establishes that nearly every named Defendant is

protected by this statutory grant of immunity.  Defendants Page, Finkelman, Jones, Friedlander,

and Melson are identified as members of the WTCC's Board of Directors, Complaint ¶¶ 9–13;

the WTCC's "members" and "directors" are entitled to immunity under the statute.  Defendants

LaSala and Schoenbeck, identified as the WTCC's "officers," Complaint ¶¶ 8, 14, similarly are

protected under the statute.   Plaintiffs allege that Defendants Marsh Management and GAB

Robins were at all relevant times "agents" of the WTCC, Complaint ¶¶ 6–7, which places them

in yet another protected class.  Defendant Kenneth Becker similarly is immune due to his status

as a city employee, as is the Honorable Michael Bloomberg due to his status as the Mayor of the

City of New York.  Complaint ¶¶ 15–16.  These Defendants indisputably were "acting within the

scope of their authority" in attending to the affairs of the WTCC.[11]

---

[11]    Indeed, although the Complaint contains vague statements regarding its general claims against the "Defendants," the Complaint includes almost no factual allegations explaining what acts taken by individual Defendants form the basis of their claims—much less any allegations to

(continued...)

In addition to his statutory immunity, the Mayor's appointment (and allegedly "controlling") power does not subject him to liability for the actions of the WTCC, a distinct entity. *Cf. Perez v. City of New York*, 41 A.D.3d 378, 837 N.Y.S.2d 571 (1st Dep't 2007) (mayor's increased authority over Board of Education does not vitiate Board's separate status and City cannot be held liable for Board's alleged torts as a result); *People ex rel. Elkind v. Rosenblum*, 184 Misc. 916, 921, 54 N.Y.S.2d 295, 300 (Sup. Ct. Westchester Co.), *aff'd*, 269 A.D. 859, 56 N.Y.S.2d 526 (2d Dep't 1945), *aff'd*, 295 N.Y. 929, 68 N.E.2d 34 (1946) (mayor's power to appoint members of Board of Education did not alter status of board as state entity separate from City of Yonkers).

In short, each and every Defendant to this action, except for the WTCC, is immune from any personal liability resulting from their activities in support of the WTCC's purposes. In light of this express statutory immunity granted by the WTCC's implementing legislation, Plaintiffs' state law claims against all Defendants other than the WTCC fail to state a claim, and therefore must be dismissed.

## II.    THE COMPLAINT'S FIRST CAUSE OF ACTION FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY

Plaintiffs' First Cause of Action (Complaint ¶¶ 153–173) purports to seek relief based upon Defendants' alleged breach of fiduciary duties "in connection with the misuse of WTCC funds and the failure of the WTCC to fulfill and act in accord with its not-for-profit corporate purpose and its status as a publicly funded, not-for-profit public corporation." Complaint ¶ 154.

This claim is facially insufficient. In order to plead a claim for breach of fiduciary duty under New York law, a plaintiff must allege "(1) that a fiduciary duty existed between plaintiff

---

support a claim that the Defendants acted outside the scope of their authority. Plaintiffs' claims against the WTCC's Board Members and Officers, Mayor Bloomberg, Kenneth Becker, and GAB Robins are supported only by unspecific (and unfounded) assertions.

and defendant; and (2) that defendant breached that duty." *Regions Bank v. Wieder &
Mastroianni, P.C.*, 423 F. Supp. 2d 265, 270 (S.D.N.Y. 2006). Here, the Complaint fails to
allege sufficiently the existence of any fiduciary duty owed by any of the Defendants to the
Plaintiffs, so this claim fails at the threshold.

### A.    The Complaint Fails to Plead Any Facts Supporting the Existence of Any Fiduciary Duty

The Complaint alleges, in a conclusory fashion, that "Mayor Bloomberg, the WTCC and
its Board, Administrators, Agents, Managers and Officers, were and are fiduciaries of the
Plaintiffs at all relevant times . . . ." Complaint ¶ 163. But a conclusory allegation that a
defendant owed a fiduciary duty to the plaintiff is insufficient to defeat a motion to dismiss. *See,
e.g., Attick v. Valeria Assocs.*, 835 F. Supp. 103, 111–112 (S.D.N.Y. 1992); *Compania Sud-
Americana de Vapores v. IBJ Schroder Bank & Trust Co.*, 785 F. Supp. 411, 426 (S.D.N.Y.
1992). Rather, "Plaintiffs must allege some factors from which a court could conclude that such
a relationship has been established." *Petrello v. White*, 412 F. Supp. 2d 215, 224 (E.D.N.Y.
2006) (internal quotation and citation omitted). *See generally Twombly*, 127 S. Ct. at 1965
("[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a
factual allegation.") (internal quotation and citation omitted); *ECC v. Toshiba Am. Consumer
Prods., Inc.*, 129 F.3d 240, 243 (2d Cir. 1997).

No such factual allegations appear in the Complaint. "A fiduciary relationship arises
when one person is under a duty to act for or to give advice for the benefit of another within the
scope of the relation." *Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 707 (2d Cir. 1998)
(collecting cases). *Accord Petrello*, 412 F. Supp. 2d at 224. "New York courts typically focus
on whether one person has reposed trust or confidence in another who thereby gains a resulting
superiority or influence over the first." *Regions Bank*, 423 F. Supp. 2d at 270 (internal quotation

- 12 -

and citation omitted).  "Simply because one reposes trust or confidence in another does not give rise to a fiduciary duty; the trust must be accepted as well." *Id.* (citation omitted).

Here, the Complaint does not allege that Plaintiffs have reposed their trust or confidence in any of the Defendants, much less that the Defendants have accepted that trust, nor could it so allege.  Indeed, it is plain from the face of the Complaint that "[t]here was no agreement of any kind, express or implied, between [Plaintiffs] and [Defendants]." *Id.* at 270.  Nor does the Complaint allege any other facts that would support the existence of a fiduciary duty. "[F]iduciary duties do not arise solely because one party has expertise that is superior to another." *Petrello,* 412 F. Supp. 2d at 225.

