UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x
JOHN R. WALCOTT, FRANK                      :
MAISANO, and MARY E. BISHOP,                :
                                            :
       Plaintiffs,                          :        07 CIV 7072 (AKH)
                                            :
              v.                            :
                                            :
WTC CAPTIVE INSURANCE                       :        **REPLY MEMORANDUM IN**
COMPANY, INC.; CHRISTINE                    :        **SUPPORT OF DEFENDANTS'**
LASALA; THE HONORABLE                       :        **MOTION TO DISMISS FOR**
MICHAEL BLOOMBERG; MARSH                    :        **FAILURE TO STATE A CLAIM**
MANAGEMENT SERVICES, INC.;                  :
GAB ROBINS NORTH AMERICA,                   :
INC.; MARK PAGE; LEWIS                      :
FINKELMAN; JEFFREY                          :
FRIEDLANDER; MEREDITH JONES;                :
MARK MELSON; JAMES                          :
SCHOENBECK; and KENNETH                     :
BECKER, ESQUIRE,                            :
                                            :
       Defendants.                          :
------------------------------------------------- x

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

I.    ALL DEFENDANTS OTHER THAN THE WTCC ARE PROTECTED BY
STATUTORY IMMUNITY ......................................................................... 2

    A.    The Individual Defendants Are Immune Under New York Insurance Law .......... 2

    B.    Defendants' Statutory Immunity Bars Both Damages And Monetary
Equitable Relief ................................................................................. 6

II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF
FIDUCIARY DUTY ................................................................................... 7

III.    PLAINTIFFS' DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED ...... 11

IV.    PLAINTIFFS' FOIL AND OML CLAIMS SHOULD BE DISMISSED ...................... 13

V.    PLAINTIFFS EFFECTIVELY CONCEDE THAT THEIR CONVERSION AND
REPLEVIN CLAIMS MUST BE DISMISSED ............................................... 16

CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. New York City Transit Authority,*
   39 N.Y.2d 990, 387 N.Y.S.2d 235 (1976) ................................................................ 9

*Abramson v. Blakely,*
   25 Misc. 2d 967, 202 N.Y.S.2d 586 (Sup. Ct. N.Y. Co. 1960) ................................ 10

*Airlines Reporting Corp. v. Aero Voyagers, Inc.,*
   721 F. Supp. 579 (S.D.N.Y. 1989) .......................................................................... 11

*Alco Gravure, Inc. v. Knapp Foundation,*
   64 N.Y.2d 458, 490 N.Y.S.2d 116 (1985) .............................................................. 10

*Beechwood Restorative Care Center v. Signor,*
   11 A.D.3d 987, 784 N.Y.S.2d 750 (4th Dep't 2004) .............................................. 16

*Bell Atlantic Corp. v. Twombly,*
   127 S. Ct. 1955 (2007) ........................................................................................ 2, 4

*Bell v. Herbert,*
   476 F. Supp. 2d 235 (W.D.N.Y. 2007) ................................................................... 15

*Blanchette v. Conn. Gen. Ins. Corp.,*
   419 U.S. 102 (1974) ................................................................................................. 5

*Breen v. Mortgage Comm'n,*
   285 N.Y. 425, 35 N.E.2d 25 (1941) ......................................................................... 3

*Buffalo News, Inc. v. Buffalo Enter. Dev. Corp.,*
   84 N.Y.2d 488, 619 N.Y.S.2d 695 (1994) .............................................................. 13

*Collella v. Bd. of Assessors,*
   95 N.Y.2d 401, 718 N.Y.S.2d 268 (2000) ................................................................ 9

*Conley v. Gibson,*
   355 U.S. 41 (1957) ................................................................................................... 1

*Consumers Union v. State,*
   5 N.Y.3d 327, 806 N.Y.S.2d 99 (2005) .................................................................. 10

*Dairylea Corp. v. Walker,*
   38 N.Y.2d 6, 377 N.Y.S.2d 451 (1975) .................................................................... 9

*Douglaston Civic Ass'n v. Galvin,*
   36 N.Y.2d 1, 364 N.Y.S.2d 830 (1974) .................................................................... 9

*Edelman v. Jordan,*
    415 U.S. 651 (1973) ................................................................ 6

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
    545 U.S. 546 (2005) ................................................................ 4

*Eye, Ear & Throat Hosp. v. Spitzer,*
    186 Misc. 2d 126, 715 N.Y.S.2d 575 (Sup. Ct. N.Y. Co. 1999) ............ 9

*In re Hicka,*
    180 Misc. 173, 40 N.Y.S.2d 267 (Sup. Ct. N.Y. Co. 1943) .................. 3

*In re Rezulin Prods. Liab. Litig.,*
    390 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................... 6

*John P. v. Whalen,*
    54 N.Y.2d 89, 444 N.Y.S.2d 598 (1981) .................................... 13

*Kaplan v. Okun,*
    15 A.D.2d 848, 224 N.Y.S.2d 542 (3d Dep't 1962) ......................... 10

*Knopfler v. Bohen,*
    15 A.D.2d 922, 225 N.Y.S.2d 609 (2d Dep't 1962) ......................... 10

*Landmark West! v. Tierney,*
    9 Misc. 3d 1102A, 806 N.Y.S.2d 445 (Sup. Ct. N.Y. Co. 2005) ........... 15

