**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN R. WALCOTT, FRANK MAISANO
and MARY E. BISHOP,

      Plaintiffs,

      v.

WTC CAPTIVE INSURANCE COMPANY,
INC.; CHRISTINE LASALA; THE
HONORABLE MICHAEL BLOOMBERG;
MARSH MANAGEMENT SERVICES, INC.;
GAB ROBINS NORTH AMERICA, INC.;
MARK PAGE; LEWIS FINKELMAN;
JEFFREY FRIEDLANDER; MEREDITH
JONES; MARK MELSON; JAMES
SCHOENBECK; and KENNETH BECKER,
ESQUIRE,

      Defendants.

Case No. 07-CV-7072 (AKH)

Electronically Filed

---

**MEMORANDUM OF LAW**
**IN REPLY TO PLAINTIFFS' OPPOSITION OF THE MOTION OF**
**GAB ROBINS NORTH AMERICA, INC. TO DISMISS PLAINTIFFS' COMPLAINT**

---

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT.......................................................................................................................... 3

I.      THE STANDARD OF REVIEW SET FORTH BY PLAINTIFFS
        IS NOT A CORRECT STATEMENT OF THE LAW .......................................... 3

II.     PLAINTIFFS' RELIANCE ON INADMISSIBLE DOCUMENTS,
        WHILE VIOLATING THE FEDERAL RULES, DOES NOT
        IMPACT LIABILITY ............................................................................................. 4

III.    GAB ROBINS IS STATUTORILY IMMUNE UNDER N.Y.
        INSURANCE LAW § 7005(a)(3) AGAINST ALL CLAIMS
        ALLEGED IN PLAINTIFFS' COMPLAINT......................................................... 5

        A.      GAB Robins Is An "Agent" Of The WTCC .............................................. 6

        B.      New York Law Recognizes That Corporations Can Be
                Personally Liable For Damages.................................................................. 7

        C.      GAB Robins Was Contracted By Or Is Acting With The
                Approval Of New York City ....................................................................... 7

IV.     GAB ROBINS OWES NO FIDUCIARY DUTY TO PLAINTIFFS
        UNDER THE CAPTIVE POLICY ......................................................................... 8

V.      GAB ROBINS IS NOT SUBJECT TO THE FOIL OR OML
        LAWS.................................................................................................................... 10

VI.     PLAINTIFFS FAIL TO STATE ANY CAUSE OF ACTION FOR
        CONVERSION OR REPLEVIN........................................................................... 11

        A.      There Is No Right To Conversion In Money Where The
                Complaint Fails To Allege Specifically Identifiable Funds ..................... 12

        B.      Plaintiffs Have Failed To Plead Any Ownership Right In
                The Corpus Of The Captive Policy .......................................................... 14

        C.      In The Alternative, If Plaintiffs Are Found To Be Asserting
                Conversion and Replevin Claims On Behalf Of The
                WTCC, There Can Be No Relief For Conversion Where
                Damages Are Merely Sought For Breach Of Contract............................. 16

        D.      There Can Be No Right To Replevin Where There Is No
                Conversion................................................................................................ 18

CONCLUSION ..................................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**                                                      **PAGE**

In re Adelphia Communications Corp.,
    365 B.R. 24 (Bankr. S.D.N.Y. 2007).................................................................................3

American Home Assur. Co. v. Merck & Co., Inc.,
    462 F. Supp. 2d 422 (S.D.N.Y. 2006) .........................................................................9

Amron v. Morgan Stanley Investment Advisors, Inc.,
    464 F.3d 338 (2d Cir. 2006) .......................................................................................4

Aramony v. United Way of America,
    949 F. Supp. 1080 (S.D.N.Y. 1996) ...................................................................15, 16

Baker v. Big Star Division of the Grand Union Co.,
    893 F.2d 288 (11th Cir. 1989) ....................................................................................8

Bell Atlantic Corp. v. Twombly,
    __ U.S. __, 127 S.Ct. 1955 (2007) ........................................................................3, 14

Blanchette v. Conn. General Insurance Corp.,
    419 U.S. 102, 95 S. Ct. 335 (1974) ............................................................................5

Blatyt v. Marshall & Lassman,
    812 F.2d 810 (2d Cir. 1987) .......................................................................................9

Blue Cross & Blue Shield of Ala. V. Sanders,
    138 F.3d 1347 (11th Cir. 1998) ..................................................................................9

Bouboulis v. Transport Workers Union of America,
    442 F.3d 55 (2d Cir. 2006) .........................................................................................8

Branum v. Clark,
    927 F.2d 698 (2d Cir. 1991) .......................................................................................3

Brass v. America Film Technologies, Inc.,
    987 F.2d 142 (2d Cir. 1993) .......................................................................................4

In re Chateaugay Corp.,
    10 F.3d 944 (2d Cir. 1993) .......................................................................................16

Citadel Management Inc. v. Telesis Trust, Inc.,
    123 F. Supp. 2d 133 (S.D.N.Y. 2000) ...........................................................12, 13, 17, 18

Conley v. Gibson,
        355 U.S. 41 (1957) ........................................................................ 3

Dubied Machine Co. v. Vermont Knitting Co., Inc.,
        739 F. Supp. 867 (S.D.N.Y. 1990) ............................................... 18

Double Alpha, inc. v. Mako Partners, L.P.,
        99 Civ. 11541(DC), 2000 WL 1036034 (S.D.N.Y. 2000) ............ 13

Edelman v. O'Toole-Ewald Art Assoc., Inc.,
        28 A.D.3d 250, 251, 814 N.Y.S.2d 98 (1st Dep't 2006)................. 9