Indeed, fundamental principles of law demonstrate clearly that none of the Defendants owed any fiduciary duty to any of the Plaintiffs.  Under basic principles of insurance law, the WTCC owes duties *only* to its insureds, the City and its contractors; and basic principles of corporate law dictate that the individual officers and board members of the WTCC owe fiduciary duties only to the WTCC itself, not to the Plaintiffs.

**B.    The WTCC Owes Plaintiffs No Duty**

The WTCC owes no fiduciary duty to the Plaintiffs.  Under New York law, an insurance company owes no duty at all to one who is not its insured, because there is no privity of contract. *E.g., Kirkland v. Am. Title Ins. Co.,* 692 F. Supp. 153, 156–157 (E.D.N.Y. 1988); *Mars v. Flatiron Servs., Inc.,* 34 Misc. 2d 579, 580, 226 N.Y.S.2d 247, 249 (City Ct. 1962).

Thus, under the common law of New York, "an injured person possessed no cause of action against the insurer of the tortfeasor." *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 353, 787 N.Y.S.2d 211, 213 (2004) (citation omitted).  By statute, an exception was created to this rule, but only if the injured party first obtains a judgment against the insured tortfeasor. *Id.*, 3 N.Y.3d at 354, 787 N.Y.S.2d at 858 (citing N.Y. Ins. Law § 3420).

Here, Plaintiffs are not named insureds of the WTCC, nor do they have any judgment against the WTCC's insureds. Thus, the WTCC owes them no duty, much less a fiduciary duty. *See Affordable Hous. Found. v. Silva*, 469 F.3d 219, 251–252 (2d Cir. 2006).

### C.     The Individual Defendants Owe No Duties to the Plaintiffs

Nor do the individual Defendants owe any duty to the Plaintiffs. Officers and employees of a corporation owe a duty to that corporation and its shareholders, not to outsiders. *BHC Interim Funding L.P. v. Finantra Capital, Inc.,* 283 F. Supp. 2d 968, 989–990 (S.D.N.Y. 2003). Their alleged "failure to perform a duty owed to the corporation . . . does not make corporate officers or directors personally liable to third parties." *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F. Supp. 579, 585 (S.D.N.Y. 1989). Given that not even corporate officers owe such duties to outsiders such as the Plaintiffs, it is unthinkable that such a duty could attach to individual non-officer Defendants, such as the members of the Board of Directors and the Mayor.

Plaintiffs allege that the individual Defendants somehow "caused a waste of the WTCC's assets." Complaint ¶ 166. This alleges a wrong to the corporation itself, not directly to the Plaintiffs. And "[i]f the wrong sought to be redressed is one remediable by relief to the corporation, the claim is derivative and a creditor or shareholder lacks standing to assert it against a third party." *Houbigant, Inc. v. Dev. Specialists, Inc.,* 229 F. Supp. 2d 208, 214 (S.D.N.Y. 2002); *see also Jackson Nat'l Life Ins. Co. v. Ligator,* 949 F. Supp. 200, 204–205 (S.D.N.Y. 1996).

In short, neither the WTCC nor the individual Defendants owe Plaintiffs any legally-cognizable duty, much less a fiduciary duty. The First Cause of Action must, therefore, be dismissed.

MEMORANDUM OF LAW – PART 2

III.  **THE COMPLAINT'S SECOND CAUSE OF ACTION FOR DECLARATORY AND ANCILLARY RELIEF FAILS TO STATE A CLAIM**

Plaintiffs' Second Cause of Action alleges that Defendants have "wrongfully refused to even consider, investigate, or pay their claims, and any claims, in breach of the WTCC corporate charter, the WTCC by-laws and the WTCC insurance policy and in violation of Plaintiffs' Rights." Complaint ¶ 177. Plaintiffs further allege that Defendants have "depleted, wast[ed], and squander[ed] the WTCC funds entrusted to them." *Id.* Plaintiffs seek sweeping declaratory and ancillary relief compelling the WTCC to pay claims rather than defend its insureds and to "conform with all applicable federal and state statutes and ordinances," removing the "present WTCC Board, Officers, and Managers," and "requiring the recovery and reimbursement of all sums improperly and unreasonably expended, including the return of all salaries and other monies paid during the period of wrongdoing." Complaint pages 50–51.

A.  **Alleged Violation of and Relief Sought under Federal Law**

1.  **Public Law No. 108-7**

Plaintiffs' Complaint alleges violation of a single federal law:  Pub. L. No. 108-7, 117 Stat. 517, 518 (Feb. 12, 2003), which is part of a consolidated appropriations mechanism. Complaint ¶¶ 58–62, 104, 109.  Specifically, Plaintiffs allege that the WTCC and other Defendants have violated this provision by funding the defense of claims asserted against the City and its contractors in connection with the rescue, recovery, and debris removal operations conducted after September 11, 2001. Complaint ¶¶ 58–62, 104, 109. As explained below, Pub. L. No. 108-7 does not confer a private right of action, and even if it did, Plaintiffs have not alleged any violation of Pub. L. No. 108-7.

It is well established that a federal statute must confer a private right of action, either explicitly or implicitly, in order for a plaintiff to seek remedies under the provision. *County of*

*Westchester v. New York*, 286 F.3d 150, 153 (2d Cir. 2002) (affirming dismissal of plaintiffs' claim after finding that they "failed to satisfy their burden of demonstrating that Congress intended to provide them with a private right of action"); *Health Care Plan, Inc. v. Aetna Life Ins. Co.*, 966 F.2d 738, 743 (2d Cir. 1992) (affirming dismissal of plaintiff's claim after finding "no affirmative evidence of Congress' intent to bestow a private cause of action on [plaintiffs] to enforce" the federal statute at issue). This rule applies irrespective of the form of relief sought and, therefore, it applies to Plaintiffs' claim for declaratory relief. *See Aetna Life Ins.*, 966 F.2d at 742 (noting that the "same analysis applies independently of the remedy sought by the plaintiff," and rejecting the argument that the rule did not apply to a cause of action for equitable relief).