*Lang v. Hanover Ins. Co.,*
    3 N.Y.3d 350, 787 N.Y.S.2d 211 (2004) .................................... 10

*McGrif v. Bratton,*
    293 A.D.2d 401, 740 N.Y.S.2d 342 (1st Dep't 2002) ....................... 14

*Mobil Oil Corp. v. Rubenfeld,*
    72 Misc. 2d 392, 339 N.Y.S.2d 623 (Civ. Ct. Queens Co. 1972) ........... 7

*Papasan v. Allain,*
    478 U.S. 265 (1986) ................................................................ 2

*Pasik v. State Board of Law Examiners,*
    114 Misc. 2d 397, 451 N.Y.S.2d 570 (Sup. Ct. N.Y. Co. 1982) ........... 15

*People v. Kruger,*
    87 A.D.2d 473, 452 N.Y.S.2d 78 (2d Dep't 1982) ......................... 8

*Polan v. State Ins. Dep't,*
    3 N.Y.3d 54, 781 N.Y.S.2d 482 (2004) .................................... 4

*Quern v. Mandley,*
    436 U.S. 725 (1978) ........................................................................... 5

*Saratoga County Chamber of Commerce v. Pataki,*
    100 N.Y.2d 801, 766 N.Y.S.2d 654 (2003) ...................................... 9

*Smith v. City University,*
    92 N.Y.2d 707, 685 N.Y.S.2d 983 (1999) ...................................... 14

*United States v. Adler,*
    274 F. Supp. 2d 583 (S.D.N.Y. 2003) .............................................. 8

*United States v. Ron Pair Enters.,*
    489 U.S. 235 (1989) ........................................................................... 4

*Vacco v. Diamondopoulos,*
    185 Misc. 2d 724, 715 N.Y.S.2d 269 (Sup. Ct. N.Y. Co. 1998) ........ 9

*Van Steenburg v. Thomas,*
    242 A.D.2d 802, 661 N.Y.S.2d 317 (3d Dep't 1997) ...................... 14

**Statutes**

N.Y. Ins. Law § 2601 ........................................................................ 12, 13

N.Y. Ins. Law § 7001(b) ......................................................................... 12

N.Y. Ins. Law § 7005(a)(3) ............................................................... 2, 3, 4

N.Y. Not-for-Profit Corp. Law § 706 .................................................... 10

N.Y. Not-for-Profit Corp. Law § 714 .................................................... 10

N.Y. Not-for-Profit Corp. Law § 720 .................................................... 16

N.Y. State Fin. Law § 123-b(1) ............................................................... 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1