Elma RT v. Landesmann Int'l Marketing Corp.,
        No. 98-CV-3662 (LMM), 2000 WL 297197 (S.D.N.Y. 2000) ....... 17

Fernicola v. New York State Insurance Fund,
        293 A.D.2d 844, 741 N.Y.S.2d 139 (3d Dep't 2002) .................... 14

Fraser v. Doubleday & Company, Inc.,
        587 F. Supp. 1284 (S.D.N.Y. 1984) ............................................. 16

Independence Discount Corp. v. Bressner,
        47 A.D.2d 756, 365 N.Y.S.2d 44 (2d Dep't 1975) .................. 14, 15

Interior by Mussa, Ltd. V. Town of Huntington,
        174 Misc. 2d 308, 664 N.Y.S.2d 970 (2d Dep't 1997) .................. 12

Iqbal v. Hasty,
        490 F.3d 143 (2d Cir. 2007) ........................................................... 3

Leeds v. Meltz,
        85 F.3d 51 (2d Cir. 1996) ............................................................... 4

MBL Life Assur. Corp. v. 555 Realty Co.,
        240 A.D.2d 375, 658 N.Y.S.2d 122 (2d Dep't 1997) .................... 16

Manufactures Hanover Trust Co. v. Chemical Bank,
        160 A.D.2d 113, 559 N.Y.S.2d 704 (1st Dep't 1990)................ 11, 12

Massive Paper Mills v. Two-Ten Corp.,
        669 F. Supp. 94 (S.D.N.Y. 1987) ................................................. 13

MBL Life Assurance Corp. v. 555 Realty Co.,
        240 A.D.2d 375, 658 N.Y.S.2d 122 (2d Dep't 1997) .................... 16

Meadowbrook-Richman, Inc. v. Associated Financial Corp.,
    325 F. Supp. 2d 341 (S.D.N.Y. 2004) ............................................................6

Murphy v. Kuhn,
    90 N.Y.2d 266, 660 N.Y.S.2d 371 (1997)......................................................9

National Woodwork Manufactures Association v. NLRB,
    386 U.S. 612, 87 S. Ct. 1250 (1967) .............................................................5

In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation,
    491 F.3d 638 (7th Cir. 2007) .........................................................................3

Peoples Westchester Savings Bank v. FDIC,
    961 F.2d 327 (2d Cir. 1992) .........................................................................12

Peters Griffin Woodward, Inc. v. WCSC, Inc.,
    88 A.D.2d 883, 452 N.Y.S.2d 599 (1st Dep't 1982)................................16, 17

Republic of Haiti v. Duvalier,
    211 A.D.2d 379, 626 N.Y.S.2d 472 (1st Dep't 1995)...................................12

Rolls-Royce Motor Cars, Inc. v. Schudroff,
    929 F. Supp. 117 (S.D.N.Y. 1996) ...............................................................16

Swan Brewery Co., Ltd. V. United States Trust Co.,
    832 F. Supp. 714 (S.D.N.Y. 1993) ...............................................................12

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506, 122 S. Ct. 922 (2001) .............................................................4

The High View Fund, L.P. v. Hall,
    27 F. Supp. 2d 420 (S.D.N.Y. 1998) .....................................................13, 14

Toussaint v. JJ Weiser & Co.,
    2005 WL 356834 (S.D.N.Y. 2005) ................................................................9

U.S. v. Mine Workers of America,
    330 U.S. 258, 67 S. Ct. 677 (1947) ...............................................................5

Vacco v. Diamandopoulos,
    185 Misc. 2d 724, 715 N.Y.S.2d 269 (Sup. Ct., N.Y. Cty., 1998)..................11

In re Viewpoint Realty Corp.,
    17 A.D.3d 363, 792 N.Y.S.2d 566 (2d Dep't 2005) ........................................7

In re: World Trade Center Disaster Site Litigation,
        S.D.N.Y Case No. 21-MC-100 (AKH) ............................................................................15

**STATUTES**                                                            **PAGE**

N.Y. Pub. Officer's Law § 89.................................................................................10, 11

N.Y. Pub. Officer's Law § 95.................................................................................10, 11

**OTHER AUTHORITIES**                                                   **PAGE**

5C, Wright & A. Miller, Federal Practice and Procedure, § 1216 (3d Ed. 2004) ...........................4

## PRELIMINARY STATEMENT

Defendant GAB Robins North America, Inc. ("GAB Robins") joins in the Reply Memorandum In Support of Defendants' Motion to Dismiss filed by the WTCC Defendants[1] and the Honorable Michael Bloomberg in this matter. In addition, GAB Robins respectfully submits this brief to supplement the arguments contained in the WTCC's reply papers.

Through generous use of innuendo, omission, and misleading arguments, plaintiffs, in their opposition, completely distort the circumstances surrounding the formation and goal of the WTC Captive Insurance Company, Inc. ("WTCC") and the work being done by GAB Robins, its third-party claims administrator. Even giving whatever deference may be due to this distortion, plaintiffs still fail sufficiently to plead any cause of action against GAB Robins. Illustrative of this failure is plaintiffs' reliance on cases that actually support defendants' position as well as their misleading contention that the Captive Policy does not provide "insurance." (See Plaintiffs' Brief (hereinafter "Pb") at 6).

First, throughout the entirety of their opposition, plaintiffs rely upon cases that, even as argued, contextually support the arguments set forth by defendants. As to the arguments where authority supporting defendants' positions is not presented, this is because plaintiffs generally offer *no* case law in opposition. Accordingly, plaintiffs, to present an allegedly cogent argument, manipulate, misstate, and make conclusory statements without presenting this Court, or the defendants, any basis in law or fact sufficient to withstand dismissal.