Pub. L. No. 108-7 does not mention explicitly any private right of action. *See* 117 Stat. 517. To bring a claim for declaratory relief or other, therefore, Plaintiffs must show that "Congress intended . . . to create an implied private right of action." *Aetna Life Ins.*, 966 F.2d at 740. Given that Pub. L. No. 108-7 does not explicitly allow for a private right of action, "we begin with the presumption that Congress did not intend one." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007); *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979) ("[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise, at best."). Determining whether Plaintiffs can overcome this presumption by proving congressional intent begins and ends with a search of the "text and structure" of Pub. L. No. 108-7. *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) ("We therefore begin (and find that we can end) our search for Congress's intent with the text and structure of Title VI."); *Bellikoff*, 481 F.3d at 116 (citing and quoting *Sandoval*, 532 U.S. at 288).

The text and structure of Pub. L. No. 108-7 lack any indication that Congress intended to confer a private right of action. The law is part of a consolidated appropriations resolution. Its purpose is to appropriate funds. It simply directs FEMA to provide, from appropriated funds, "up to $1,000,000,000 to establish a captive insurance company or other appropriate insurance mechanism for claims arising from debris removal, which may include claims made by city employees." Pub. L. No. 108-7, 117 Stat. 517, 518. *See also* 2003 Conference Report, H.R. Rep. No. 108-010. Generally, appropriations bills are not the type of federal statutes that confer private rights of action. *See, e.g.*, *Louisiana Landmarks Soc'y v. City of New Orleans,* 85 F.3d 1119, 1125 (5th Cir. 1996) ("When dealing with a classic federal funding statute like this one, inferring a private right of action is disfavored."). *See also Nguyen v. United States Catholic Conference*, 719 F.2d 52, 55 (3rd Cir. 1983) (holding that the Refugee Acts do not create private rights of action and noting that they are "essentially appropriations bills").

Given the lack of congressional intent from the text and structure of Pub. L. No. 108-7, Plaintiffs rely on post-enactment statements, which, they allege, support their position that "the insurance fund was intended to compensate Ground Zero workers . . . ." Complaint ¶ 63. This Circuit, however, recently rejected an attempt to consider post-enactment legislative history to determine whether Congress intended to confer a private right of action because "the text and the structure of the [federal statute at issue] reveal[ed] no ambiguity about Congress's intention to preclude private rights of action to enforce [the federal provision]." *Bellikoff*, 481 F.3d at 117. *See also Sandoval*, 532 U.S. at 288 ("In determining whether statutes create private rights of action . . . legal context matters only to the extent it clarifies text.").

No ambiguity exists here. Nothing in the text and structure of Pub. L. No. 108-7 suggests that Congress intended to confer a private right of action upon Plaintiffs. Plaintiffs have,

- 17 -

therefore, failed to establish that Pub. L. No. 108-7 provides a private right of action. For this reason, the Complaint's Second Cause of Action fails to state a claim upon which declaratory relief under federal law can be granted.

Finally, even if Pub. L. No. 108-7 conferred a private right of action upon Plaintiffs, the Complaint's Second Cause of Action fails to articulate a violation of Pub. L. No. 108-7. Plaintiffs fail to identify any provision of Pub. L. No. 108-7 requiring the WTCC simply to pay Plaintiffs' claims as Plaintiffs contend, rather than defend and indemnify its insureds, the City and its contractors. Plaintiffs fail to identify any duty that Pub. L. No. 108-7 imposes on Defendants, or any breach of any such duty by Defendants.

### 2.    FEMA Grant Agreement

Plaintiffs' claim that Defendants have violated the terms of the FEMA Grant Agreement, Complaint ¶¶ 76–77, 87, 106, 129(h), 137, similarly must fail, because the Grant does not provide Plaintiffs with any judicially-enforceable rights. "As a general rule, 'a party who contracts with a government agency to do an act or render a service is generally not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform,' unless the agreement provides for such liability." *Mair v. City of Albany*, 303 F. Supp. 2d 237, 246 (N.D.N.Y. 2004) (quoting *Guardians Ass'n v. Civil Serv. Comm'n of City of N.Y.*, 463 U.S. 582, 603 n.24 (1983)).

Thus, "a party is a third party beneficiary entitled to assert rights under a contract if it is an 'intended' beneficiary, as opposed to an 'incidental' beneficiary, of a promise." *Houbigant*, 229 F. Supp. 2d at 217. The contracting "parties' intent to benefit the third party must be evident on the face of the contract for that third party to be considered an 'intended beneficiary.'" *Brown v. AXA Re*, No. 02 Civ. 10138, 2004 U.S. Dist. LEXIS 7624, at *12, 2004 WL 941959, at *4 (S.D.N.Y. May 4, 2004).

It is not evident from the face of the FEMA Grant Agreement that Plaintiffs are intended third-party beneficiaries. In fact, Plaintiffs do not even fit within the definition of incidental beneficiaries under New York law: "an incidental beneficiary is one who may derive benefit from the performance of the contract but is neither the promisee nor the one to whom performance is to be rendered." *HBL Indus. v. Chase Manhattan Bank*, No. 81 Civ. 4242, 1985 U.S. Dist. LEXIS 23608, at *13 (S.D.N.Y. Jan. 8, 1985) (citing *Salzman v. Holiday Inns, Inc.*, 48 A.D.2d 258, 369 N.Y.S.2d 238 (4th Dep't 1975)). As the FEMA Grant Agreement at issue in this case does not confer any third-party beneficiary rights upon Plaintiffs, they lack any right of action to enforce it. *See also* Policy (Weiner Dec. Ex. D) at § 15.11 (providing that Policy does not create any third-party beneficiary rights; incorporated as Attachment D to the FEMA Grant Agreement).