**Other Authorities**

Restatement (Third) of Restitution and Unjust Enrichment, Part II—Liability in Restitution,
    Chapter 5, Topic 1, Introductory Note (Tentative Draft 2005) .................. 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------- x
JOHN R. WALCOTT, FRANK                               :
MAISANO, and MARY E. BISHOP,                         :
                                                     :
        Plaintiffs,                                  :        07 CIV 7072 (AKH)
                                                     :
                v.                                   :
                                                     :
WTC CAPTIVE INSURANCE                                :
COMPANY, INC.; CHRISTINE                             :        REPLY MEMORANDUM IN
LASALA; THE HONORABLE                                :        SUPPORT OF DEFENDANTS'
MICHAEL BLOOMBERG; MARSH                             :        MOTION TO DISMISS FOR
MANAGEMENT SERVICES, INC.;                           :        FAILURE TO STATE A CLAIM
GAB ROBINS NORTH AMERICA,                            :
INC.; MARK PAGE; LEWIS                               :
FINKELMAN; JEFFREY                                   :
FRIEDLANDER; MEREDITH JONES;                         :
MARK MELSON; JAMES                                   :
SCHOENBECK; and KENNETH                              :
BECKER, ESQUIRE,                                     :
                                                     :
        Defendants.                                  :
--------------------------------------------------- x
```

Defendants WTC Captive Insurance Company, Inc. ("WTCC"), Christine LaSala, Mark

Page, Lewis Finkelman, Jeffrey Friedlander, Meredith Jones, Mark Melson, James Schoenbeck,

Kenneth Becker, and Mayor Michael Bloomberg hereby submit this reply memorandum in

support of their motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Substituting emotion for legal reasoning and rhetoric for precedent, Plaintiffs ask this

Court to salvage their Complaint despite their failure to plead a single viable claim. Relying on

*Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), Plaintiffs insist repeatedly that Defendants'

motion to dismiss may be granted only if "it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." (Plaintiffs' Memorandum

- 1 -

in Opposition ["Opp."] at 4; *see also id.* at 10, 55–56).  Plaintiffs ignore that, in *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007), the Supreme Court held that this "no set of facts" language "has earned its retirement" and "is best forgotten." *Id.* at 1969.  Rather, Plaintiffs are required to support their Complaint with enough factual allegations "to raise a right to relief above the speculative level," *id.* at 1965, while bearing in mind that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1964–1965 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Here, Plaintiffs offer *nothing but* cursory legal conclusions and unsupportable arguments. Yet Plaintiffs' own pleading demonstrates that the WTCC—an entity established as a result of federal legislation in response to the attack of September 11, 2001—is an insurance company that owes duties to its insureds, the City of New York and its contractors, not a compensation fund for the Plaintiffs' benefit.  Therefore, as has been demonstrated in Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") and is further supported below, none of Plaintiffs' claims is legally viable.  Rather, Plaintiffs assert fiduciary violations against parties that owe them no such duties, based on federal and state statutes that Plaintiffs admit do not grant them rights of relief, while claiming authority in the name of assets in which they have no legally cognizable interest.

Plaintiffs fail to state any valid claims against the Defendants.  This Court should accordingly grant the Defendants' motion, and dismiss Plaintiffs' suit in its entirety.

## I.    ALL DEFENDANTS OTHER THAN THE WTCC ARE PROTECTED BY STATUTORY IMMUNITY.

### A.    The Individual Defendants Are Immune Under New York Insurance Law.

As explained in Defendants' Memorandum of Law, Section 7005(a)(3) of the New York Insurance Law immunizes the Mayor of New York and the WTCC's "members, directors,

officers, employees or agents" from any personal liability while acting in furtherance of the WTCC's "purposes or powers." (Def. Mem. 9–11). In response, Plaintiffs protest that this immunity is unavailable because they have alleged that Defendants have failed to act in accord with the WTCC's purpose (Opp. 20–21, 29–31), which Plaintiffs maintain is "to satisfy and pay" claims filed against the City and its contractors. (Opp. 14). Plaintiffs incorrectly maintain that their characterizations of the WTCC's purpose must be accepted as true. (Opp. 29). But the question of the WTCC's purpose is an issue of law, not of fact—and it is an easy question for this Court to resolve.

First, the Court should disregard Plaintiffs' suggestion that Section 7005 must be interpreted strictly against Defendants and in favor of liability. Plaintiffs' support for this claim is founded in two inapposite lines of authority: (1) cases interpreting the scope of exclusive *franchise rights* granted by the governments to private corporations (Opp. 27–28), and (2) cases interpreting the meaning of statutes purporting to *abrogate* a state's *inherent sovereign* immunity (Opp. 28 & n.14). None of these cases relates to the issue at hand, the scope of an express affirmative grant of statutory immunity.[1]

Next, Plaintiffs attempt to establish that the WTCC was created for the purpose of investigating and paying Plaintiffs' claims, rather than for the benefit of the City and its contractors. Yet New York Insurance Law § 7005 authorizes the creation of a non-profit captive insurance company (such as the WTCC) for an express purpose:

> the *purpose of providing insurance* that is retroactive to September eleventh, two thousand one, *for risks incurred by [New York City] and its affiliated companies*