Second, plaintiffs mislead and cloud the arguments presented before this Court by characterizing the coverage provided New York City and its contractors under the Captive Policy

---

[1] WTCC Defendants are identified as those parties presently represented by the law firm of McDermott Will & Emery LLP: WTCC Insurance Company, Inc.; Mark Melson; James Schoenbeck; Christine LaSala; Mark Page; Lewis Finkelman; Jeffery Friedlander; Meredith Jones; and Kenneth Becker. All of the above defendants shall be collectively referred to as the WTCC Defendants.

as non-insurance.  (See Pb at 6).  However, and contrary to the allegations made by plaintiffs, this Court need look no further than the actual "WTC Captive Insurance Company, Inc. Liability Insurance Policy (Occurrence Basis)" ("Captive Policy") to undermine plaintiffs' illusory contention.  (Copy of the Captive Policy is attached to Plaintiffs' Declaration as Exhibit B-8).  In Section 2, Coverage, of the insuring agreement, the coverage obligation to the City of New York and its various contractors under the Captive Policy is defined:

> 2.01    Insurance Coverage Provided; Commencement of Insured Status
>
> (a)    In consideration of the Premium and any Contingent Premium and subject to all of the terms, conditions and limitations of this Policy . . . the Company shall pay on behalf of the Insureds all sums which Insureds become legally obligated to pay as Damages because of Claims (including Uniformed City Worker Claims and Pre-Existing Claims) arising from or relating to Debris Removal
>
> * * *

(Captive Policy, p. 7, attached to Plaintiffs' Declaration as Exhibit B-8).  Accordingly, plaintiffs misstate the character and implication of the coverage provided under the Captive Policy, which, by its terms, expressly provides liability insurance to the City of New York, and its other Additional Named Insureds, arising from post-September 11 debris removal activities.  (See Captive Policy).

In carefully reviewing the moving and reply submission of the defendants, the lack of merit to plaintiffs' Complaint becomes plain.  Accordingly, it should be dismissed in its entirety under Rule 12(b)(6).

**ARGUMENT**

I.  **THE STANDARD OF REVIEW SET FORTH BY PLAINTIFFS IS NOT A CORRECT STATEMENT OF THE LAW**

Plaintiffs assert that "[a] motion to dismiss under Rule 12(b)(6) may be granted only if it 'appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.'" (Pb at 4 (quoting, Conley v. Gibson, 355 U.S. 41, 45-46 (1957), overruled in part by, Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007); Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)) (emphasis added).  Plaintiffs thereafter, throughout the entirety of their opposition, rely upon this incorrect standard in presenting all arguments before the Court.  Conley has been overruled, in pertinent part, by the Supreme Court, and the "no set of facts" test is no longer the standard applied.  Twombly, __ U.S. at __, 127 S.Ct. at 1964-65; see also, In re Adelphia Communications Corp., 365 B.R. 24, 33 n. 5 (Bankr. S.D.N.Y. 2007) (recognizing that Twombly overturned the previous standard set forth by Conley); In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation, 491 F.3d 638 (7th Cir. 2007).  As recognized by the Second Circuit, "[Twombly] asserted that this 'no set of facts' language 'has earned its retirement' and 'is best forgotten.'" Iqbal v. Hasty, 490 F.3d 143, 155 (2d Cir. 2007), quoting, Twombly, __ U.S. at __, 127 S.Ct. at 1969.

The proper standard of review on this motion to dismiss under Rule 12(b)(6) is that set forth in the defendants' moving briefs.  Namely, that a complainant's factual allegations must actually *raise a right to relief* and do more than simply put defendants on notice of the causes of action plead against them.  Twombly, __ U.S. at __, 127 S.Ct. at 1964-65.  The factual allegations presented in a complaint must be enough to rise above a speculative right to relief, as "the pleading must contain something more . . . than . . . a statement of facts that merely creates suspicion [of] a legally cognizable right to action." Twombly, __ U.S. __, 127 S.Ct. at 1965,

citing, 5 C, Wright & A. Miller, <u>Federal Practice and Procedure</u>, § 1216, pp. 235-36 (3d ed.

2004); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508, N.1, 122 S.Ct. 922

(2001).

Plaintiffs argue, albeit mistakenly, that the "Complaint contains the required allegations

with sufficient particularity to place all Defendants upon notice of the complained transactions."

(Pb at 52). Conversely, to survive a motion to dismiss, a complaint must contain allegations that,

if true, are "sufficient to establish liability[,]" and do more than simply put the defendants on

notice of the potential allegations. <u>Amron v. Morgan Stanley Inv. Advisors, Inc.</u>, 464 F.3d 338,

343-44 (2d Cir. 2006). The Second Circuit requires that the alleged liability <u>must</u> be based upon

well-pled facts, because "bald assertions and conclusions of law will not suffice." <u>Id.</u>

Accordingly, the unsupported, conclusory statements by plaintiffs set forth in their opposition,

arguing that the Complaint contains <u>notice</u> of the causes of action pled against defendants, is not

sufficient under the standard of review articulated by the Supreme Court. The allegations in the

Complaint, and as reargued by plaintiffs in their opposition, are insufficient to establish liability,

and require dismissal under Rule 12(b)(6).