Even if Plaintiffs otherwise possessed some right of action under the FEMA Grant Agreement, Plaintiffs have not alleged any cognizable violation of the Grant by Defendants. Plaintiffs contend that the WTCC has violated the terms of the FEMA Grant Agreement by defending claims asserted against the WTCC's insureds. Complaint ¶¶ 76–77, 87, 106, 129(h), 137. As the Complaint acknowledges, the FEMA Grant Agreement expressly contemplates that the WTCC will use Grant funds for purposes of paying "defense costs." Complaint ¶ 76.

Moreover, as discussed in Point A of the Statement of Facts, *supra,* the FEMA Grant Agreement expressly incorporates the terms of the WTCC Policy. As further discussed in Point A of the Statement of Facts, *supra*, the WTCC Policy imposes a duty upon the WTCC to defend its insureds. Thus, Plaintiffs' claim for declaratory relief under the FEMA Grant Agreement fails for the second and independent reason that Plaintiffs do not allege any cognizable violation of the FEMA Grant Agreement.

- 19 -

**B.    Alleged Violations of and Relief Sought under New York Law**

**1.    Insurance Law Section 2601**

Plaintiffs allege that the WTCC has violated the New York Unfair Claims Statute, Insurance Law Section 2601. Complaint ¶ 100. It is settled law in New York that no private right of action exists under Insurance Law Section 2601. *See Rocanova v. Equitable Life Assur. Soc'y*, 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 343 (1994) ("Rocanova's cause of action for violation of Insurance Law § 2601 must be dismissed. Contrary to the First Department's holding in this case, the law of this State does not currently recognize a private cause of action under Insurance Law § 2601."). Even if such a private right of action existed, Plaintiffs' claim must fail because the WTCC is not subject to Section 2601. Section 7001(b) sets forth an exhaustive list of those sections of the Insurance Law that apply to captive insurance companies, and does *not* include Section 2601. Furthermore, Plaintiffs fail to state a claim under Section 2601 because the WTCC owes no duty to Plaintiffs, who are not its insureds. Under New York law, an insurance company owes no duty at all to one who is not its insured, because there is no privity of contract. *E.g., Kirkland,* 692 F. Supp. at 156–157.

**2.    Insurance Law Section 7003(c)(5)**

Plaintiffs allege that the WTCC has violated New York Insurance Law Section 7003(c)(5), governing the formation of the WTCC. Complaint ¶¶ 71–72. New York Insurance Law Article 70, which governs captive insurance companies in New York, lacks any express private right of action, and leaves enforcement to the Superintendent of Insurance, who may suspend or revoke the license of a captive insurance company. N.Y. Ins. Law § 7008. Moreover, no implied private right of action exists because the statute provides for enforcement by the Superintendent of Insurance. *See Certain Underwriters at Lloyd's v. Plasmanet Inc.*, No. 01 Civ. 6023, 2002 U.S. Dist. LEXIS 14190, at *9, 2002 WL 1788020, at *3 (S.D.N.Y. Aug. 1,

2002) (rejecting implied right of action under Insurance Law because enforcement is left to the

Superintendent of Insurance: "Typically, courts do not construe the Insurance Law as providing

for a private right of action, in the absence of express language authorizing such enforcement");

*see also 3405 Putnam Realty Corp. v. Chubb Custom Ins. Co.*, 14 A.D.3d 310, 312, 788

N.Y.S.2d 64, 66 (1st Dep't 2005) (a "private right of action to recover premiums for insurer's

violation of regulation should not be sanctioned 'where it is incompatible with the enforcement

mechanism chosen by the legislature or discordant with some other aspect of the overall statutory

scheme'" (citing *Plasmanet*, *supra*)).

Even if Plaintiffs otherwise had a private right of action under Insurance Law Section

7003(c)(5), the Second Cause of Action fails to allege any violation of that provision. Section

7003(c)(5) provides:

> In the case of a pure captive insurance company formed by a city with a
> population of one million or more to insure such city and its affiliated
> companies for liability related to or arising out of activities in or near the
> World Trade Center site in response to the attacks of September eleventh,
> two thousand one, the superintendent, in addition to the provisions set
> forth in paragraph two of this subsection, shall consider such factors as the
> unique risk insured by such captive and the source and limits of the
> premium payments along with any limitations on the acceptance of claims
> and the payment of accepted claims so long as such limitations provide an
> equitable basis for the allocation of the assets of such company to pay
> claims.

N.Y. Ins. Law § 7003(c)(5). This provision merely requires the Superintendent of Insurance to

consider, in the process of issuing a license to do business, various factors including "the unique

risk" insured by the WTCC; Section 7003(c)(5) does not impose any affirmative duties upon the

WTCC. As Section 7003(c)(5) imposes no affirmative duties upon the WTCC, Plaintiffs'

Second Cause of Action for declaratory relief with respect to Section 7003(c)(5) fails to state a

claim.

3.  **Request to Remove WTCC Directors and Officers Law for Alleged Wasting and Depletion of WTCC Funds and Request to Recover Such Funds**

In blunderbuss fashion, Plaintiffs allege that the WTCC Directors and Officers have wasted and depleted corporate assets, Complaint ¶ 177, and seek ancillary relief removing the board, officers, and managers of the WTCC and returning the allegedly wasted assets. Complaint page 51. This claim fails for three reasons.