---

[1] Plaintiffs' erroneous reliance on these cases is further compounded by the actual case holdings, which provide that courts should strictly interpret statutes in derogation of sovereign immunity *against* claimants, *i.e.*, in *favor* of immunity. *See Breen v. Mortgage Comm'n*, 285 N.Y. 425, 35 N.E.2d 25 (1941); *In re Hicka*, 180 Misc. 173, 40 N.Y.S.2d 267 (Sup. Ct. N.Y. Co. 1943).

related to or arising out of activities in or near the World Trade Center site in response to the attacks of September eleventh, two thousand one.

N.Y. Ins. Law § 7005(a)(3) (emphasis added). This plain statutory text establishes that, *as a matter of law*, the WTCC's purpose is to provide insurance coverage to its insureds.

Rather than address this controlling law, which both Defendants *and* Plaintiffs quoted in their respective memoranda (Def. Mem. 10; Opp. 26), Plaintiffs rely on cherry-picked statements from "the statute's contemporary history and the historical background," which they insist establish that the Captive's exclusive intended purpose was unopposed claim payment.[2] (Opp. 32). But the authoritative statement of a statute's meaning is the statutory text, not legislative history or other extrinsic material. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005); *see also United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (when statute is plain, interpretation begins and ends with "the language of the statute itself"). Here, the controlling statute states that the WTCC was created for the purpose of providing insurance coverage to the City of New York and its contractors, and *three sentences later* grants immunity to the individual Defendants as long as they are acting in furtherance of this purpose. *See* N.Y. Ins. Law § 7005(a)(3). Such clarity renders resort to legislative history unnecessary. *Polan v. State Ins. Dep't*, 3 N.Y.3d 548, 781 N.Y.S.2d 482, 483 (2004) (statutory text is best evidence of legislative intent, and "as a general rule, a statute's plain language is dispositive"). Though Plaintiffs clearly are frustrated that the WTCC is faithfully pursuing its mandate to provide

---

[2] Through their reliance on legislative history and principles of statutory construction (Opp. 32), Plaintiffs implicitly concede that the WTCC's purpose is a question of law, not of fact, and therefore that this Court is not required to accept Plaintiffs' self-serving characterizations and conclusions. *See Twombly*, 127 S. Ct. at 1965.

insurance coverage to its insureds, that disappointment cannot alter the clear statutory text and the WTCC's obligations thereunder.[3]

Plaintiffs' accusations that the WTCC and the individual Defendants have engaged in "unauthorized" conduct must similarly be disregarded. Once stripped of rhetoric, Plaintiffs' central complaint is that the WTCC has paid administrative costs while defending against Plaintiffs' underlying suits, rather than immediately investigating and paying Plaintiffs' claims. (*See, e.g.*, Opp. 20, 24–25). Yet Plaintiffs' own authorities note that the Captive is authorized—and, indeed, required—to maintain a defense on behalf of its insureds and to pay administrative costs. *See, e.g.*, Opp. 15 (quoting FEMA Grant, Art. VI) (requiring WTCC funds to be used "to pay all costs relating to the operation of the Captive, *including but not limited to . . . administrative and defense costs.*" (emphasis added)); *see also* Def. Mem. 3–7 (discussing the grants, certificates, and policies cited by Plaintiffs' Complaint). Accordingly, such actions are unquestionably *authorized* by prevailing law.

In short, Plaintiffs' own pleading establishes that the WTCC and the individual Defendants have not engaged in unauthorized conduct or violated the WTCC's purposes as a

---

[3] Even if resort to legislative history were warranted, notwithstanding Section 7005's unambiguous text, Plaintiffs' reliance on post-enactment statements from various politicians is particularly inappropriate, as courts uniformly have held that such statements are entitled to essentially no weight, *Quern v. Mandley*, 436 U.S. 725, 736 n.10 (1978), because they represent, at most, the personal views of a single legislator. *Blanchette v. Conn. Gen. Ins. Corp.*, 419 U.S. 102, 132 (1974).

In any event, Defendants already have explained that the WTCC's history supports their understanding of its purpose and contradicts Plaintiffs' revisionist claims. (Def. Mem. 3–7). Indeed, the WTCC's Certificate of Incorporation, the document Plaintiffs claim sets forth the WTCC's purposes (Opp. 31 & n.17), states expressly that the WTCC's purpose is to provide insurance coverage to the City of New York and its contractors. (Def. Mem. 6). The coverage was provided through a Policy that *requires* the WTCC to defend its insureds against suits (Def. Mem. 6–7), an obligation that the Plaintiffs repeatedly ask this Court to disregard.

matter of law. Therefore, the individual Defendants are immune from personal liability, as provided by New York Insurance Law § 7005.

**B.      Defendants' Statutory Immunity Bars Both Damages And Monetary Equitable Relief.**

Plaintiffs argue in the alternative that even if the Defendants are protected by Section 7005, immunity is not available because Plaintiffs seek solely equitable relief, as opposed to direct monetary damages. (Compl. 35.) However, Plaintiffs' claim that they "do not seek any personal remuneration other than reimbursement of costs incurred in prosecuting this action," (Opp. 8), must be rejected out of hand. In their Complaint, Plaintiffs expressly requested an award of punitive damages in their favor, (Compl. 53), and demanded that the Court order "[t]hat *the Plaintiffs* have judgment against the Defendants for any sum or balance found to be improperly paid or received due Plaintiffs from the defendant." (*Id.* (emphasis added)). Though Plaintiffs should now be understood to have abandoned these claims through their Opposition, Defendants properly and conclusively asserted their statutory immunity against Plaintiffs' original demands for monetary damages.