## II.    PLAINTIFFS' RELIANCE ON INADMISSIBLE DOCUMENTS, WHILE VIOLATING THE FEDERAL RULES, DOES NOT IMPACT LIABILITY

Plaintiffs attempt, both in the Complaint and in their opposition, to cloud the record by

inundating the Court with extraneous, *post hoc* observations and information that simply have no

bearing upon the propriety of this motion. In deciding a motion to dismiss pursuant to Rule

12(b)(6), the Court *may* consider documents attached to the Complaint as exhibits or

incorporated in it by reference. <u>Brass v. Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir.

1993). However, the factual allegations allegedly supported by these referenced documents still

must actually raise a right to relief. <u>See</u> <u>Leeds v. Meltz</u>, 85 F.3d 51, 53 (2d Cir. 1996).

Plaintiffs' submission does not meet this standard. The majority of the documents attached to the plaintiffs' declaration, and referenced in the Complaint, are inadmissible, non-authenticated, extraneous diversions improperly placed before this Court, which fail raise to a right for relief.

Specifically, the plaintiffs rely, erroneously, upon significant "subsequent legislative history" in the form of letters, testimony, press releases, and newspaper articles from individual politicians commenting upon the actions of the WTCC, after its implementation and funding grant. Case law is very clear that "such post passage remarks, however explicit, cannot serve to change the legislative intent of Congress . . . ." Blanchette v. Conn. Gen. Ins. Corp., 419 U.S. 102, 130, 95 S.Ct. 335 (1974); see also, e.g., U.S. v. Mine Workers of Am., 330 U.S. 258, 282, 67 S.Ct. 677 (1947). "Such statements 'represent only the personal views of legislators, since the statements were (made) after passage of the Act.'" Id., quoting, Nat'l Woodwork Manufactures Ass'n. v. NLRB, 386 U.S. 612, 639 n. 34, 87 S.Ct. 1250 (1967). These statements have no bearing upon proper disposition of this matter and are inappropriately relied upon as "fact" in the Complaint, as these "materials" are merely inadmissible, non-authenticated hearsay.

However, to the extent that the Court decides to indulge plaintiffs' inclusion of these materials in its determination of this motion, plaintiffs have still failed to carry their burden to plead facts sufficient to maintain their action.

### III.    GAB ROBINS IS STATUTORILY IMMUNE UNDER N.Y. INSURANCE LAW § 7005(a)(3) AGAINST ALL CLAIMS ALLEGED IN PLAINTIFFS' COMPLAINT

In their opposition, plaintiffs advance the notion that GAB Robins is not entitled to the statutory immunity provided under N.Y. Insurance Law § 7005(a)(3)[2] because (1) such immunity

---

[2] N.Y. Insurance Law § 7005(a) provides:

> . . . The members or directors, as the case may be, of such pure captive insurance company shall be appointed by the mayor of such city or by such other city official as the mayor may designate. Neither the mayor of such city,

is only available to agents of the WTCC, which defendant is not, (2) GAB Robins is a corporation not entitled to immunity from "personal liability," and (3) GAB Robins was not contracted by the City of New York. (Pb at 33). None of these arguments against GAB Robins' statutory immunity withstand judicial review.

### A.    GAB Robins Is An "Agent" Of The WTCC

Plaintiffs argue, without citation to any authority, that a "captive manager" of the WTCC is not eligible for immunity under Section 7005(a)(3) because that section does not explicitly refer to "captive managers." (See Pb at 33). However, this argument carries no basis in law or fact, and contradicts the statutory text providing immunity to all "agents" of the WTCC.

Plaintiffs allege that "[t]he Complaint unambiguously avers that defendants GAB Robbins, Inc. [sic], and Marsh Management Services, Inc., were, at all relevant times, entities with whom the Captive contracted to manage or administer its affairs . . . ." (Pb at 33). This characterization of the relationship between GAB Robins and the WTCC, while untrue, does not erode the agency relationship existent between them. GAB Robins was contracted by the WTCC, under mandate from the FEMA Grant, as the third-party administrator hired to provide claims administration services for claim against the Captive Policy. Thereby, GAB Robins is an "agent" of the WTCC. New York law recognizes that services provided by third-party administrators in handling claims are in the capacity of an "agent" for the company. See, e.g., Meadowbrook-Richman, Inc. v. Associated Financial Corp., 325 F.Supp.2d 341, 355 (S.D.N.Y. 2004) (demonstrating that the third-party administrator was an agent of the claims service).

---

nor any of the captive's members, directors, officers, employees or agents appointed by or with the approval of such city, nor any officials, officers, employees or agents of the city, while acting within the scope of their authority, shall be subject to any personal liability resulting from the exercise or carrying out of any of the city's or captive's purposes or powers under this article.

6

Therefore, as an "agent" of the WTCC, GAB Robins is properly brought within the statutory immunity provided by N.Y. Insurance Law § 7005(a).

### B.  New York Law Recognizes That Corporations Can Be Personally Liable For Damages

Plaintiffs further contend that GAB Robins is not extended statutory immunity because, as a corporation, they can have no immunity from "personal liability." (Pb at 33). In making this assertion, plaintiffs again fail to cite any authority supporting their proposition, merely declaring, "[n]o defendant has even attempted to explain how a corporation can have immunity from 'personal liability,' the only species of immunity offered by the statute." (Id.). In reality, however, GAB Robins, as well as the other corporate defendants, could be held personally liable, under New York law, for damages assessed against it. See, e.g., In re Viewpoint Realty Corp., 17 A.D.3d 363, 792 N.Y.S.2d 566 (2d Dep't 2005) (where corporation, and not its individual members, was held "personally liable" for taxes owed to the county). It naturally follows that § 7005(a) affords immunity from GAB Robins being held personally liable for any damages assessed against it associated with administering claims for the WTCC.