First, as third parties, Plaintiffs simply have no standing to assert any claim for any injury to the *WTCC* allegedly inflicted by the WTCC's officers and directors, because that claim belongs to the WTCC. *See Houbigant,* 229 F. Supp. 2d at 214; *Ligator,* 949 F. Supp. at 204–205.

Second, even if Plaintiffs had standing to sue for any such injury, New York law does not recognize any cause of action for any injury to a third party allegedly caused by a corporate officer's failure to perform a duty owed to the corporation, because no duty is owed to third parties. *Airlines Reporting Corp.,* 721 F. Supp. at 585.

Finally, even if Plaintiffs had standing and New York recognized a cause of action here, Plaintiffs have no right of action to seek removal of the directors and officers of the WTCC. The New York Court of Appeals applies a three-part test to determine the existence of a private right of action under New York statutes: "1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Sheehy v. Big Flats Cmty. Day, Inc.,* 73 N.Y.2d 629, 633–634; 543 N.Y.S.2d 18, 20 (1989).

The "most important[ ]" (*id.*) of these factors is the third factor, consistency with the legislative scheme, because

> the Legislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves. Thus, regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme.

*Id.*, 73 N.Y.2d at 634–635, 543 N.Y.S.2d at 21. Thus, "[w]here the Legislature has not been completely silent but has instead made express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy, with broader coverage . . . ." *Id.*, 73 N.Y.2d at 636, 543 N.Y.S.2d at 22.

The New York Not-for-Profit Corporation Law assigns to a limited category of persons the responsibility for policing the alleged misdeeds of officers and directors of not-for-profit corporations. *See* N.Y. Not-For-Profit Corp. Law §§ 706 (conferring right of action for removal of director on the Attorney General and ten percent of members), 714 (conferring right of action for removal of officer on the Attorney General, any director, ten percent of the members, or by the "holders of ten percent of the face value of the outstanding capital certificates, subvention certificates or bonds having voting rights"). Given that the New York legislature has carefully limited the class of persons that may seek to remove the directors and officers of a non-profit corporation, it would be manifestly inconsistent with the legislative scheme to find that Plaintiffs have such a right of action. Accordingly, Plaintiffs lack any right of action to seek removal of the directors and officers of the WTCC, and for that additional reason their claim must be dismissed.

4.    **Alleged Breach of WTCC "Corporate Charter," Bylaws, and Policy by Defending Against Rather than Paying Plaintiffs' Claims**

Plaintiffs allege that Defendants have "wrongfully refused to even consider, investigate, or pay their claims, and any claims, in breach of the WTCC "corporate charter,"[12] the WTCC by-laws [sic] and the WTCC insurance policy and in violation of Plaintiffs Rights." Complaint ¶ 177. This allegation fails to state a claim because Plaintiffs have *no* right of action to seek relief under the WTCC Certificate, Bylaws, and Policy (Weiner Dec. Exs. E, F, and D, respectively); nor have Plaintiffs alleged any such right of action. Indeed, the Policy expressly states that it does not create "any right of legal relationship whatever between the [WTCC] or any Insured and any other person. Policy (Weiner Dec. Ex. D) at § 15.11 (entitled "No Third Party Beneficiaries").

Even if Plaintiffs had any such right of action, Plaintiffs have not alleged any cognizable violation of these documents. As demonstrated in Points A and B of the Statement of Facts, *supra,* the WTCC Certificate and Policy provide expressly that the duties of the WTCC run to its insureds, to defend, and, if necessary, indemnify them. Similarly, the Bylaws require that the WTCC issue a "liability insurance policy" to the City and its contractors. Bylaws Art. VI.1 (Weiner Dec. Ex. F) at 15–16. Nothing in the WTCC Certificate, Bylaws, or Policy requires the WTCC to, as Plaintiffs allege, simply pay claims and abandon the defense of its insureds.[13] Plaintiffs' claim under the WTCC Certificate, Bylaws, and Policy must therefore be dismissed.

---

[12]    WTCC has no such "corporate charter." For purposes of Plaintiffs' Second Cause of Action, Defendants assume that Plaintiffs mean to refer to the WTCC's Certificate (Weiner Dec. Ex. E) when Plaintiffs refer to a WTCC "corporate charter." *See* Complaint ¶ 78 (quoting Certificate; *see also* note 1, *supra*.

[13]    Plaintiffs' reliance on language in the WTCC Certificate discussing an insurer's alleged obligation to pay claims "irrespective of legal liability of the insured," *see* Complaint ¶ 78, is unfounded. This abbreviated excerpt from the Certificate, a verbatim recitation of language from N.Y. Ins. Law. § 1113(a)(13), merely defines the types of insurance that the WTCC is legally (continued...)

## IV.  THE COMPLAINT'S THIRD (FOIL) AND FOURTH (OML) CAUSES OF ACTION FAIL TO STATE A CLAIM

Plaintiffs' Third Cause of Action (Complaint ¶¶ 181–200) alleges that the WTCC and all other Defendants have violated the New York Freedom of Information Law ("FOIL"), N.Y. Public Officers Law ("POL") § 84 *et seq.*  The Fourth Cause of Action (Complaint ¶¶ 201–214) alleges that the Defendants have failed to comply with the Open Meetings Law ("OML"), N.Y. POL §§ 100 *et seq.*  FOIL and OML are inapplicable to the Defendants. Plaintiffs' allegations are, therefore, facially insufficient, and the claims must be dismissed.[14]

### A.  Plaintiffs' FOIL Claim Should Be Dismissed

As a threshold matter, Plaintiffs' FOIL claim should be dismissed because it is barred by the applicable statute of limitations and by Plaintiffs' failure to exhaust their administrative remedies.  Plaintiffs allege that they filed a FOIL request letter on May 6, 2006, and that the

---

authorized to provide. *See* WTCC Certificate (Weiner Dec. Ex. E) at 2 (handwritten pagination). This provision does not *mandate* that the WTCC provide claim payment without respect to the underlying validity of the claim, nor does it displace an insurer's legal obligation to defend its insureds.