Plaintiffs' further claim that Section 7005's grant of immunity from personal liability does not bar their request for equitable relief in the form of "restitution to the fund," (Opp. 35), also is flawed. Restitution, as an equitable alternative to damages, is considered a form of personal liability. *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 340–341 (S.D.N.Y. 2005) (discussing a party's "liability in restitution"); *see also* Restatement (Third) of Restitution and Unjust Enrichment, Part II—Liability in Restitution, Chapter 5, Topic 1, Introductory Note (Tentative Draft 2005) *Cf. Edelman v. Jordan*, 415 U.S. 651, 675–676 (1973) (Eleventh Amendment immunity bars award of equitable restitution, which is "in practical effect indistinguishable in many aspects from an award of damages"). Regardless of how they are

- 6 -

couched, Plaintiffs' claims for monetary relief are barred by the individual Defendants' statutory immunity from personal liability, and should therefore be dismissed.[4]

## II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

As our opening Memorandum of Law demonstrated, the WTCC owes duties only to its insureds (Def. Mem. 12–13), and the individual Defendants owe duties only to the WTCC (*id.* at 14); none of the Defendants owe any duty to the Plaintiffs, much less a fiduciary duty.  These conclusions are supported fully by the WTCC's formation documents, including the FEMA Grant, the WTCC's Certificate of Incorporation, and the WTC Captive Insurance Policy, which establish that Defendants owe no duties to the Plaintiffs—fiduciary or otherwise. (Def. Mem. 5–7).  Yet Plaintiffs do not distinguish (or even address) any of the case law and other authorities cited in Defendants' memorandum.  Instead, they cite to inapplicable cases addressing irrelevant areas of law, none of which supports their fiduciary duty claim in the slightest.

Plaintiffs begin by arguing that "a person who in fact makes governmental decisions may be held to be a governmental fiduciary." (Opp. 37).  The only authority Plaintiffs cite for this proposition is a decision of the Civil Court of Queens County that dealt with the fiduciary duty owed by gasoline station franchisors to their franchisees, and does not even mention "governmental fiduciaries."  Furthermore, the case was reversed on appeal. *Mobil Oil Corp. v. Rubenfeld*, 72 Misc. 2d 392, 339 N.Y.S.2d 623, 632–633 (Civ. Ct. Queens Co. 1972), *aff'd*, 77 Misc. 2d 962, 357 N.Y.S.2d 589 (App. T. 2d Dep't 1974), *rev'd*, 48 A.D.2d 428, 370 N.Y.S.2d 943 (2d Dep't 1975), *aff'd*, 40 N.Y.2d 936, 390 N.Y.S.2d 57 (1976).  Regardless, Plaintiffs offer

---

[4] Defendants further note that as of September 17, 2007, Defendant Lewis Finkelman no longer serves as a member of the WTCC board.  Therefore, even if any of Plaintiffs' claims had merit, and even if they sought solely equitable injunctive relief, all claims against Mr. Finkelman should be dismissed as he is no longer in a position to be subject to such prospective relief.

no explanation of how the Defendants' administration of a not-for-profit insurance company could possibly constitute "governmental" decisionmaking.

Even if the Defendants held governmental authority, that would not mean that they owed fiduciary duties *to the Plaintiffs*. The only cases cited by the Plaintiffs on this point (Opp. 39) are criminal prosecutions in which a District Attorney or U.S. Attorney prosecuted public officials for corruption. *People v. Kruger*, 87 A.D.2d 473, 452 N.Y.S.2d 78 (2d Dep't 1982); *United States v. Adler*, 274 F. Supp. 2d 583 (S.D.N.Y. 2003). Plaintiffs are not public prosecutors, and have no standing to enforce any duties Defendants might owe to others.

At this point, Plaintiffs abandon any attempt to justify their breach of fiduciary duty claim, and instead discuss cases from other areas of law, attempting to show that Plaintiffs have standing to sue the WTCC, without considering the question of *what claim* they might have standing to pursue. Even if Plaintiffs' standing arguments were valid, they would not support the fiduciary duty claim Plaintiffs assert in their complaint. Regardless, the cases Plaintiffs cite actually show that these Plaintiffs lack standing to sue the WTCC and the individual Defendants for anything.

Plaintiffs begin by citing a series of New York State cases holding that taxpayers have standing to challenge unconstitutional spending by State officials. (Opp. 40). None of these cases held that the plaintiffs could assert a claim of breach of fiduciary duty, so they do not support Plaintiffs' First Cause of Action. In any event, these cases relied upon New York State Finance Law § 123-b(1), which, by its own terms, authorizes only an action "against an officer or employee of the state." The very cases cited by Plaintiffs hold that this statute does not permit "challenges to the determinations of local government officials," and cannot possibly mean that the management decisions of a not-for-profit insurance company are somehow subject to the

State Finance Law. *See Saratoga County Chamber of Commerce v. Pataki*, 100 N.Y.2d 801, 766 N.Y.S.2d 654, 661 (2003); *Collella v. Bd. of Assessors*, 95 N.Y.2d 401, 718 N.Y.S.2d 268, 272 (2000).

Moreover, the New York Court of Appeals held in *Abrams v. New York City Transit Authority*, 39 N.Y.2d 990, 387 N.Y.S.2d 235 (1976)—a case mistakenly relied upon by Plaintiffs (Opp. 40)—that "it is one thing to have standing to correct clear illegality of official action and quite another to have standing in order to interpose litigating plaintiffs and the courts into the management and operation of public enterprises." 387 N.Y.S.2d at 236. Instead of litigation, "the ultimate public remedy against poor government management is at the voting machine." *Id*. *Abrams* provides no support for Plaintiffs' positions.