### C.  GAB Robins Was Contracted By Or Is Acting With The Approval Of New York City

For purposes of this motion, plaintiffs have alleged that GAB Robins was "appointed by or with the approval of [the] city," through their contract with the WTCC:

> For purposes of the present litigation, it is irrelevant that any or some individual or corporate defendant [sic], *arguendo*, may not actually be a public servant because *all of these defendants* were either appointed by such public servants and/or are under their control – those who arguably participate in the affairs of government in an insubstantial way are controlled by and answer to public officers . . . .

(Pb at 39-40) (emphasis in original). GAB Robins contracted with the WTCC to administer claims filed against the Captive Policy. According to the Complaint, taking all factual

allegations as true, because GAB Robins was "either appointed by such public servants and/or [is] under their control[,]" in its role as third-party claims administrator for the Captive Policy, GAB Robins is acting by or with the approval of New York City, as it pertains to statutory immunity under N.Y. Insurance Law § 7005(a).

## IV.     GAB ROBINS OWES NO FIDUCIARY DUTY TO PLAINTIFFS UNDER THE CAPTIVE POLICY

Plaintiffs allege that defendants' motions are insufficient because "all of the reported cases and authority cited in Defendants' Memoranda pertain to [ ] for-profit insurance corporations." (Pb at 36-37). After stating that the insurance-related cases are "inapposite" to the arguments in this motion, plaintiffs fail to present any contrary authority placing a fiduciary duty upon third-party administrators. This is because, outside of the insurance context, the same general concepts as argued in the moving brief apply. An administrator does not automatically owe third-parties a fiduciary duty without some further showing of a special relationship. See e.g., Bouboulis v. Transport Workers Union of Am., 442 F.3d 55, 65 (2d Cir. 2006) (finding that to owe a fiduciary duty, an administrator must have discretionary authority); Baker v. Big Star Div. of the Grand Union Co., 893 F.2d 288, 290 (11th Cir. 1989) (holding that "a plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary).

As plaintiffs allege *no* special relationship between themselves and GAB Robins, who was hired to administer claims under the Captive Policy, the only means by which a fiduciary duty can arise is through a contractual relationship; a relationship plaintiffs fail to identify or even allege in the Complaint. Plaintiffs' failure to address this point amounts to a concession that no contract exists between these parties.

Even if such contract had existed, a claims administrator's duties generally "are to their principals, the insurance companies, to perform whatever tasks were assigned to them, [and] this duty [does] not serve to create a contractual obligation between the [third-party] and [the insured]." American Home Assur. Co. v. Merck & Co., Inc., 462 F.Supp.2d 422, 432 (S.D.N.Y. 2006). To allege a fiduciary relationship, some other special consideration must still be established extending a duty from the third-party administrator to an alleged beneficiary of the Captive Policy.

Plaintiffs allege no special relationship in the Complaint because none exists. Under ERISA, for example, third-party administrators who have no power to make decisions "as to plan policy, interpretation, practices or procedures and thus perform purely ministerial functions are not fiduciaries." Toussaint v. JJ Weiser & Co., 2005 WL 356834, *6 (S.D.N.Y. 2005) (internal quotations omitted). "Whether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." Blatyt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir. 1987). Accordingly, third-party administrators cannot owe fiduciary duties to potential beneficiaries unless "they have the authority to make ultimate decisions regarding benefits eligibility." Blue Cross & Blue Shield of Ala. V. Sanders, 138 F.3d 1347, 1353 (11th Cir. 1998).

Be it with regard to insurance companies specifically, or in general, when attempting to attach fiduciary liability upon a third-party administrator such as GAB Robins, pleading of a special relationship is required. See, e.g., Edelman v. O'Toole-Ewald Art Assoc., Inc., 28 A.D.3d 250, 251, 814 N.Y.S.2d 98 (1st Dep't 2006); Murphy v. Kuhn, 90 N.Y.2d 266, 660 N.Y.S.2d 371 (1997). This relationship can either be contractual, or based upon the powers of the administrator; here, no such relationship is plead, much less exists.

9

The only contractual relationship alleged in this matter exists between GAB Robins and the WTCC. GAB Robins is a third-party administrator, contracted to provide administration services with respect to claims submitted by insureds under the Captive Policy. Nowhere is any duty defined which is owed by GAB Robins to the plaintiffs; all contractual obligations are exclusively to the WTCC. Moreover, as claims administrator, GAB Robins has no discretional authority to alter practice or procedure under the Captive Policy. The ultimate claims determination remains in the province of the WTCC. GAB Robins merely acts to accept and administer claims, making only recommendations to the WTCC. Accordingly, as plaintiffs have failed to allege any theory by which a fiduciary relationship could arise between them and GAB Robins, any allegations in plaintiffs' Complaint purporting to assert a cause of action against this defendant based upon a breach of fiduciary duty must be dismissed.

## V.    GAB ROBINS IS NOT SUBJECT TO THE FOIL OR OML LAWS

Plaintiffs assert that "in their respective memoranda, the defendants again deny that either FOIL or the OML apply to them because, they claim, they are not public authorities but private corporations. . . ." (Pb at 48). However, GAB Robins does not contend that it is not a public authority, but actually is a private corporation to which the Freedom of Information Law ("FOIL"), Pub. Officer's Law § 89, *et seq.*, and the Open Meetings Law ("OML"), Pub. Officers Law § 95, *et seq.*, do not apply. It should also be noted that plaintiffs have never made a FOIL or OML request to GAB Robins, and merely reply upon the one sent to the WTCC. (See Plaintiffs' Declaration, Exhibit B-18).