[14]    The Complaint also contains allegations that the WTCC failed to comply with the Public Authorities Accountability Act of 2005 ("PAAA"), 2005 Sess. Law News of N.Y. Ch. 766. (Complaint ¶¶ 139–152). It is not necessary for the Court to consider those allegations, however, because the Complaint contains no cause of action purporting to seek any relief under the PAAA, apparently in recognition of the fact that nothing in the PAAA creates or implies a private right of action.  A private right of action under the PAAA would be inconsistent with the statutory framework of the Insurance Law, which subjects the WTCC to enforcement by the Superintendent of Insurance and imposes substantial licensing, organization, reporting and other requirements (*see, e.g.,* N.Y. Ins. Law Arts. 1–4, 11–14, and §§ 7003 (a), (c)(1) and (2), pertaining specifically to captives). *See Sheehy v. Big Flats Cmty. Day, Inc.,* 73 N.Y.2d 629, 634-35, 543 N.Y.S.2d 18, 21 (1989) ("a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme."). Indeed, the level of regulation imposed upon the WTCC pursuant to the Insurance Law would be inconsistent with a legislative intent to subject the WTCC to overlapping reporting and regulatory requirements under the PAAA.

Nor may Plaintiffs rely on the PAAA (§ 2824(1)(d) of the Public Authorities Law) in an attempt to bootstrap their breach of fiduciary duty claim.  In this regard, Plaintiffs' assertion that the ethics code requirements of § 74 of the POL are applicable to Defendants is erroneous because the requirements of POL § 74 apply only to state officers. *See* Complaint at ¶ 167.

WTCC failed to respond within five business days. *See* Complaint ¶¶ 185–187. If true, such a non-response constituted a constructive denial of Plaintiffs' FOIL request. *See* 21 N.Y.C.R.R. 1401.7(c); *see also DeCorse v. City of Buffalo*, 239 A.D.2d 949, 950, 659 N.Y.S.2d 604, 605 (4th Dep't 1997). Yet Plaintiffs failed to respond promptly to this constructive denial: they neither filed an administrative appeal of the denial within the thirty-day deadline established by POL § 89(4)(a), nor initiated an Article 78 judicial proceeding within four months as required by the applicable statute of limitations set forth in N.Y.C.P.L.R. § 217. Plaintiffs' FOIL claim is, therefore, barred both for failure to exhaust administrative remedies, *see Reubens v. Murray*, 194 A.D.2d 492, 599 N.Y.S.2d 580 (1st Dep't 1993), and failure to comply with the applicable statute of limitations, *see Cerro v. Town of Kingsburg*, 250 A.D.2d 978, 980, 672 N.Y.S.2d 953, 956 (3d Dep't 1998).

Plaintiffs cannot avoid the effect of the statute of limitations here by relying on their alleged March 15, 2007 letter. Plaintiffs characterize this second FOIL letter as an "appeal" of the first, Complaint ¶¶ 181, 191, thus conceding that it was not a separate and independent request. However, a time-barred FOIL claim cannot be revived through the filing of an out-of-time appeal or duplicative request. *See, e.g., McGrif v. Bratton*, 293 A.D.2d 401, 402, 740 N.Y.S.2d 342, 343 (1st Dep't 2002) (belated judicial review of denial cannot be based on subsequent request for same information); *Van Steenburg v. Thomas*, 242 A.D.2d. 802, 661 N.Y.S.2d 317 (3d Dep't 1997) (rejecting appeal of second FOIL request as belated appeal of first). Thus, Plaintiffs' FOIL claim should be dismissed.

Even if Plaintiffs' FOIL claim were not time-barred, however, it still should be dismissed because the WTCC is not an "agency" within the meaning of the POL, and the individual

defendants are not liable for the actions of the WTCC in this context.  The FOIL applies only to "agencies."  An "agency" is defined as follows:

> "Agency" means *any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity* performing a governmental or proprietary function for the state or any one or more municipalities thereof, except the judiciary or the state legislature.

POL § 86(3) (emphasis added).  The WTCC is not a "governmental entity."  As Plaintiffs recognize, it is an insurance company, which insures more than 140 private municipal contractor entities in addition to the City.  *See* Complaint ¶¶ 58, 64, 73, 74, 78; *Rumore v. Bd. of Educ.*, 35 A.D.3d 1178, 1180, 826 N.Y.S.2d 545, 546 (4th Dep't 2006), *appeal denied*, 8 N.Y.3d 810, 834 N.Y.S.2d 508 (2007) (not-for-profit corporation which, among other things, provides services to other clients besides municipal school district, not an "agency" subject to FOIL).  It does not exercise any governmental powers; it simply performs an insurance function, one traditionally performed by private corporations.  The WTCC possesses no power delegated by, or previously exercised by, the State or City; its funding originated with a federal grant, not an appropriation by the State or City; it cannot borrow on the State or City's credit or impose any taxes or fees.  Indeed, the FEMA Grant Agreement requires that the WTCC "will be an independent corporate entity."  FEMA Grant Agreement Article 1.3 (Weiner Dec. Ex. A) at 3.  Because it is clear that the WTCC does not possess the attributes of a "governmental entity," it is not an "agency" for purposes of FOIL.[15]

---

[15]    Plaintiffs make much of an advisory opinion by the Committee on Open Government, which concluded that the WTCC is subject to the FOIL.  Complaint ¶¶ 134, 209.  But such advisory opinion "is neither binding upon the agency nor entitled to greater deference in an Article 78 proceeding than is the construction of the agency."  *John P. v. Whalen*, 54 N.Y.2d 89, 96, 444 N.Y.S.2d 598, 602 (1981).