For similar reasons, Plaintiffs' claim of breach of fiduciary duty is not supported by their citation (Opp. 45) to routine administrative law cases holding that a neighbor of a landowner has standing to challenge a grant of a zoning variance to that owner, *Douglaston Civic Ass'n v. Galvin*, 36 N.Y.2d 1, 364 N.Y.S.2d 830 (1974), or that a licensed milk dealer has standing to challenge the grant of a license to a competitor to sell milk in its territory, *Dairylea Corp. v. Walker*, 38 N.Y.2d 6, 377 N.Y.S.2d 451 (1975).

Plaintiffs next suggest that the WTCC can be sued because it is a not-for-profit corporation. (Opp. 41). But the cases they cite were brought by the Attorney General under the Not-for-Profit Corporation Law. *Vacco v. Diamondopoulos*, 185 Misc. 2d 724, 715 N.Y.S.2d 269 (Sup. Ct. N.Y. Co. 1998); *Manhattan Eye, Ear & Throat Hosp. v. Spitzer*, 186 Misc. 2d 126, 715 N.Y.S.2d 575 (Sup. Ct. N.Y. Co. 1999). Plaintiffs are not the Attorney General, and nothing in the Not-for-Profit Corporation Law authorizes them to sue the WTCC or the individual

Defendants.[5] *See* N.Y. Not-for-Profit Corp. Law §§ 706, 714 (setting forth categories of persons empowered to sue not-for-profit corporations); *see also* Opp. 45 ("[P]laintiffs are not within any of the classes of parties expressly authorized by the Not-For-Profit Corporation Law to challenge the Captive's conduct.").

Nor does *Alco Gravure, Inc. v. Knapp Foundation*, 64 N.Y.2d 458, 490 N.Y.S.2d 116 (1985) (cited at Opp. 45) help the Plaintiffs; the Court of Appeals in that case, applying principles of trust law, 490 N.Y.S.2d at 119, held that beneficiaries of a trust, who were "both well defined and entitled to a preference in the distribution of defendant's funds," *id.*, could sue to enforce the trust. The later case of *Consumers Union v. State*, 5 N.Y.3d 327, 806 N.Y.S.2d 99 (2005), limited this holding to identified beneficiaries who are "sharply defined and limited in number," 806 N.Y.S.2d at 111, and held that, in other cases, only the Attorney General has standing to sue for enforcement of charitable trusts. *Id.*

Here, the Plaintiffs are members of a group that is far from "sharply defined and limited in number" and they are, in any event, not seeking to enforce any sort of "charitable trust." The WTCC is an insurance company, not a charity, and Plaintiffs' entitlement to any sort of compensation depends on the adjudication of tort claims that so far have only been subject to threshold judicial proceedings. As such, Plaintiffs have no standing to assert any claim against the WTCC, *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 787 N.Y.S.2d 211, 214 (2004), much less one against its individual directors or officers.

---

[5] Even more off the point are the cases (cited at Opp. 40) holding that shareholders of a for-profit corporation may bring derivative suits against corporate employees. *Knopfler v. Bohen*, 15 A.D.2d 922, 225 N.Y.S.2d 609 (2d Dep't 1962); *Kaplan v. Okun*, 15 A.D.2d 848, 224 N.Y.S.2d 542 (3d Dep't 1962); *Abramson v. Blakely*, 25 Misc. 2d 967, 202 N.Y.S.2d 586 (Sup. Ct. N.Y. Co. 1960).

Plaintiffs' discussion of standing is not only incorrect, but also beside the point. Whether a plaintiff has standing is a separate issue from the question of whether he has asserted any valid cause of action. Here, Plaintiffs cannot assert their claim of breach of fiduciary duty, because the WTCC owed them no duty at all, much less a fiduciary duty.[6]  Nor do the individual Defendants owe any duty to Plaintiffs; as corporate officers and directors, they owe duties only to the corporation. *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F. Supp. 579, 585 (S.D.N.Y. 1989).

The First Cause of Action should therefore be dismissed.

## III.    PLAINTIFFS' DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED.

Defendants' opening Memorandum explains in detail that Plaintiffs' Complaint failed to state a claim for declaratory and ancillary relief, both because (1) Plaintiffs lack any private right of action under the federal and state statutes that formed the basis of their claim, and (2) because Plaintiffs' myriad accusations are flawed substantively. (Def. Mem. 15–25).  Confronted with this showing, Plaintiffs apparently have recanted their Second Cause of Action in its entirety, and now maintain that they "have not plead and do not claim direct causes of action pursuant to the federal and state statutes upon which [Defendants] rely to dismiss the present litigation, other than the FOIL and OML." (Opp. 42.; *but see* Complaint at 39–40, 50–51).

In light of Defendants' comprehensive arguments and Plaintiffs' subsequent abandonment of their independent claim for declaratory relief, Plaintiffs' Second Cause of Action should be dismissed in full.  Yet because Plaintiffs continue to rely on some of these same statutes "to establish, in part, the duties owed to them by the defendants, as well as the

---

[6] For the same reason, Plaintiffs' discussion of the standards for intervention under Rule 24 of the Federal Rules of Civil Procedure (Opp. 46–47) adds nothing to their case; intervention presupposes an existing lawsuit in which some plaintiff has asserted a valid cause of action.

defendants' . . . breach(es) of those statutes" (Opp. 42), Defendants must reiterate that Plaintiffs have failed to state any claim based upon violations of these provisions, which do not provide Plaintiffs with any right to relief. (Def. Mem. 15–24).

Most egregiously, Plaintiffs continue to insist that Defendants have "refused and deliberately failed to investigate a single claim, in blatant violation of N.Y. Insurance Law § 2601," (Opp. 7), an allegation that forms "the gravamen of Plaintiffs' Complaint." (Opp. 9 n.8). But this accusation—and therefore, by extension, *Plaintiffs' entire suit*—is fatally flawed, because the WTCC's conduct is not governed by Section 2601. As noted in Defendants' opening memorandum, New York Insurance Law § 7001(b) sets forth an exhaustive list of those sections of the Insurance Law that apply to captive insurance companies such as the WTCC. (Def. Mem. 20). According to that provision, the WTCC is governed only by (1) Article One of the Insurance Law, pertaining to general provisions; (2) certain specified sections of Article Three, pertaining to administrative and procedural provisions; (3) Article Seventy-Four, pertaining to rehabilitation, liquidation, conservation and dissolution of insurers; and (4) Article Seventy, pertaining to captive insurance companies (as well as any other sections of the Insurance Law specifically referred to therein). N.Y. Ins. Law § 7001(b).[7] Section 2601 is *not* included within this exhaustive list, nor is it referenced elsewhere in the captive insurance