Succinctly, GAB Robins does not fall within the category of "agencies" or "public bodies" that are subject to FOIL and OML. FOIL defines "agency" as "any state or municipal department, board, bureau, division, commission, committee, public authority, public

corporation, council, office or other governmental entity performing a governmental or proprietary function for the state or any one or more municipalities thereof, except the judiciary or the state legislature" N.Y. Pub. Officer's Law § 86(3). GAB Robins is a privately held, for-profit corporation that does not exercise any governmental powers, powers delegated by a City or the State, or receive any funding directly from the government. Accordingly, GAB Robins is not an "agency" under FOIL, and is exempt from plaintiffs' alleged demands. This is also true under OML, which only apples to "public bodies," defined as "any entity for which a quorum is required in order to conduct public business and which consists of two or more members, performing a governmental function for the state or for any agency or department thereof . . . ." N.Y. Pub. Officer's Law § 102(2). Any causes of action plead against GAB Robins in the Complaint stemming out of FOIL and OML must be dismissed.

## VI.    PLAINTIFFS FAIL TO STATE ANY CAUSE OF ACTION FOR CONVERSION OR REPLEVIN

A cause of action for conversion is established when plaintiffs set forth facts "demonstrating that [they have] legal ownership or an immediate superior right of possession to specific identifiable personal property, and that [defendants] exercised unauthorized dominion over the property to the exclusion[] of [plaintiffs'] rights." Vacco v. Diamandopoulos, 185 Misc.2d 724, 730, 715 N.Y.S.2d 269 (Sup. Ct., N.Y. Cty., 1998). To claim such a right over money, as plaintiffs are in this matter, "[t]here must be a specific identifiable fund and an obligation to return it in order for an action for conversion to lie." Id., citing, Manufactures Hanover Trust Co. v. Chemical Bank, 160 A.D.2d 113, 124, 559 N.Y.S.2d 704 (1st Dep't 1990). Here, despite plaintiffs' arguments to the contrary, it cannot be established upon the facts as plead within the Complaint that plaintiffs can meet either of the two requirements set forth in Vacco, or the numerous other New York cases cited within their opposition. In showing that the

11

plaintiffs have failed to carry their burden in pleading facts sufficient to establish liability, the Court need look no further than those cases cited by plaintiffs in "support" of their arguments.

**A.    There Is No Right To Conversion In Money Where The Complaint Fails To Allege Specifically Identifiable Funds**

New York law is simple in this respect, namely, an action for conversion of money will lie only where "there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." Manufactures Hanover Trust Co., 160 A.D.2d 113, 559 N.Y.S.2d at 712; see also, Republic of Haiti v. Duvalier, 211 A.D.2d 379, 626 N.Y.S.2d 472 (1st Dep't 1995). "More particularly, if the allegedly converted money is incapable of being described or identified in the same manner as a specific chattel, *it is not the proper subject of a conversion action.*" Interior by Mussa, Ltd. V. Town of Huntington, 174 Misc.2d 308, 664 N.Y.S.2d 970, 972 (2d Dep't 1997) (emphasis added). The reason for this inapplicability of the conversion right to relief in money is because, under New York law, "a depositor loses (and the bank gains) title to money deposited in a general account at the moment those funds are deposited." Citadel Management Inc. v. Telesis Trust, Inc., 123 F.Supp.2d 133, 148 (S.D.N.Y. 2000), citing, Peoples Westchester Savings Bank v. FDIC, 961 F.2d 327, 330, 332 (2d Cir. 1992); Swan Brewery Co., Ltd. V. United States Trust Co., 832 F.Supp. 714, 718 (S.D.N.Y. 1993). See also, Laura B. Bartell, "The Lease of Money in Bankruptcy: Time for Consistency?" 16 Bankr.Dev. J. 267, 287-88 (2000) (stating that, as a matter of state law, "when a customer of a bank deposits funds into an account at the bank, the . . . funds themselves no longer belong to the depositor, but become property of the bank and available to the bank for use in its business." Citadel Management Inc., 123 F.Supp.2d at 148 n. 4).

Plaintiffs only allege that GAB Robins has been "improperly or excessively" paid "$8,585,736", which amount somehow grounds a right to relief in both conversion and replevin.

(Complaint, ¶¶ 216, 217). However, merely pleading a sum of money to be returned is not sufficient identification of the funds under conversion. <u>Double Alpha, Inc. v. Mako Partners, L.P.</u>, 99 Civ. 11541(DC), 2000 WL 1036034, *4 (S.D.N.Y. 2000) (finding that dismissal for failure to state a claim was required because "[a]lthough plaintiff alleges defendants owe it the specific sum of $610,674 . . . it does not claim ownership to a specific identifiable segregated sum of money"); <u>The High View Fund, L.P. v. Hall</u>, 27 F.Supp.2d 420, 429 (S.D.N.Y. 1998) (holding that "[b]ecause plaintiffs do not claim ownership of a 'specifically identifiable, segregated [$1 million],' . . . they fail to state a claim for conversion of money" (internal citations omitted)); <u>see also</u>, <u>Massive Paper Mills v. Two-Ten Corp.</u>, 669 F.Supp. 94, 96 (S.D.N.Y. 1987). Absent any claim in the Complaint that the funds are actually segregated in a separate account, or as separate property, plaintiffs fail to allege that "specifically identifiable" funds have been converted by GAB Robins. <u>See</u> <u>Id.</u> Therefore, because the Complaint contains no such allegations, the count for conversion must be dismissed as against GAB Robins and all other defendants. <u>See</u> <u>Citadel Management Inc.</u>, 123 F.Supp. at 151.