Further, even if FOIL were applicable to the WTCC, there is no basis to impose liability on any of the *individual* defendants. Under Article 78, it is the action of the body or officer that is subject to judicial review, and not the actions of individual members of any such body. N.Y.C.P.L.R. §§ 7801(1); 7802(a); *see Hayes v. Gibbs*, 111 Misc. 2d 1062, 1063, 445 N.Y.S.2d 910, 911 (Sup. Ct. Albany Co. 1981), *aff'd*, 89 A.D.2d 656, 453 N.Y.S.2d 262 (3d Dep't 1982) (Article 78 challenge to Village Board resolution improperly brought against individual trustees of Board because it was action of board and not members thereof for which judicial review was sought). Nor can Mayor Bloomberg—who is not even an officer of the WTCC—be held liable by reason of his authority to appoint members of the WTCC's Board of Directors. *See generally Pena v. Robles*, 12 Misc. 3d 1163A, 819 N.Y.S.2d 211, at *13 (Sup. Ct. N.Y. Co. 2006), *appeal withdrawn*, 41 A.D.3d 224, 836 N.Y.S.2d 870 (1st Dep't 2007) ("While service at the pleasure of the appointing official may be a hallmark of an executive agency, as the above examples show, the alternate is not so. Service of board members of a State entity at the pleasure of an appointing official does not make such entity by itself an executive agency.").

Accordingly, Plaintiffs' Third Cause of Action should be dismissed.

**B.     Plaintiffs' OML Cause of Action Fails to State a Claim**

The OML similarly is inapplicable to the WTCC and other Defendants. The OML applies only to "public bodies," defined as follows:

> "Public body" means any entity for which a quorum is required in order to conduct public business and which consists of two or more members, *performing a governmental function for the state* or for any agency or department thereof, or for a public corporation as defined in section sixty-six of the general construction law, or committee or subcommittee or other similar body of such public body.

POL § 102(2) (emphasis added).

This language "should be interpreted consistent with its natural and most obvious meaning." *Russo v. Nassau County Cmty. Coll.*, 81 N.Y.2d 690, 697, 603 N.Y.S.2d 294, 297 (1993). The "natural and most obvious meaning" of the phrase "governmental function" does not encompass the business of insurance. Indeed, as Plaintiffs themselves concede, the WTCC was established only because the commercial "insurance marketplace" failed to offer the "appropriate, commercially reasonable coverage" for the rescue, recovery, and debris removal operations at the World Trade Center site. Complaint ¶ 33. Although the WTCC was established by the City of New York—albeit pursuant to federal legislation, *see* Complaint ¶¶ 58, 76–79—"not every entity whose power is derived from state law is deemed to be performing a governmental function." *Perez v. City Univ. of N.Y.*, 5 N.Y.3d at 528, 806 N.Y.S.2d at 463. Rather, courts should consider "the nature of its role, the power it possesses and under which it purports to act, and a realistic appraisal of its functional relationship to affected parties and constituencies." *Id.* (internal quotation and citation omitted).

Plaintiffs concede that the WTCC's role is to act as an insurance company, not a governmental agency. Its functions are those of a private liability insurer. Accordingly, under the *Perez* analysis, WTCC is not a "public body" within the meaning of OML, and Plaintiffs' fourth cause of action may not be maintained.[16]

## V.    THE COMPLAINT'S FIFTH (REPLEVIN) AND SIXTH (CONVERSION) CAUSES OF ACTION FAIL TO STATE A CLAIM

The Complaint's Fifth and Sixth Causes of Action, for Replevin and Conversion, also fail to state any valid claim.

---

[16]    Further, even if the OML were applicable to the WTCC, for the reasons set forth in Point IV.A above, there is no basis to impose liability on any of the individual defendants, including Mayor Bloomberg, who is not even an officer or director of the WTCC.

**A.    The Conversion Claim Must Be Dismissed**

The Conversion claim alleges that Defendants "sought, obtained, approved, permitted and/or made payments" from WTCC funds, Complaint ¶ 223; that those payments were made "to protect the City," *id.* ¶ 226, even though, supposedly, the WTCC's funds were "intended . . . to ensure that sufficient resources are available to satisfy legitimate claims by individuals affected by the recovery operations while safeguarding the fiscal health of the City and the contractors," *id.* ¶ 225; and that "by so doing the Defendants have knowingly wasted and squandered a large amount of the [WTCC's] money," *id.* ¶ 228.

These allegations are insufficient to state a claim for conversion. "In New York, conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *Regions Bank*, 423 F. Supp. 2d at 269 (internal quotations omitted) (citing cases). *Accord Traffix, Inc. v. Herold*, 269 F. Supp. 2d 223, 228 (S.D.N.Y. 2003). Accordingly, in order to plead a claim for conversion, a complaint must allege "that (1) plaintiff had legal ownership or an immediate superior right of possession to specific identifiable personal property, and (2) defendant exercised unauthorized dominion over the property to the exclusion of the plaintiff's rights." *Isik Jewelry v. Mars Media, Inc.*, 418 F. Supp. 2d 112, 125 (E.D.N.Y. 2005) (citing cases). *See also Simon v. Weaver*, 327 F. Supp. 2d 258, 262 (S.D.N.Y. 2004). "A complaint that offers no factual basis for inferring conversion must be dismissed." *Rozsa v. May Davis Group, Inc.*, 152 F. Supp. 2d 526, 534 (S.D.N.Y. 2001), *aff'd mem.*, 165 Fed. Appx. 892 (2d Cir. 2006).

The Complaint does not allege that Plaintiffs had ownership of, or any right to possess, any of the WTCC's funds; and it does not allege the conversion of any specific, identifiable personal property. Accordingly, the conversion claim is facially deficient as a matter of law.