---

[7] To the extent that Defendants mistakenly characterized some additional Articles of the Insurance Law as imposing requirements on the Captive (Def. Mem. 25 n.14), the point made in that footnote remains correct. Applicable provisions of New York Insurance Law impose substantial licensing, organization, reporting, and other requirements upon the Captive, and it would be inconsistent with that statutory framework to subject the WTCC to further requirements under the Public Authorities Accountability Act.

Article. Therefore, Section 2601 simply does not apply to the WTCC, and as a result, Plaintiffs' arguments are without merit.[8]

Plaintiffs concede that none of the statutes upon which they rely provide private litigants with judicially enforceable rights (with the exception of FOIL and the OML, discussed *infra*), so each of Plaintiffs' claims based upon these statutes, directly or indirectly, must be dismissed. But Plaintiffs' continued reliance on New York Insurance Law § 2601 warrants additional comment in light of its clear inapplicability to the WTCC. Plaintiffs' silence regarding this issue speaks volumes.

## IV.    PLAINTIFFS' FOIL AND OML CLAIMS SHOULD BE DISMISSED.

As is demonstrated in Defendants' opening memorandum (Def. Mem. 27–29), the WTCC is an insurance company, not an "agency" within the meaning of the Freedom of Information Law or a "public body" within the meaning of the Open Meetings Law.

Plaintiffs respond that "the issue of the applicability of the FOIL and OML have [sic] already been determined" by the Committee on Open Government. (Opp. 48). But that Committee's role is purely advisory; it has no authority to "determine" anything. As the New York Court of Appeals has held, "the advisory opinions of the Committee on Open Government are 'neither binding upon the agency nor entitled to greater deference in an Article 78 proceeding than is the construction of the agency.'" *Buffalo News, Inc. v. Buffalo Enter. Dev. Corp.*, 84 N.Y.2d 488, 493, 619 N.Y.S.2d 695, 698 (1994) (quoting *John P. v. Whalen*, 54 N.Y.2d 89, 96, 444 N.Y.S.2d 598, 602 (1981)).

---

[8] Even if Section 2601 were applicable to the WTCC, subsection (a)(4) provides that any duty to investigate only attaches to claims "in which liability has become reasonably clear." No such clarity is present here—hence the related litigation pending before this Court and the Second Circuit.

Even if the WTCC were subject to the FOIL or OML, Plaintiffs' claims are barred by the statute of limitations and by their failure to exhaust their administrative remedies. (Def. Mem. 25–26). Plaintiffs maintain that their FOIL claim is timely based on an alleged March 15, 2007 letter (Opp. 50),[9] but this argument is defeated by their own admission (Complaint ¶¶ 185, 191) that this March 15 letter was an "appeal" of their earlier request.[10] A time-barred FOIL claim cannot be revived by either an untimely administrative appeal or a duplicative request. *McGrif v. Bratton*, 293 A.D.2d 401, 402, 740 N.Y.S.2d 342, 343 (1st Dep't 2002); *Van Steenburg v. Thomas*, 242 A.D.2d 802, 661 N.Y.S.2d 317 (3d Dep't 1997).

Plaintiffs are flatly wrong when they argue that the statute of limitations does not begin to run on their OML claim until they receive the minutes of the meetings from which they were excluded. (Opp. 51). Plaintiffs' only support for this argument is *Smith v. City University*, 92 N.Y.2d 707, 685 N.Y.S.2d 983 (1999). In *Smith*, the Court of Appeals actually held that a claim of being wrongly excluded from a meeting accrues at the time the plaintiff is excluded from the meeting, and is time-barred four months later. 92 N.Y.2d at 716, 685 N.Y.S.2d at 987. Only challenges to the actions taken at a meeting accrue upon the release of the minutes of that meeting. *Id.*, 92 N.Y.2d at 716–717, 685 N.Y.S.2d at 987–988. As Plaintiffs' Opposition

---

[9] Though Defendants are required to accept for the purposes of this motion Plaintiffs' allegation that such a letter was sent, Defendants proffer that no such demand was ever received by the WTCC, and note that Plaintiffs did *not* include a copy of this alleged letter among the exhibits supporting their Opposition. (*See generally* Opp. Ex. B).

[10] Plaintiffs' claim that they made only "a deferential allegation that the March letter *could be* considered an appeal of earlier demands," (Opp. 50–51 n.25 (emphasis added)), is contradicted by the plain text of their Complaint: "Plaintiffs' subsequent request, nonetheless, *constitutes an appeal pursuant to 21 N.Y.C.R.R. § 1401.7(h)*, following which, the WTCC was required to 'inform the Plaintiffs and the Committee on Open Government of its determination in writing within ten business days of receipt.'" (Compl. ¶ 191 (emphasis added)).

- 14 -

establishes that their OML claims are based solely on their exclusion from certain meetings (Opp. 24), their claims are time-barred.

Moreover, Plaintiffs contradict themselves by arguing that they did not have to exhaust their administrative remedies because the WTCC claims to be exempt from the FOIL and OML. (Opp. 50). If this were true, then Plaintiffs' claims were immediately rendered "final" for purposes of judicial review. Plaintiffs' FOIL claims accrued when they made their request. Their OML claims accrued when they were excluded from the WTCC's meetings. Plaintiffs cannot disclaim the need to exhaust administrative remedies while relying on administrative review periods to extend their filing deadlines.[11]