To illustrate the dismissal requirement of the conversion claim, two cases cited by plaintiffs in support of their opposition are illuminating. First, in <u>Citadel Management Inc.</u>, <i>supra.</i>, funds were transferred to the bank account of the defendant, and not segregated or earmarked "in a distinct account for the purpose of the transaction, but were transferred into the [defendant's] general . . . account." <u>Id.</u> As there were no specific allegations in the Complaint setting forth the required segregation of the funds, the Court dismissed this cause of action against the defendant because "the prerequisite to stating a claim for conversion" had not been plead. <u>Id.</u> In <u>The High View Fund v. Hall</u>, <i>supra.</i>, plaintiffs sought to recover the sum of $1 million, without actually identifying that these funds had been segregated or were independently

13

identifiable. The High View Fund, 27 F.Supp.2d at 429. The court held that, because the Complaint failed to identify the funds directly, plaintiffs failed to state a claim for relief in conversion, thereby granting defendants' motion to dismiss.

To counteract the above weight of authority, plaintiffs attempt to reply upon Vacco v. Diamandopoulos, *supra.*, where a New York court declined to grant a motion to dismiss because discovery had not been conducted regarding potential segregation of the funds. However, such reliance is not properly placed, and not precedential to this Court. The requisite standard of review on a motion to dismiss in federal court is that the complaint's factual allegations actually *raise a right to relief.* Twombly, __ U.S. at __, 127 S.Ct. at 1964-65. Vacco was determined under a lesser standard of review, namely "whether the facts alleged fit within any cognizable theory." Fernicola v. New York State Insurance Fund, 293 A.D.2d 844, 741 N.Y.S.2d 139, 141 (3d Dep't 2002) (internal citations omitted). As the New York standard of review is much broader and more inclusive than that applied by the federal courts, plaintiffs' reliance on the Vacco decision in this regard is unavailing. All cases determined, even under the previous, more inclusive Conley federal standard on motion to dismiss, require the plaintiffs to actually plead a specifically identifiable fund. Plaintiffs have failed to identify actual "funds" and merely identify a numeric value allegedly subject to conversion. The clear weight of authority mandates dismissal of this cause of action.

## B. Plaintiffs Have Failed To Plead Any Ownership Right In The Corpus Of The Captive Policy

To prevail on a cause of action for conversion, plaintiffs must establish that they have a legal ownership right to the Captive Policy corpus, and are wrongfully being denied this right by defendants. See Independence Discount Corp. v. Bressner, 47 A.D.2d 756, 757, 365 N.Y.S.2d 44 (2d Dep't 1975). New York law further requires that the plaintiffs have "ownership,

possession or control of the money" before the alleged conversion, so as to assert a claim. Aramony v. United Way of Am., 949 F.Supp. 1080, 1086 (S.D.N.Y. 1996).

Plaintiffs cannot and have not established that they are the rightful owners of the Captive Policy principal, merely pleading conclusory statements to that effect. To get around this requirement, plaintiffs contend that they are seeking replevin of GAB Robins' fees on behalf of the WTCC, and not as individuals potentially entitled to monies under the Captive Policy. (Pb at 53). In the Complaint, plaintiffs assert that "[They] were – and still are – the persons for whose benefit the WTCC was created and funded . . . so that the Plaintiffs are the constructive owners and entitled to claim, on behalf of the WTCC, the immediate possession and return of all funds improperly or excessively paid any defendant, and in particular, to Defendant Gab Robbins [sic]." (Complaint at ¶ 216).

Merely concluding that they are the individuals for whose benefit the Captive Policy was created, without setting forth additional facts, does not entitle, or legally classify plaintiffs as having ownership of the funds. Furthermore, whether or not plaintiffs are even potential beneficiaries of the Captive Policy is the province of other, pending litigation for which this claim is an attempted end-run. See In re: World Trade Center Disaster Site Litigation, S.D.N.Y Case No. 21-MC-100 (AKH). To be the legal owners, plaintiffs must show that they had title, possession, or control of the alleged fees that have been "converted" by GAB Robins, or that they have a superior right to the property at issue. Independence Discount Corp., 47 A.D.2d at 757. Entitlement under the Captive Policy has not yet been established by any court, and plaintiffs are merely attempting to circumvent the judicial process by declaring their rights on behalf of the WTCC. Such determination is not the proper province of this action, and, because plaintiffs have pleaded no factual right to ownership of the Captive Policy, they cannot claim

15

conversion and/or replevin on behalf of the WTCC. Therefore, plaintiffs' causes of action in conversion and replevin must be dismissed.

> **C.    In The Alternative, If Plaintiffs Are Found To Be Asserting Conversion and Replevin Claims On Behalf Of The WTCC, There Can Be No Relief For Conversion Where Damages Are Merely Sought For Breach Of Contract**

New York courts uniformly hold that "an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract." Peters Griffin Woodward, Inc. v. WCSC, Inc., 88 A.D.2d 883, 884, 452 N.Y.S.2d 599 (1st Dep't 1982); see also, Aramony, 949 F.Supp. at 1086; MBL Life Assur. Corp. v. 555 Realty Co., 240 A.D.2d 375, 376-77, 658 N.Y.S.2d 122 (2d Dep't 1997). This holding has been recognized by both this Court and the Second Circuit. See Fraser v. Doubleday & Company, Inc., 587 F.Supp. 1284, 1288 (S.D.N.Y. 1984); Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F.Supp. 117, 124 (S.D.N.Y. 1996); In re Chateaugay Corp., 10 F.3d 944, 958 (2d Cir. 1993) (holding that a tort claim will not arise where a plaintiff is merely seeking enforcement of the bargain).