1.    **Plaintiffs Have No Right to Possess the WTCC's Funds** |

"Interference with a right of possession is the essence of a conversion." *Global View Ltd.*

*Venture Capital v. Great Cent. Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 479 (S.D.N.Y.

2003) (internal quotations and citation omitted), *reconsideration denied,* 288 F. Supp. 2d 482

(S.D.N.Y. 2003). To state a claim, a plaintiff must allege "that he has legal title or an immediate

superior right of possession to the identifiable fund," *id.* (internal quotations and citation

omitted), and that he had "ownership possession or control of the money before its conversion."

*Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000) (internal

quotations and citation omitted). *Accord, Traffix, Inc. v. Herold,* 269 F. Supp. 2d at 228; *Farey-*

*Jones v. Buckingham,* 132 F. Supp. 2d 92, 106 (E.D.N.Y. 2001).

Plaintiffs do not claim to have had either legal title to, or any right to immediate

possession of, any funds of the WTCC. Even if Plaintiffs were correct that all of the WTCC's

funds were intended to compensate those injured in the World Trade Center cleanup operations,

Plaintiffs would have no claim on any identifiable portion of those funds until their claims were

adjudicated. *See* N.Y. Ins. Law § 3420; *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 335, 787

N.Y.S.2d 855, 858 (2004). Thus, they lack any right to bring a conversion claim.

2.    **Plaintiffs Have Identified No Specific Property** |

"[T]here is no cause of action for conversion of intangible property under New York

law." *Farey-Jones,* 132 F. Supp. 2d at 106. Money may be the object of a claim of conversion

only "where there is a specific, identifiable fund." *Global View,* 288 F. Supp. 2d at 479; *accord*

*Citadel Mgmt.,* 123 F. Supp. 2d at 147.

"To state a cause of action for conversion of money, the money must be described or

identified in the same manner as a specific chattel," *Global View,* 288 F. Supp. 2d at 480

(internal quotations and citation omitted), *i.e.,* the "money must be specifically identified and

- 31 -

segregated." *Regions Bank,* 423 F. Supp. 2d at 269 (internal quotations and citation omitted). Plaintiffs cannot point to any specifically identified and segregated funds to which they had legal title or any right of possession; they have, at most, unliquidated and unadjudicated tort claims against defendants who may be insured by the WTCC.  Their conversion claim must therefore be dismissed.[17]

### B.      The Replevin Claim Also Must Be Dismissed |

For similar reasons, Plaintiffs' Fifth Cause of Action, for Replevin, must also be dismissed.  Plaintiffs claim that they "are taxpayers and citizens with a direct interest in the public funds entrusted to the WTCC," Complaint ¶ 216, and that Defendants "remain in possession of the aforesaid funds and wrongfully detain it [*sic*] from the Plaintiffs." *id.* ¶ 218.

In New York, replevin is "an action to recover [a] chattel." *John Paul Mitchell Sys. v. Quality King Distribs.,* 106 F. Supp. 2d 462, 478 (S.D.N.Y. 2000).  *Accord Austin v. Wauful,* 13 N.Y.S. 184, 185 (Sup. Ct. 1891) ("The object of the action of replevin is the recovery of specific personal property.").  To plead a claim for replevin, the plaintiff must allege "ownership of the chattel and entitlement to its possession." *Martha Graham Sch. & Dance Found. v. Martha Graham Ctr. of Contemporary Dance,* 224 F. Supp. 2d 567, 603 (S.D.N.Y. 2002), *aff'd in part, vacated in part on other grounds,* 380 F.3d 624 (2d Cir. 2004), *cert. denied,* 544 U.S. 1060 (2005).  *Accord Van Brunt v. Rauschenberg,* 799 F. Supp. 1467, 1473 (S.D.N.Y. 1992) (plaintiff "must demonstrate that he has an immediate and superior right to possession of the chattel including proof of ownership").

Plaintiffs cannot plead any immediate right to possession of any identifiable sum of money.  Moreover, a claim to an unliquidated sum of money is not the proper subject of a

---

[17]      As noted above, *see* Point III.B.3, *supra,* Plaintiffs also lack standing to complain about any alleged misappropriations from the WTCC by any of the individual Defendants.

replevin claim: "[m]oney is not subject to replevin unless it is marked or designated in some manner so as to become specific . . . such as being in a bag or package." *In re African-American Slave Descendants Litig.*, 375 F. Supp. 2d 721, 768 (N.D. Ill. 2005) (quoting 66 Am. Jur. 2d, *Replevin* § 9 (2004)), *aff'd in part, rev'd in part on other grounds*, 471 F.3d 754 (7th Cir. 2006). The replevin claim must therefore be dismissed.

## **CONCLUSION**

For the reasons provided above, this Court should grant Defendants' motion to dismiss for failure to state a claim.

Dated:  August 15, 2007

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
212-788-0600

By: *Lawrence S. Kahn /RAW*
    Lawrence S. Kahn (LK-4078)
    *Chief Litigating Assistant*
    Nancy F. Brodie (NB-6200)
    Terri Feinstein Sasanow (TS-5966)
    *Assistant Corporation Counsels*

*Attorney for Defendant Michael Bloomberg*

*Co-Counsel for Defendants Mark Page, Lewis Finkelman, Jeffrey Friedlander, Meredith Jones and Kenneth Becker*

McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173-1922
212-547-5400

By: *Robert A. Weiner*
    Robert A. Weiner (RW-3381)
    Elliot Silverman (ES-9591)

Of Counsel:

Margaret H. Warner
M. Miller Baker
McDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, DC 20005-3096
202-756-8000

*Attorneys for Defendants WTC Captive Insurance Company, Inc., Christine LaSala, Mark Melson, and James Schoenbeck*

*Co-Counsel for Defendants Mark Page, Lewis Finkelman, Jeffrey Friedlander, Meredith Jones, and Kenneth Becker*

- 34 -