Alternatively, even if Plaintiffs could state a FOIL or OML claim against the WTCC, they clearly have no such claim against any of the individual Defendants. *See* Def. Mem. 28 and authorities there cited; *see also Landmark West! v. Tierney*, 9 Misc. 3d 1102A, 806 N.Y.S.2d 445, at *7 (Sup. Ct. N.Y. Co. 2005) ("[A] public official acting in his official capacity, may not be held personally liable in an Article 78 proceeding."), *aff'd*, 25 A.D.3d 319, 807 N.Y.S.2d 342 (1st Dep't), *lv. to app. denied*, 6 N.Y.3d 710, 814 N.Y.S.2d 599 (2006). Plaintiffs attempt to justify their claim against the individual Defendants (Opp. 50) by citing two cases which do not address this issue at all: *Bell v. Herbert*, 476 F. Supp. 2d 235 (W.D.N.Y. 2007), which is a

---

[11] In any event, Plaintiffs' argument regarding exhaustion goes too far. Their sole authority on exhaustion, *Pasik v. State Board of Law Examiners*, permitted a party to demand certain additional documents as part of their timely appeal of a *properly exhausted* FOIL request without first requesting the new documents through a second FOIL letter; it does not excuse the failure to exhaust administrative appeals of a submitted request. *See* 114 Misc. 2d 397, 399, 407, 451 N.Y.S.2d 570, 572, 576 (Sup. Ct. N.Y. Co. 1982). Therefore, even if Plaintiffs' alleged second letter were considered a separate and independent request (notwithstanding their contrary claims), Plaintiffs' suit would be barred by their failure to appeal the WTCC's constructive denial thereof within the requisite thirty days. Plaintiffs' OML claims similarly are barred for failure to exhaust administrative remedies.

federal habeas corpus case, not a case under the FOIL, and *Beechwood Restorative Care Center v. Signor*, 11 A.D.3d 987, 784 N.Y.S.2d 750 (4th Dep't 2004), *aff'd*, 5 N.Y.3d 435, 808 N.Y.S.2d 568 (2005), which is a FOIL case but does not discuss whether individuals may be sued under that law.

Plaintiffs' Third and Fourth Causes of Action should be dismissed.

## V.    PLAINTIFFS EFFECTIVELY CONCEDE THAT THEIR CONVERSION AND REPLEVIN CLAIMS MUST BE DISMISSED.

Plaintiffs *concede* that, to state a claim for conversion or replevin, they "must allege facts demonstrating a superior right of possession to specific personal property or to an identifiable monetary fund, as well as an obligation that it be returned by the possessor" (Op. 51 (citing cases)), and that they "must allege that [they] had ownership, possession or control of the money before its conversion." (*Id.*).

Plaintiffs have not alleged, and cannot possibly allege, any of these things.    Indeed, Plaintiffs *admit* that they "do not assert their *own* superior right of possession to the [WTCC] funds." (Opp. 52 (emphasis in original)).    Instead, they claim they are asserting these claims "on behalf of the [WTCC], not on behalf of the plaintiffs." (Opp. 53).    Because Plaintiffs plainly have no standing to bring any claim "on behalf of the WTCC," *cf.* New York Not-for-Profit Corporation Law § 720 (listing parties who are authorized to bring a derivative suit in the right of a not-for-profit corporation), their Fifth and Sixth Causes of Action should be dismissed with prejudice.

## CONCLUSION

Had Congress so desired, it could have created a victim compensation fund to address claims relating to the post-September 11th rescue, recovery, and debris removal operations, just as it did for claims arising out of the terrorist attack itself.    Congress instead allocated monies for

the creation of a captive insurance company, one charged with a duty to defend its insureds against all claims. This defense ensures that the WTCC's insureds will only be held liable for legally viable claims that are not barred by available defenses. The WTCC will in turn provide indemnification for these proven claims, ensuring that deserving claimants receive compensation. Such a statutory regime *relies on* the ordinary operation of judicial processes in order to protect the City, its contractors, and potential claimants; it does not *supplant* the ordinary course of tort litigation.

Given Congress's decision to provide for an insurance mechanism, as opposed to some alternative methodology for addressing claims arising out of the rescue, recovery, and debris removal efforts, Plaintiffs' complaints are more properly directed at the legislature rather than the judiciary. Society might benefit from a different process—one that takes all claims out of the tort system, lowers burdens of proof, and protects the City and its contractors from unbridled tort liability—but to date Congress has not mandated such a system, and this Court is not empowered to create one.

Under the existing legal framework, Plaintiffs fail to state any valid claims against the Defendants, who are faithfully providing the third-party liability insurance that the WTCC was created to provide. Plaintiffs' accusations, especially those directed at the individual Defendants, are therefore groundless. This Court should grant Defendants' motion, and dismiss Plaintiffs' suit with prejudice.

Dated: October 3, 2007

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
212-788-0600

By: _Lawrence S. Kahn (LK-4078)_
*Chief Litigating Assistant*
Nancy F. Brodie (NB-6200)
Terri Feinstein Sasanow (TS-5966)
*Assistant Corporation Counsels*


*Attorney for Defendant Michael Bloomberg*


*Co-Counsel for Defendants Mark Page, Lewis*
*Finkelman, Jeffrey Friedlander, Meredith*
*Jones and Kenneth Becker*

McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173-1922
212-547-5400

By: _Margaret H. Warner (MW-4644)*_
Robert A. Weiner (RW-3381)
Elliot Silverman (ES-9591)

*\*admitted pro hac vice*

Of Counsel:

M. Miller Baker
McDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, DC 20005-3096
202-756-8000

*Attorneys for Defendants WTC Captive*
*Insurance Company, Inc., Christine LaSala,*
*Mark Melson, and James Schoenbeck*


*Co-Counsel for Defendants Mark Page, Lewis*
*Finkelman, Jeffrey Friedlander, Meredith*
*Jones, and Kenneth Becker*

- 18 -