While the plaintiffs are casting this claim as arising in common law conversion, if they are asserting the cause of action on behalf of the WTCC, it must necessarily arise in contract. The WTCC contracted with GAB Robins, under mandate of the FEMA Grant (attached to plaintiffs' declaration as Exhibit B-7), to act as the third-party claims administrator for the Captive Policy. As per the opposition brief, "plaintiffs seek the replevin of funds wrongfully paid to Defendant GAB Robbins [sic] for non-existing claim adjustment on behalf of the Captive." (Pb at 53). Accordingly, plaintiffs are seeking redress from GAB Robins, on behalf of the WTCC, for breaching its contract to provide claims administration services under the terms of the FEMA Grant. However, plaintiffs cannot, under New York law, recast a contract-based

16

claim into a common law tort "where plaintiff is essentially seeking enforcement of the [contractual] bargain." Peters Griffin Woodward, 88 A.D.2d at 884 (quotations omitted).

To succeed on conversion stemming from a contractual relationship, such as between GAB Robins and the WTCC, the breach of contract must result in a separately actionable "wrong." See Elma RT v. Landesmann Int'l Marketing Corp., No. 98-CV-3662 (LMM), 2000 WL 297197, *3 (S.D.N.Y. 2000). The Complaint must set forth facts sufficient to prove:

> (1) some actionable wrong other than breach of contract caused [plaintiffs' injuries]; (2) [they] had ownership of the funds at the time they were first converted; (3) the defendants exercised unauthorized dominion over the funds; (4) the funds were specific and identifiable; (5) the funds were to have been treated in a particular manner but were not so treated; and (6) the [plaintiffs] had no notice that the funds had been unlawfully transferred.

Citadel, 123 F.Supp. at 148-49.

In support of their alleged right to assert a cause of action for conversion and replevin, plaintiffs rely upon the arguments set forth in Citadel Management, Inc. v. Telesis Trust, Inc., supra. In Citadel, plaintiffs sought replevin of funds under a theory of conversion, where an investment company was contractually obligated to care for a certain amount of plaintiff's money. Id. at 149. In caring for these funds under the contract, it is alleged that defendants "converted plaintiff's $11 million by transferring the funds . . . to their own accounts, thereby exercising 'rights of ownership over [the money] to the exclusion of [plaintiff's] rights as rightful owner." Id. However, the court found that "[t]his claim only accounts for what [defendants] did with the funds they possessed as a result of breaching the contract with [plaintiff], rather than stating an independent conversion claim. [Defendants] had no other duty than that duty [they] took on . . . in [their] contract with [plaintiff]." Id. at 149.

Here, the only claim alleged against GAB Robins is that they failed to provide adequate claims administration services under their contract with the WTCC; the Complaint alleges no

other duty that may give rise to a tort claim from these facts. (See Pb at 53; see also Complaint at ¶¶ 216, 228). As in Citadel, plaintiffs "would be fully compensated for [their] loss if [they] prevailed on a contract claim against [GAB Robins], so no additional damages would be warranted in conversion." Id.

Furthermore, plaintiffs essentially concede that they are seeking damages for a breach of contract in their opposition. "Although, contrary to the defendants' inapposite authority, plaintiffs could legitimately claim a right of action for the contractual breaches outlined in the Complaint as injured third party beneficiaries . . . ." (Pb at 43). Therefore, because the facts as plead in the Complaint, and reargued in plaintiffs' opposition, merely present a contractual based claim for relief, and no relief for conversion can be based in breach of contract, plaintiffs have failed to set forth facts sufficient to establish liability against GAB Robins.

### D.    There Can Be No Right To Replevin Where There Is No Conversion

Grounding a right to relief in replevin requires that plaintiffs prove, or at least assert facts sufficient to support, the tort of conversion, and plead that they have "an immediate and superior right to possession of the [chattel]" Dubied Mach. Co. v. Vermont Knitting Co., Inc., 739 F.Supp. 867, 872 (S.D.N.Y. 1990). However, as argued above, plaintiffs are unable to establish, under the facts plead in the Complaint, that they have any basis for a cause of action in conversion. Without such a cause of action, there can be no remedy of replevin.

Plaintiffs' opposition alleges that "[t]he count in the Complaint for replevin is based upon [GAB Robins'] wrongful receipt and detention of the Captive's property." (Pb at 53). However, plaintiffs have been unable to (1) establish the existence of facts sufficient to plead conversion, (2) show that defendant is detaining specifically identifiable property, and (3) prove that their alleged claim is not properly a potential cause of action for breach of contract. As replevin is not

an available remedy for breach of contract, and plaintiff cannot support a cause of action for conversion, this court must dismiss plaintiffs count seeking replevin of the monies duly paid to GAB Robins for services rendered under its contract with the WTCC.

## **CONCLUSION**

For the foregoing reasons, the Complaint contains no factual allegations against GAB Robins that raise a right to relief under any of the causes of action. Therefore, GAB Robins respectfully requests that the Complaint be dismissed in its entirety.

Respectfully submitted,

Drinker Biddle & Reath LLP
500 Campus Drive
Florham Park, New Jersey 07932-1047
Attorneys for the Defendant:
GAB ROBINS NORTH AMERICA, INC.


By: */s/ Michael O. Adelman*
Michael O. Adelman (MA-3920)

Dated: October 3, 2007

19