# DrinkerBiddle&Reath
### L L P

Michael O. Adelman
973-549-7220
michael.adelman@dbr.com

*Law Offices*

500 Campus Drive
Florham Park, NJ
07932-1047

973-360-1100 phone
973-360-9831 fax
www.drinkerbiddle.com

*A Delaware Limited
Liability Partnership*

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

November 9, 2007

## Via Telecopier and U. S. Mail

Hon. Alvin K. Hellerstein, U.S.D.J.
Southern District of New York
Daniel Patrick Moynihan
United States District Court
500 Pearl Street, Room 1050
New York, New York 10007-1312

     RE:    World Trade Center Site Disaster Litigation

Dear Judge Hellerstein:

     We are counsel to defendant GAB Robins North America, Inc. ("GAB Robins") in Walcott, 07-CV-7072 (AKH), one of the World Trade Center Site Disaster actions pending before the Court. GAB Robins is the third-party claims administrator for the WTC Captive Insurance Company, Inc.[1] In accordance with my conversation with your staff, this letter briefly addresses yesterday's unheralded and unnecessary submission by plaintiff's counsel, Paul J. Napoli.

     Late yesterday, we learned for the first time that plaintiff's counsel hand delivered a cover letter enclosing a UPS package which had been sent to him by a newspaper reporter who had allegedly received it from an unnamed individual at GAB Robins. Neither Mr. Napoli, nor anyone from his firm contacted me or anyone else at Drinker Biddle either by telephone, email or otherwise with respect to his receipt of the UPS package. While we appreciate that plaintiff's counsel may be attempting to comply with his ethical obligations by providing these materials to the Court under seal, we do not believe that the means used by counsel were proper.

     Rather, because plaintiff's counsel failed to notify us of his receipt of the package (which neither counsel nor GAB Robins has yet to see or even confirm that the materials actually came from GAB Robins), the proper course would have been to simply return the materials to us. Indeed, in circumstances similar to those here, it has been recognized that a lawyer who receives on an unauthorized basis confidential materials of an adverse party should, among other things, notify the adverse party's lawyer that the receiving lawyer possesses such documents and follow the instructions of the adverse party's lawyer. See ABA Standing Committee on Ethics and Professional Responsibility, Opinion 94-382 (1994); New York State Bar Association Committee on Professional Ethics, Opinion 700 (May 7, 1998); see also NYC Eth. Op. 2003-04, 2003 WL

*Edward A. Gramigna, Jr.
Partner responsible for
Florham Park Office*

*Established 1849*

---

[1] For clearly self-serving reasons, plaintiff's counsel referred to this entity as the WTC Captive Insurance Fund, Inc.

DrinkerBiddle&Reath
L L P

Hon. Alvin Hellerstein, U.S.D.J.
November 9, 2007
Page 2

23789274, *9 (December 2003) (addressing misdirected communications).  For the Court's convenience, we have enclosed copies of the cited material.

The conduct of plaintiff's counsel in failing to provide us with any notification whatsoever is even more troubling in light of his admission that he had been advised that a copy of the papers were going to be sent directly to his office.  Equally problematic is the admission that even though counsel had been "forewarned" by a newspaper reporter that the papers were being sent to his attention, he did nothing to ensure that they would be unopened.

In light of these circumstances, we request that the Court allow us to retrieve the UPS package from Your Honor's Chambers.  Thank you for your consideration of this matter.

Respectfully submitted,

Michael O. Adelman

MOA/ss
cc:     Paul J. Napoli, Esq. (w/encl.)
        Marc J. Bern, Esq.
        Defendants' Liaison Counsel

SFNJ1 1202996v1

A lawyer may not ethically ask for nor may a lawyer agree to any further restriction unnecessarily compromising the strong policy in favor of providing the public with a free choice of counsel. *Cf.* ABA Standing Comm. on Ethics and Professional Responsibility, Formal Opinion 93-371 (1993) (finding impermissible under Model Rule 5.6(b) for the same reasons a restriction in a settlement agreement on the right of plaintiffs' counsel to represent future claimants against the defendant); ABA Standing Comm. on Ethics and Professional Responsibility, Informal Opinion 1301 (1975) (finding a corporate employer's agreement with an employee lawyer concerning post-termination employment with competitor relating to competing products to be "undesirable surplusage").

While ethical standards already in place (in Model Rule 1.9) prohibit a lawyer from undertaking some representations adverse to former clients, an agreement denying the lawyer the opportunity to represent any interest adverse to a former client is an overbroad and impermissible restriction on the right to practice.[1] Therefore, we conclude that agreements contemplated by the inquiries would violate the injunction of Model Rule 5.6(a).

**Formal Opinion 94-382**
**July 5, 1994**

**Unsolicited Receipt Of Privileged Or Confidential Materials**

*A lawyer who receives on an unauthorized basis materials of an adverse party that she knows to be privileged or confi-*

*dential should, upon recognizing the privileged or confidential nature of the materials, either refrain from reviewing such materials or review them only to the extent required to determine how appropriately to proceed; she should notify her adversary's lawyer that she has such materials and should either follow instructions of the adversary's lawyer with respect to the disposition of the materials, or refrain from using the materials until a definitive resolution of the proper disposition of the materials is obtained from a court.*

The Committee has been asked to consider the obligations of a lawyer under the Model Rules of Professional Conduct (1983, as amended) when the lawyer is offered or sent, by a person not authorized to offer them, materials of an adverse party that the lawyer knows to be, or that appear on their face to be, subject to the attorney-client privilege of an adverse party or otherwise confidential within the meaning of Model Rule 1.6.[1] The question posed addresses situations in which the lawyer *has not solicited* the production of such material and its production was not authorized by the owner of the materials. It includes situations in which the lawyer is offered such materials and has an opportunity to decline them, as well as situations in which, without notice, the materials are simply sent to, and received by, the lawyer. The question embraces both situations in which the lawyer has knowledge of the privileged and/or confidential nature of the materials before receiving them and situations in which the lawyer does not

---

[1] As noted in Informal Opinion 1301, relating to a restriction on a corporate lawyer's post-termination employment by a competitor,

From an ethical standpoint it follows that, with respect to a lawyer-employee, the avowed purpose of the restrictive covenant under consideration—protection of confidences and secrets—is already assured, given expected adherence to the Code of Professional Responsibility, and therefore the covenant appears superfluous. To further limit the

lawyer's future employment, by contract, cannot be reconciled with his professional standing and position.

[1] "The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." Model Rule 1.6 comment, paragraph 5.

recognize the confidential nature of the materials until receipt.[2]

Although the Model Rules do not offer explicit guidance on the present issue, we are persuaded by relevant public policy considerations and case law that a lawyer who, without solicitation, receives materials which are obviously privileged and/or confidential has a professional obligation to notify the adverse party's lawyer that he or she possesses such materials and either follow the instructions of the adversary's lawyer with respect to the materials, or refrain from using the materials until a definitive resolution of the proper disposition of the materials is obtained from the court.

*I. Analogous Cases.*

The present issue is similar to that considered by the Standing Committee in Formal Opinion 92-368, Inadvertent Disclosure Of Confidential Materials (November 10, 1992). In that case, a lawyer received materials that appeared on their face to be subject to the attorney-client privilege or otherwise confidential and it was clear that the materials were not intended to be sent to the receiving lawyer. We recognized that, in this advanced technological age with its frequent use of facsimile machines and electronic mail, such inadvertent disclosures frequently occur, and that today's beneficiary of such disclosures may likely become tomorrow's victim. We concluded that a lawyer receiving such materials had a professional responsibility, upon realiz-

ing the error, to avoid reviewing such materials further, to notify sending counsel if he is unaware of the error, and to follow sending counsel's directions as to the handling and disposition of such confidential materials.

Our decision was influenced by the values served by principles of confidentiality and the attorney-client privilege, analogous principles governing the inadvertent waiver of the attorney-client privilege, the law governing bailments and missent property, and general considerations of common sense, reciprocity and professional courtesy. Although we considered other competing principles—including the possible deterrent effect that allowing use of such materials might have on similar future errors, and the receiving lawyer's obligation zealously to represent the interests of her client—we concluded that these considerations were not dispositive and did not justify a rule that would allow the receiving lawyer to take advantage of such inadvertent disclosures of privileged and/or confidential materials.

The instant case is analogous. An unauthorized disclosure of privileged and/or confidential materials by anyone is, from the adverse party's perspective, no more intended and no more consensual than when disclosure occurs because of an error in transmission. We recognize, however, that from the receiving lawyer's perspective, the present situation may be somewhat distinguishable from that previously considered by the

[2]This opinion does not address situations in which the receiving lawyer or his client was involved in procuring privileged and/or confidential materials from a former employee/representative of an adverse party. In these situations, the Model Rules would prohibit the receiving lawyer from accepting an offer to receive, and from receiving or using such materials. That conclusion follows from Formal Opinion 91-359 and Model Rule 8.4. In ABA Formal Opinion 91-359, Contact with Former Employee of Adverse Corporate Party, we warned against a lawyer's seeking privileged information from former employees of an adverse party in ex parte interviews. We stated:

the potentially-communicating adversary attor-

ney must be careful not to seek to induce the former employee to violate the privilege attaching to attorney client communications to the extent his or her communications as a former employee with his or her former employer's counsel are protected by the privilege (a privilege not belonging to or for the benefit of the former employee, but the former employer)....

Model Rule 8.4 prohibits a lawyer from engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation,' and from engaging in conduct 'prejudicial to the administration of justice." *See also* New York City Bar Ass'n, Op. 89-1 (1989).

Standing Committee. In our prior opinion, the sending party did not intend to transmit the privileged and/or confidential material to the receiving lawyer. In contrast, our present question assumes that the unauthorized sender indeed intended for the receiving lawyer to receive and make use of the transmitted materials. More important, by making the disclosure, the sender may be seeking to rectify improper or unjust conduct—for example, the failure to disclose such documents in response to a production request clearly calling for them. In such instance, although the sender has no authority to make the disclosure, the receiving lawyer may be entitled to use them.

A federal court recently addressed unauthorized disclosure in *In re Shell Oil Refinery*, 143 F.R.D. 105 (E.D. La. 1992) *amended and reconsidered on other grounds*, 1992 WL 275426 (E.D. La. Sept. 29, 1992) and 144 F.R.D. 73 (E.D. La. Nov. 3, 1992), where a current employee of a party provided an adverse party with confidential documents belonging to his employer. The court prohibited the receiving party from making any use of such materials:

> The Court is concerned with preserving the integrity of this judicial proceeding. What matters is balancing the scales. That can be done by prohibiting the PLC [the receiving party] from making any use of the documents, requiring the PLC to identify and produce the documents to Shell, and prohibiting the PLC from any further ex parte contact with any Shell employees other than those who are plaintiffs in this suit.

143 F.R.D. at 108-09.

*II. State Ethics Opinions.*

A number of state bar ethics committees that have confronted this issue have concluded that the receiving lawyer has no obligation to disclose to a court or an adverse party that he or she possesses the adverse party's privileged or confidential information and that the receiving lawyer may use such materials. The Maryland Bar Association has opined that:

> A lawyer who receives from an unidentified source copies of documents belonging to an opposing party has no obligation to reveal the matter to the court or the opposing party. The lawyer should keep copies to avoid destruction of evidence; however, if the lawyer receives original documents, he must attempt to return them to the rightful owner.

Maryland Bar Ass'n, Op. 89-53 (1989).

The Virginia Bar Association has approved the use of such materials although it states that opposing counsel should be notified of their receipt as a matter of "professional courtesy":

> The [receiving] lawyer may retain, read, and make use of material from his opponent's file that was sent to him by an unknown third party.

Virginia Bar Ass'n, Op. 1076 (1988).

The Michigan Bar Association has also weighed in on this side of the issue, stating that:

> An attorney who comes into possession of a document of the opposing party during litigation may use the document at trial provided it is admissible evidence and neither the attorney nor his client in any way procured the removal of the document from the possession of the opposing party.... An attorney's mere possession of the opposing party's internal and private memorandum does not require the attorney to withdraw from his representation of his client.

Michigan Bar Ass'n, Op. CI-970 (1983).

*III. Ethical Obligations.*

Notwithstanding these state bar association opinions, the Committee is not convinced that a lawyer receiving such materials has no responsibilities upon receipt of such materials or that a law-

yer receiving such materials, consistent with his or her professional responsibilities as embodied in the Model Rules, may make unlimited use of such materials, for the reasons outlined in ABA Formal Opinion No. 92-368 and in *In re Shell*. In the Standing Committee's view, adopting such a position would place an adversary at the mercy of those who would use, on an unauthorized basis, the adversary's confidential communications. In almost all cases a party should be able to protect its proprietary interests, as in the case of confidential materials, and its privileges, as in the case of material falling within the attorney-client privilege, despite the unauthorized efforts of others to undermine or sabotage them.

At the same time, however, the Standing Committee is not convinced that the relevant standards governing a lawyer's professional responsibilities would justify an absolute rule that would prohibit a receiving lawyer from reviewing or using such materials under all circumstances. Unlike the situation that we addressed in Opinion No. 92-368, the receiving lawyer in the instant circumstances did not receive the allegedly confidential and/or proprietary materials through mere inadvertence and the receiving lawyer was not an unintended recipient of the material. In certain circumstances, the law may recognize some right to the use of the materials despite the fact that the sender had no authority to transmit them.

For example, the receiving lawyer may have a legitimate claim that the documents should have been, but were not, produced by an adverse party in response to pending discovery requests. *See In re Shell*, 1992 WL 275426 (E.D. La. Sept. 29, 1992) (ordering that such documents not be used by receiving party unless they "were the subject of a proper discovery request and were improperly withheld" by adverse parties). Or the receiving lawyer may be able to assert that the documents were received from someone acting under the authority of a whistleblowing statute. *See, e.g, Whistleblower Protection Act*, 5 U.S.C. § 1201 et seq. (1988).

An absolute rule, couched in terms of professional responsibilities, that required a receiving lawyer to return such materials could prejudice the legitimate rights of the receiving lawyer's client to employ such materials used in the prosecution or defense of a legal action. For this reason, the Standing Committee is of the opinion that a lawyer receiving such privileged or confidential materials satisfies her professional responsibilities by (a) refraining from reviewing materials which are probably privileged or confidential, any further than is necessary to determine how appropriately to proceed, (b) notifying the adverse party or the party's lawyer that the receiving lawyer possesses such documents, (c) following the instructions of the adverse party's lawyer; or (d), in the case of a dispute, refraining from using the materials until a definitive resolution of the proper disposition of the materials is obtained from a court.[3]

The procedure suggested would afford the adverse party a reasonable and timely opportunity to resort to judicial remedies to determine legal rights and allow the receiving lawyer, under appropriate circumstances, to use relevant materials in the prosecution or defense of an action on behalf of her client. Courts confronted with similar disputes in the past have been able to protect an adverse party's legal interests adequately by granting injunctive relief restraining the disclo-

---

[3]There may be situations under applicable state law in which it would be more appropriate for the receiving party not to notify opposing counsel in the first instance. For example, if the documents appear to disclose criminal activity likely to result in imminent death or substantial bodily harm, the lawyer may be obliged to consult the appropriate law enforcement authority and/or the court. Similar treatment may be appropriate where the documents in question appear to reveal ongoing crime or fraud in which opposing counsel is evidently assisting, in violation of Model Rule 1.2(d).

sure or use of trade secrets and/or privileged materials, *see American Motors Corp. v. Huffstutler*, 61 Ohio St. 3d 343, 575 N.E.2d 116 (1991), by entering protective orders, or by fashioning other judicial relief.

Although the Standing Committee does not believe that the mere unsolicited receipt of such materials constitutes a violation of a lawyer's professional responsibilities, lawyers should be aware that the receipt and/or initial review of such materials, in certain circumstances, may be the basis for a motion disqualifying the lawyer from continuing to represent its client in the matter at issue.

Undoubtedly, the receipt of such materials may give rise to accusations by an adversary that the materials were, in fact, solicited by the receiving lawyer. *See Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651 (M.D. Fla. 1992) (granting motion to disqualify counterdefendant's attorney on grounds that attorney had solicited confidential materials, and noting that "the likelihood of public suspicion outweigh[ed] the social interest that will be served by counsel's continued participation").

Similarly, a lawyer complying with the procedures outlined above may nonetheless be unjustly accused of reviewing the received materials before giving his or her adversary an adequate opportunity to seek appropriate protection from the courts. A court confronted with such allegations on a motion to disqualify may err on the side of caution—by granting the motion—in order to preserve inviolate the attorney-client privilege and in light of the ethical obligations of a lawyer to avoid the appearance of impropriety. For instance, in *Ackerman v. National Property Analysts, Inc.*, 1993 WL 258679 (S.D.N.Y. July 2, 1993), a district court granted a motion to disqualify plaintiffs' counsel on the ground that plaintiffs' counsel had improperly used confidential information obtained from former in-house counsel to defendants. The court stated that the court "must

presume" that in-house counsel had disclosed confidential information to plaintiffs' counsel and that because plaintiffs' counsel "had taken no steps to insulate itself" from information provided by in-house counsel, it "must not be permitted to take unfair advantage of its 'tainted' knowledge." *Id.*, slip op. at 8. *See also MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712, 728 (D. Conn. 1991)(granting motion to disqualify counsel, stating that a client's right to select counsel of its choice "is outweighed by [the adverse party's] interest in a trial free from the risk that confidential information has been used against it and in the public's interest in the integrity of the judicial process itself").

**Formal Opinion 94-383**
**July 5, 1994**

**Use Of Threatened Disciplinary Complaint Against Opposing Counsel**

*A lawyer's use of the threat of filing a disciplinary complaint or report against opposing counsel, to obtain an advantage in a civil case, is constrained by the Model Rules, despite the absence of an express prohibition on the subject. Such a threat may not be used as a bargaining point when the subject misconduct raises a substantial question as to opposing counsel's honesty, trustworthiness or fitness as a lawyer, because in these circumstances, the lawyer is ethically required to report such misconduct. Such a threat would also be improper if the professional misconduct is unrelated to the civil claim, if the disciplinary charges are not well founded in fact and in law, or if the threat has no substantial purpose or effect other than embarrassing, delaying or burdening the opposing counsel or his client, or prejudicing the administration of justice.*

The Committee has been asked whether a lawyer may threaten to file a disciplinary complaint against opposing

NEW YORK STATE BAR ASSOCIATION

## Committee on Professional Ethics

Opinion 700 - 5/7/98 (49-97)

Topic:    Confidentiality;  Unauthorized Disclosure; Fraud on Tribunal

Digest:    Lawyer  who  receives unsolicited  communication from former employee of adversary's law firm regarding alteration of documents may not communicate further with employee  and  should  seek judicial guidance as to use of the unauthorized communication.

Code:    Canon 7; DR 1-102 (A), DR 1-103(A), DR 4-101 (A), DR 4-101 (D), DR 7-102 (B)(2), DR 7-104(A)(1), DR 7-110 (B); EC 4-4, EC 4-5, EC 7-35

### QUESTIONS

An attorney for a government agency responsible for prosecuting an administrative proceeding received an unsolicited telephone call from a person who identified himself as a former non-lawyer employee of a law firm that represents the respondent in the proceeding.  In substance, the former employee told the attorney that certain key records submitted to the government agency in connection with its investigation of respondent had been materially altered prior to submission.  Aware of the sensitive ethical issues raised by this communication, the attorney refrained from asking the former employee any questions, such as whether the law firm is aware of the alleged alteration of documents.

This opinion addresses three questions arising from this set of facts:

1.  Whether the attorney may seek further information from the former employee regarding the allegedly altered documents;

2.  Whether the attorney must inform the respondent's law firm of the communication from its former employee; and

3.  Whether the attorney must inform the hearing officer presiding over the administrative proceeding of the communication and, if so, whether that may be done *ex parte.*

## OPINION

The questions posed implicate provisions of the Lawyer's Code of Professional Responsibility (the "Code") regarding a lawyer's duty to the client, to the adversary and to the administration of justice. In the inquiry presented, those duties may seem to conflict; nevertheless, the Committee believes that the proper course for the attorney is to refrain from exploiting the willingness of the adversary's former employee to breach the duty of confidentiality, and to seek judicial guidance regarding the use, if any, that may be made of the unauthorized communication.

*Confidentiality*

The protection of the confidences and secrets of a client are among the most significant obligations imposed on a lawyer. We assume that the communication from the former employee of respondent's law firm regarding the alteration of documents was unauthorized and may have violated the attorney-client privilege. Alternatively, the information that documents were altered prior to submission to the government agency may be a "secret" under Disciplinary Rule ("DR") 4-101(A) of the Code, which broadly defines "secret" as any non-privileged "information gained in the professional relationship . . . the disclosure of which would be embarrassing or would be likely to be detrimental to the client." The ethical obligation of a lawyer to guard the confidences and secrets of a client "exists without regard to the nature or source of information or the fact that others share the knowledge." Ethical Consideration ("EC") 4-4. Indeed, a lawyer has an ethical obligation to "exercise reasonable care to prevent his or her employees, associates, and others whose services are utilized by the lawyer from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by DR 4-101(C) through an employee." DR 4-101(D). *See also* EC 4-5 ("lawyer should be diligent in his or her efforts to prevent the misuse of such information by employees and associates").

Although the attorney did not solicit the unauthorized communication or the breach of the former employee's duty of confidentiality, the attorney may not exploit the willingness of the former employee to undermine the confidentiality rule. The Code prohibits a lawyer from engaging in conduct "involving dishonesty, fraud, deceit, or misrepresentation," DR 1-102(A)(4); and "conduct that is prejudicial to the administration of justice." DR 1-102(A)(5). We believe that further *ex parte* communications by the government attorney with the former employee to procure confidential information of the respondent would violate the letter and spirit of these Rules. *Accord MMR/Wallace Power & Indus., Inc. v. Thames Assocs.,* 764 F. Supp. 712, 718-19 (D. Conn. 1991) (spirit if not letter of ethical rules precludes an attorney from acquiring, inadvertently or

otherwise, confidential or privileged information about his adversary's litigation strategy); N.Y. City 1989-1 (client's interception of adversary's communications with counsel involved dishonesty and deceit; lawyer may not help his client take advantage of such wrongdoing). Just as a lawyer should never initiate contact with a former employee of an adversary's law firm for the purpose of obtaining confidential information of the adversary, neither may a lawyer take advantage of a former employee's willingness to violate the duty of confidentiality to the former employer's client.

The cases and ethics opinions permitting *ex parte* contacts with unrepresented former employees of a corporate adversary are not to the contrary. These opinions hold that the prohibition on such contact applies only to current employees, not to former employees. *See, e.g., Dubois v. Gradco Sys., Inc.,* 136 F.R.D. 341 (D. Conn. 1991); *Neisig v. Team I et al.,* 76 N.Y.2d 363, 558 N.E.2d 1030 (1990); ABA 359 (1991), but they are also uniform in holding that an attorney engaged in such *ex parte* contacts may not seek to obtain from former employees information that might be protected under the attorney-client privilege or the work product doctrine. As one court has observed:

> "[I]t goes without saying that, with respect to any unrepresented former employee, plaintiff's counsel must take care not to seek to induce or listen to disclosures by the former employees of any privileged attorney-client communications to which the employee was privy. After all, the privilege does not belong to, and is not for the benefit of, the former employee; rather, it belongs to, and is for the benefit of, [the former employer]." *Dubois,* 136 F.R.D. at 347.

Similarly, the inquirer here may not seek to cause the former employee of his adversary's counsel to reveal the confidences or secrets of the former employer's client. *See MMR/Wallace Power & Indus., Inc.* 764 F. Supp. at 720 (disqualifying law firm because of ex parte contact with former employee of adversary who had obtained confidential information as member of litigation team); *Williams v. Trans World Airlines, Inc.,* 588 F. Supp. 1037, 1044 (W.D. Mo. 1984) ("If information provided by a client in confidence to an attorney for the purpose of obtaining legal advice could be used against the client because a member of the attorney's non-lawyer support staff left the attorney's employment, it would have a devastating effect both on the free flow of information between client and attorney and on the cost and quality of the legal services rendered by an attorney"). *See also Plan Comm. v. Driggs,* 1998 WL 88575 (D. Md., Feb. 18, 1998) (approving communication with former in-house lawyer where crime-fraud exception was likely applicable).

Although the Code does not expressly require a lawyer to refrain from encouraging a breach of client confidentiality by opposing counsel's staff, our conclusion in this regard is supported by several decisions of other ethics committees. In ABA 368 (1992), that Committee concluded that a lawyer who receives confidential materials under circumstances where it is clear that they were not intended for the receiving lawyer (a) should not examine the materials once the inadvertence is discovered, (b) should notify the sending lawyer of their receipt, and (c) should abide by the sending lawyer's instructions as to their disposition. This and other "inadvertent disclosure"

decisions rely heavily on the strong public policy in favor of confidentiality, which the ABA and others find to outweigh heavily the competing principles of zealous representation (Canon 7) and encouraging more careful conduct (here, supervision of former employees) on the part of opposing counsel.

More recently, the ABA addressed the closely analogous situation of a lawyer who receives on an unauthorized basis confidential materials of an adverse party. ABA 382 (1994). Distinguishing the situation where the confidential materials were inadvertently supplied to the receiving lawyer, the ABA Committee declined to establish an absolute rule couched in terms of professional responsibilities that required the return of such materials. Because the receiving lawyer may be legally entitled to use the transmitted materials, the Committee opined that a lawyer receiving such privileged or confidential materials [where the sender had no authority to transmit them] satisfies his or her professional responsibilities by (a) refraining from reviewing materials which are probably privileged or confidential, any further than is necessary to determine how appropriately to proceed; (b) notifying the adverse party or the party's lawyer that the receiving lawyer possesses such documents; (c) following the instructions of the adverse party's lawyer; or (d), in the case of a dispute, refraining from using the materials until a definitive resolution of the proper disposition of the materials is obtained from a court. ABA 382 (1994). *See also* N.Y. City No. 1989-1 (unethical for lawyer to use intercepted communications unless lawyer discloses his possession of the documents and returns them to adversary).

Because it is beyond the Committee's jurisdiction to opine on questions of law, we express no opinion on whether the information regarding the altered documents loses its confidential status under the so-called "crime-fraud" exception to the attorney-client privilege. *See United States v. Zolin*, 491 U.S. 554, 563 (1989) (crime-fraud exception to the attorney-client privilege assures "that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime") (citations omitted). "The test for invoking the crime-fraud exception to the attorney-client privilege is whether there is 'reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme.'" *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996) *cert. denied,* 117 S. Ct. 1429 (1997) (quoting *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996)). Because the government attorney has no information regarding the communications (if any) between the law firm and the respondent on the subject of the altered documents, the attorney is in no position to determine whether there exists a "causal connection" or "functional relationship" between the advice given and the illegal action taken. *See United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). Accordingly, the attorney is not in a position to determine the applicability of the crime-fraud exception. As suggested below, the attorney is free to seek judicial review of the apparently confidential information received from the former employee to attempt to determine whether the information falls within the crime-fraud exception. If it does, or if the information is otherwise required to be disclosed to a tribunal, then the inquirer might no longer be bound by the important concerns underlying the confidentiality rule embodied in DR 4-101.

*Administration of Justice*

Unlike the facts in ABA 382, the attorney here has received information that suggests possible criminal activity or fraud in which opposing counsel may be assisting. There are no documents that can be returned to opposing counsel, and the attorney's duties to the tribunal may require disclosure. *See* DR 7-102 (B)(2) ("A lawyer who receives information clearly establishing that … [a] person other than the client has perpetrated a fraud upon a tribunal shall promptly reveal the fraud to the tribunal"). There is little question here that the information conveyed to the attorney by the former employee of the respondent's law firm, if true, would constitute fraud that must be revealed to the tribunal under DR 7-102(B)(2). In such circumstances, we believe it would be appropriate for the attorney, on notice to opposing counsel, to notify the hearing officer presiding over the proceeding of the allegation. Such a course will satisfy the attorney's possible ethical duties under DR 7-102 (B)(2) and will also allow the tribunal to address the legal issues (such as applicability of crime-fraud exception, and whether the actions of the former employee constitute a civil or criminal wrong) affecting the receiving lawyer's ability to use the communication and any evidence derived therefrom. *See Fayemi v. Hambrecht & Quist, Inc.,* 174 F.R.D. 319 (S.D.N.Y. 1997) (court has authority to limit the use of evidence because of the manner in which the information was obtained outside the litigation process). The communication to the hearing tribunal regarding the allegedly altered documents should not be made on an *ex parte* basis, as DR 7-110(B) of the Code generally prohibits communications "as to the merits of the cause with a judge or an official before whom the [adversary] proceeding is pending." *See also* EC 7-35 ("[o]rdinarily an oral communication by a lawyer with a judge or hearing officer should be made only upon adequate notice to opposing counsel").

The inquirer may, however, bring the allegation of document alteration to the attention of another court or other appropriate authority (such as a law enforcement agency or disciplinary authority) on an *ex parte* basis if the attorney reasonably concludes that it would not be appropriate to notify opposing counsel in the first instance. *See* for example, DR 1-103(A) (duty to report in certain circumstances another lawyer's violation of DR 1-102 to a tribunal or other authority empowered to investigate or act upon the violation).

## CONCLUSION

A lawyer who receives an unsolicited and unauthorized communication from a former employee of an adversary's law firm may not seek information from that person if the communication would exploit the adversary's confidences or secrets. Where the information communicated involves alleged criminal or fraudulent conduct in which opposing counsel may be assisting, the receiving lawyer should communicate with a tribunal or other appropriate authority to get further direction as to the use of the information.

———————————

Westlaw.

NYC Eth. Op. 2003-04, 2003 WL 23789274
(N.Y.C.Assn.B.Comm.Prof.Jud.Eth.)

Page 1

NYC Eth. Op. 2003-04, 2003 WL 23789274
(N.Y.C.Assn.B.Comm.Prof.Jud.Eth.)

The Association of the Bar of the City of New York
Committee on Professional and Judicial Ethics

**\*1 TOPIC: INADVERTENT DISCLOSURE OF
COMMUNICATIONS CONTAINING
CONFIDENCES OR SECRETS; DUTY TO
PRESERVE CONFIDENCES AND SECRETS;
OBLIGATION OF ZEALOUS
REPRESENTATION; OBLIGATION TO
REFRAIN FROM CONDUCT PREJUDICIAL TO
THE ADMINISTRATION OF JUSTICE**

December 2003

DIGEST: When a lawyer receives a letter, fax, e-mail or other communication containing confidences or secrets that the lawyer knows or reasonably should know were transmitted by mistake, the lawyer confronts a number of issues implicating the administration of justice, respect for the attorney-client relationship and the obligation to zealously represent one's own client. This opinion examines the various approaches to these issues and concludes that a lawyer receiving a misdirected communication containing confidences or secrets (1) has obligations to promptly notify the sending attorney, to refrain from review of the communication, and to return or destroy the communication if so requested, but, (2) in limited circumstances, may submit the communication for in camera review by a tribunal, and (3) is not ethically barred from using information gleaned prior to knowing or having reason to know that the communication contains confidences or secrets not intended for the receiving lawyer. However, it is essential as an ethical matter that the receiving attorney promptly notify the sending attorney of the

disclosure in order to give the sending attorney a reasonable opportunity to promptly take whatever steps he or she feels are necessary.

CODE: DR 1-102(A)(5), DR 4-101, DR 7-101(A), DR 9-102(C).

**OBLIGATIONS UPON RECEIVING A
COMMUNICATION CONTAINING
CONFIDENCES OR SECRETS NOT
INTENDED FOR THE RECIPIENT**

**QUESTIONS:**

What are the ethical obligations of the lawyer who receives a misdirected communication containing confidences or secrets? Must the lawyer notify the sender? Must the lawyer return the communication and/or destroy all copies? May the lawyer review the communication? May the lawyer use information learned from the communication?

**OPINION:**

A lawyer who receives a misdirected communication containing confidences or secrets should promptly notify the sender and refrain from further reading or listening to the communication, and should follow the sender's directions regarding destruction or return of the communication. However, if there is a legal dispute before a tribunal and the receiving attorney believes in good faith that the communication appropriately may be retained and used, the receiving attorney may submit the communication for in camera consideration by the tribunal as to its disposition. Additionally, the receiving attorney is not prohibited as an ethical matter from using the information to which the attorney was exposed before knowing or having reason to know the communication was inadvertently sent. However, it is essential - as an ethical matter - that the receiving attorney promptly notify the sending attorney of the disclosure in order to give the sending attorney a reasonable opportunity to promptly take whatever steps he or she feels are necessary.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

NYC Eth. Op. 2003-04, 2003 WL 23789274
(N.Y.C.Assn.B.Comm.Prof.Jud.Eth.)

## DISCUSSION:

**\*2** As advances in technology have made communication easier, so too they have made mistakes in transmission of those communications easier as well. It is therefore not surprising that the legal ethics community first began to devote attention to the problem of the misdirected communication in the late 1980s, when the fax became a widespread method of communication. The problem has attracted even more attention as electronic mail has become commonplace. From the perspective of legal ethics, the questions arising from misdirected communications are identical whether the error in transmission stems from pressing the wrong speed-dial button on a fax machine, mistakenly choosing the "all counsel" e-mail list, or simply putting a letter to client in an envelope mistakenly addressed to opposing counsel: What are the ethical obligations of the lawyer who receives a misdirected communication containing confidences or secrets? Must the lawyer notify the sender? Must the lawyer return the communication and/or destroy all copies? May, or must, the lawyer review the communication and use the information learned for the benefit of the lawyer's client?[FN1]

## I. Prior Approaches

Ethics opinions and rules have been far from uniform in answering these questions, finding varied obligations with respect to notification of the sender, return or destruction of materials and use of information learned from them.

### A. Obligation to Notify and/or Return

#### 1. Notify and Return Upon Request

One of the first bodies to address the question of the lawyer's obligations upon receiving a misdirected communication was the ABA Standing Committee on Ethics and Professional Responsibility (the " ABA Committee"). In Opinion 92-368 (1992), the ABA Committee concluded that a lawyer who receives a misdirected communication from another lawyer "should notify the sending lawyer of their receipt and should abide by the sending lawyer's

instructions as to their disposition." Acknowledging that existing disciplinary rules did not clearly address the issue, the ABA Committee based its conclusion upon, among other things, the profession's overarching interest in protecting the confidentiality of client communications, analogies to the obligations of bailees under common law principles, and a version of the "golden rule" (i.e., " [w]hile a lawyer today may be the beneficiary of the opposing lawyer's misstep, tomorrow the shoe could be on the other foot.")

Several ethics bodies have formally concurred in whole or in part with ABA Opinion 92-368. For example, in July 2002, the New York County Lawyers' Association's Ethics Committee issued Opinion 730 ("NY County Opinion 730"), concluding that the absence of a directive regarding misdirected communications in New York's Code of Professional Responsibility did not relieve lawyers of the obligation to "share responsibility for ensuring that the fundamental principle that client confidences be preserved - the most basic tenet of the attorney-client relationship - is respected ...." And in 1995, the Association of the Bar of the City of New York's Committee on Professional Responsibility issued a report, "Ethical Obligations Arising Out of an Attorney's Receipt of Inadvertently Disclosed Information," Record of the Association of the Bar of the City of New York, Vol. 50, No. 6, p. 660 (1995) (the "1995 ABCNY Report"). The 1995 ABCNY Report recommended a new Disciplinary Rule codifying the position advanced in ABA Opinion 92-368. The new rule would have required attorneys receiving inadvertently-sent documents to refrain from examining the documents, notify the sender, and abide the sending party's instructions regarding return or destruction.

#### 2. Notify Only

**\*3** But when the ABA itself adopted a new ABA Model Rule of Professional Conduct addressing inadvertent disclosure, it did not impose obligations as broad as those set forth in ABA Opinion 92-368. In February 2002, the ABA adopted Model Rule 4.4(b), which provides: "A lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

NYC Eth. Op. 2003-04, 2003 WL 23789274
(N.Y.C.Assn.B.Comm.Prof.Jud.Eth.)

Page 3

know that the document was inadvertently sent shall promptly notify the sender." While Model Rule 4.4(b), like ABA Opinion 92-368, requires the lawyer to notify the sender of the receipt of a misdirected document, it does not obligate the lawyer to take any further steps. The Comment to Model Rule 4.4 suggests that if any additional obligation exists, it exists solely by virtue of substantive law, not principles of legal ethics.

A number of state bar ethics opinions similarly only require notification. See, e.g., Maine Prof. Ethics Comm. of the Bd. of Overseers, Opinion 146 (Dec. 9, 1994); Florida Bar Ass'n Comm. on Prof'l Ethics Opinion 93-3 (Feb. 7, 1994). Still others have endorsed alternative obligations, requiring notice and return when the receiving lawyer is aware that the disclosure is inadvertent (as per ABA Opinion 92-368), but requiring only notice (as per Model Rule 4.4(b)) when the receiving lawyer reviews a communication before realizing that its disclosure was inadvertent. See, e.g., Colorado Bar Ass'n Ethics Comm. Opinion 108 (May 20, 2000).

### 3. Retain

At least one ethics body has opined that a lawyer who receives a misdirected communication has no obligation to notify the sender or to abide by the sender's request for return of all copies of the communication. See Philadelphia Bar Ass'n Prof. Guidance Comm. Opinion 94-3 (June 1994). The Philadelphia opinion appears to be based on the view, although not explicitly stated, that the ethical duty to represent one's client zealously within the bounds of the law not only permits but requires the lawyer to employ all resources at the lawyer's disposal, including those obtained due to another person's mistake, so long as those resources were obtained without the lawyer's wrongdoing. See generally David J. Stanoch, Comment, "Finders ... Weepers?": Clarifying a Pennsylvania's Lawyer's Obligations to Return Inadvertent Disclosures, Even After a New ABA Rule 4.4(b), 75 Temple L. Rev. 657 (2002). See also Monroe Freedman, The Errant Fax, Legal Times, Jan. 23, 1995, at 26 (advocating that inadvertently disclosed communications should be exploited for the benefit of a receiving attorney's clients).

### B. Use Of Information Contained In The Communication

Opinions also are divided on the questions whether the receiving lawyer may review the communication and whether the lawyer may use the information learned from that review. Some opinions, such as ABA Opinion 92-368 and NY County Opinion 730, decline to draw any distinction for ethical purposes between the lawyer's obligations vis-a-vis the physical communication, on the one hand, and the information contained therein, on the other. See ABA Opinion 92-368 ("Any attempt by the receiving lawyer to use the missent letter for his own purposes would thus constitute an ' unauthorized use."'); see also Virginia Legal Ethics and Unauthorized Practice Opinion 1702 (Nov. 24, 1997).

*4 Others, however, draw such a distinction and permit use, at least to the extent the lawyer has reviewed the communication in good faith before realizing it was missent. See, e.g., Colorado Opinion 108; D.C. Bar Legal Ethics Comm. Opinion 256 (May 16, 1995); Illinois State Bar Ass'n Advisory Opinion 98-04 (Jan. 1999); Kentucky Bar Ass'n Ethics Opinion E-374 (1995); Maine Opinion 146 (December 9, 1994). Some of these opinions were influenced by cases holding that even an inadvertent disclosure of a privileged communication can, under certain circumstances, waive the attorney-client privilege such that an adversary may review and use information to which they would not otherwise have access. See, e.g., Maine Opinion 146 at 5 ("So long as use of the memorandum is permitted by the Federal Rules of Evidence or Procedure, use of the memorandum cannot be said to be prejudicial to our adversary system of litigation.") (footnote omitted); D.C. Ethics Opinion 256. Other bodies that prohibit retention but permit use have noted the practical problem of requiring lawyers to "unlearn" information they already have learned through review of the misdirected communication. See, e.g., D.C. Opinion 256; Ohio Opinion 93-11 ("Once confidential material has been examined even briefly, the information cannot be purged from the mind of the attorney who inadvertently receives it.").

Similarly, the rule proposed by the 1995 ABCNY Report did not proscribe use and put the burden on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

NYC Eth. Op. 2003-04, 2003 WL 23789274
(N.Y.C.Assn.B.Comm.Prof.Jud.Eth.)

Page 4

the sender "to seek court protection to limit the recipient's use of the document." Meanwhile, one of the most recent states to adopt a formal rule regarding inadvertent disclosure has determined that a receiving lawyer should notify the sender and refrain from use "for a reasonable period of time in order to permit the sender to take protective measures." Arizona State Supreme Court Rule of Prof'l Conduct 42, ER 4.4(b) (eff. Dec. 1, 2003). [FN2]

## II. Analysis

As we are addressing ethical obligations of attorneys in New York, we ultimately must look to New York's Code of Professional Responsibility to determine if it gives rise to obligations similar to or different than those recognized in the variety of opinions described above. Guidance on this subject is particularly important given that the Code has no specific rule addressing the issue and eight years have passed since the 1995 ABCNY Report recommended adopting such a rule.

As explained further below, we conclude that a receiving lawyer has obligations under the New York Code to notify, return and refrain from review of inadvertent disclosures, particularly when considering the duties of a lawyer not to engage in conduct prejudicial to the administration of justice, to preserve client confidences and secrets and to represent clients with zeal but within the confines of the law. At the same time, we concur with those authorities finding that a blanket proscription on use of inadvertent disclosures in all situations extends too far. Accordingly, we acknowledge that there are limited circumstances where ethical rules alone do not bar use of such information, particularly where, as more specifically set forth below, the receiving attorney has a good faith basis to argue that inadvertent disclosure has resulted in waiver of a privilege or where the receiving attorney has been exposed to confidential information prior to knowing or having reason to know that the communication was misdirected.

## A. Foundations in the Code for Obligations Triggered By Receipt of Inadvertent Disclosures.

*5 Inadvertent disclosure brings into tension two fundamental rules of the Code: the duty to preserve confidences and secrets of a client pursuant to DR 4-101 and the duty to zealously represent a client by using reasonably available means permitted by law under DR 7-101(A). The Committee believes that this tension can be resolved by focusing the issues presented by inadvertent disclosure through the lens of DR 1-102(A)(5), which prohibits "engag[ing] in conduct that is prejudicial to the administration of justice."

Obligations of a receiving attorney with respect to a misdirected communication containing confidences or secrets cannot rest squarely on the duties imposed by DR 4-101. After all, the receiving attorney has no attorney-client relationship with the client whose information is exposed. The Code nevertheless recognizes that preservation of client confidences and secrets is crucial to stability of the legal system. As EC 4-1 states, "the proper functioning of the legal system require[s] the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ the lawyer." Failing to notify the sender of an inadvertent disclosure would deprive the sending attorney of the opportunity to seek appropriate protection for the disclosed information and thereby prejudice the administration of justice. Likewise, reading beyond the point where the lawyer knows or reasonably should know that the communication is an inadvertent disclosure of confidences or secrets undermines the duty incumbent on all attorneys pursuant to DR 1-102(A)(5) to respect the foundations on which our legal system is based.

Other opinions construing DR 1-102(A)(5) lend support to the conclusion that a lawyer receiving an inadvertent communication may not freely exploit it without undermining the administration of justice. For example, this Committee previously has opined that when a lawyer receives from his client adversarial attorney-client communications that the client, without the attorney's knowledge, intercepted, the lawyer must notify the adversary attorney and return the communications. ABCNY Comm. Prof'l. Jud. Ethics Opinion 1989-1. As the Committee explained, "[h]aving such information gives the inquirer and his client an advantage that, however slight, they are not entitled to have, and to permit them to retain that advantage, of which the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

NYC Eth. Op. 2003-04, 2003 WL 23789274
(N.Y.C.Assn.B.Comm.Prof.Jud.Eth.)

Page 5

opposing party and counsel are unaware, would in the Committee's opinion be prejudicial to the administration of justice and, therefore, ethically impermissible."

Meanwhile, the New York State Bar Association's Ethics Committee has opined that an attorney's use of software to extract otherwise inaccessible information about the drafting history of an adversary's e-mail or its attachments would be prejudicial to the administration of justice to the extent the technology could expose confidential information or secrets. New York State Opinion 749 (2001). Similarly, in New York State Opinion 700 (1998), the same committee concluded that accepting from an adversary's former paralegal unsolicited information that disclosed the adversary's confidences or secrets would prejudice the administration of justice. Though the conduct at issue in these opinions was more active and deliberate than reviewing and using a misdelivered communication, the conduct that the State Bar ethics committee considered to be prejudicial to the administration of justice shares vital characteristics with the conduct considered here. In each instance, an attorney has reviewed information that the opposing party and their counsel do not want the receiving attorney to see; and, in each, the receiving attorney has gained access to the information without the opposing party's knowledge or intent.

**\*6** At the same time a lawyer must not engage in conduct prejudicial to the administration of justice, the same lawyer must fulfill the dictates of DR 7-101 , entitled "Representing a Client Zealously," to " seek the lawful objectives of the client through reasonably available means." But that obligation is explicitly qualified: the "reasonably available means " must be those "permitted by law and the disciplinary rules." DR 7-101(A)(1). It therefore is necessary to consider generally applicable legal principles in determining the extent, if any, to which the obligation to remain within the bounds of the law constrains a lawyer's conduct upon receipt of a misdirected communication containing confidences or secrets.

This Committee's review of relevant legal principles suggests that the ethical obligation of zeal does not require a lawyer to retain and/or use misdirected confidential communications. To the contrary, those

principles direct the opposite. As the ABA Committee observed in Opinion 92-368, those who find or otherwise come into possession of lost property must, under the law of bailments, return it to the owner upon request. See, e.g., Jesse Dukeminier, Property, at 65, 83-86 (2d ed. 1988). That is also the rule outside the context of bailments. For example, when a bank mistakenly credits funds to the wrong account, principles of restitution require the recipient of the mistakenly transferred funds to notify the transmitting bank and to return them. American Law Institute, Restatement of the Law of Restitution § 126 (1937); Banque Worms v. BankAmerica Int'l, 77 N.Y.2d 362, 366-67, 570 N.E.2d 189, 191-92, 568 N.Y.S.2d 591 (1991).

The same is true for mail. Mail that has not reached its intended recipient, either because it has been misaddressed by the sender or misdelivered by the postal service, must be returned to the sender by the wrongful recipient as soon as they learn of the error. "Once it is clear to the unintended recipient that the letter has been misdelivered or misaddressed, he knows that he has no business opening the mail and then possessing it." United States v. Coleman, 196 F.3d 83, 86 (2d Cir. 1999). Failures to return misdelivered mail have been the subject of successful federal criminal prosecutions. See, e.g., id.; United States v. Palmer, 864 F.2d 524 (7th Cir. 1988); United States v. Douglas, 668 F.2d 459 (10th Cir. 1982); United States v. Lavin, 567 F.2d 579 (3d Cir. 1977).

This Committee perceives no reason why the well-established principles applicable to misdirected property and communications should not apply in the context of legal ethics. From an ethical perspective, misdirected faxes and e-mail, on the one hand, and misdelivered mail, on the other, are identical. See D.C. Ethics Opinion 256 (" A [misdirected communication] comes to the lawyer with 'notice' that it does not belong to him. In that sense, it is little different than a wallet found on the street: if the finder knows that it does not belong to him, and should he appropriate to himself the wallet's contents, the finder engages in the tort of conversion.") Because established legal principles require a lawyer to return and not make use of mistransmitted funds or mail, so too the rules of legal ethics generally should require the lawyer to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

NYC Eth. Op. 2003-04, 2003 WL 23789274
(N.Y.C.Assn.B.Comm.Prof.Jud.Eth.)

Page 6

return and refrain from using a misdirected communication.[FN3]

*7 Note also should be taken of a provision appearing under Canon 9, entitled "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." Rule 9-102(C) specifically addresses a lawyer's obligations with respect to funds or property belonging to another. Thus, a lawyer must " promptly notify a client or third person of the receipt of funds, securities or other properties in which the client or third party has an interest," DR 9-102(C)(1), and, if requested, similarly must " promptly pay or deliver" those funds or properties to the person entitled to receive them, DR 9-102(C)(4). As noted by a recent commentator, the Code does not define what is meant by "other properties" nor gives any indication that the rule was intended to apply to misdirected confidential communications or their content. Barry Tempkin, Errant E-Mail: Inadvertent Disclosure of Confidential Material Poses Dilemma, 230 New York Law Journal (Oct. 14, 2003). Nevertheless, these provisions reflect the Code's acknowledgment of ethical principles consistent with the legal principles described above regarding misdirected mail and funds.

**B. Use of Inadvertently Disclosed Confidences or Secrets**

Notwithstanding the above precepts, an absolute rule requiring return or destruction of all copies and barring use of an inadvertently disclosed confidential communication in all circumstances would itself be prejudicial to the administration of justice. In two limited contexts, we find no ethical bar to use of inadvertently disclosed material.

First, lawyers should not be constrained in their right to argue that inadvertent disclosure, in appropriate circumstances, has waived the attorney-client or other applicable privilege.[FN4] See, e.g., New York Times Co. v. Lehrer McGovern Bovis, Inc., 300 A.D.2d 169, 172, 752 N.Y.S.2d 642, 646 (1st Dep't 2002) (finding no waiver); S.E.C. v. Cassano, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) (finding waiver). Ordinarily, to make such an argument, the attorney will not need to review or disclose the content of the inadvertent

communication. None of the factors courts commonly employ in assessing whether a disclosure of privileged communication has resulted in a waiver of privilege requires the court to consider the communication's content. See, e.g., New York Times Co., 300 A.D.2d at 172, 752 N.Y.S.2d at 645-46 (reciting factors); Cassano, 189 F.R.D. at 85 (same). There may, however, be instances where the content of the communication is germane to a waiver determination and in such an instance a lawyer should be free to provide the communication to the presiding tribunal for its consideration of the issue.

Likewise, there may be occasions when the communication does not in fact contain a confidence or secret and should be produced in connection with a litigated matter. The administration of justice would be prejudiced if a receiving attorney were not ethically permitted to bring to a tribunal's attention a document that had been improperly held from production but which the attorney learned of only through inadvertent disclosure.

*8 Thus, we conclude that a receiving lawyer may ethically retain a misdirected communication for the sole purpose of presenting it to a tribunal for in camera review, if the lawyer (1) promptly notifies the sending lawyer about the mistaken transmission, and, if requested, provides a copy to the sending lawyer, (2) believes in good faith, and in good faith anticipates arguing to the tribunal, that the inadvertent disclosure has waived the attorney-client or other applicable privilege or that the communication may not appropriately be withheld from production for any other reason, and (3) reasonably believes disclosing the communication to the tribunal is relevant to the argument that privilege has been waived or otherwise does not apply.

This limited permitted use does not, however, apply in the circumstance where a receiving attorney - prior to having received an inadvertent disclosure - is on notice that a confidential communication has been transmitted by mistake and should be returned without review to the sending attorney. In such a situation, there effectively has been no "disclosure" and the receiving attorney knows prior to receiving the communication that it contains confidences or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

NYC Eth. Op. 2003-04, 2003 WL 23789274                                                    Page 7
(N.Y.C.Assn.B.Comm.Prof.Jud.Eth.)

secrets. See American Express v. Accu-Weather, Inc., 91 Civ. 6485, 1996 WL 346388 (S.D.N.Y. June 25, 1996) (favorably citing ABA Opinion 92-368 and sanctioning attorneys who ignored sending counsel's instruction to return a not-yet-opened package of documents containing a privileged communication).

A more difficult question arises with respect to use of inadvertently disclosed information when the receiving attorney has reviewed part or all of the communication before having reason to know that the communication was not intended for that attorney. In many instances, an attorney should know before reviewing the content of a communication that it is a confidential communication intended for someone else and will be ethically proscribed from reviewing its content. In other instances, however, the lawyer will not know or have reason to know of the inadvertent disclosure until after having started to review the communication's content. The lawyer thereby will have learned confidential information that cannot simply be erased from memory.

For example, suppose a lawyer receives a one-page fax saying, "Offer $100,000, but you have authority to settle for up to $300,000." We believe it is not realistic to expect that the attorney, once being exposed to this information, can forget it and continue litigating or negotiating without the information influencing the attorney's course of action. To put the attorney at ethical risk for using information that cannot be suppressed from knowledge potentially would penalize the innocent receiving attorney and their client for the error of another.

Likewise, there may be instances where the confidential information disclosed is of the type to which the Code does not accord full protection from disclosure. For example, DR 4-101(C)(3) permits a lawyer to reveal the intention of a client to commit a crime and the information necessary to prevent the crime. A blanket prohibition on use of inadvertently disclosed information would have the peculiar effect of according an individual's intent to commit a crime greater protection when learned of through inadvertent disclosure than when disclosed to one's own attorney. The administration of justice does not countenance such an outcome. Similar concerns

would be raised if the misdirected communication revealed an intention of the sender or a third party to take harmful and wrongful steps against the receiving lawyer's client in the future (e.g., as by destroying relevant documents or suborning perjury).

**\*9** Nothing in this opinion, however, should preclude a sending attorney from seeking relief before a tribunal to prevent a receiving attorney from using inadvertently disclosed confidential information. Although ethical rules may not preclude use, governing law, rules of evidence, or other principles may limit or preclude use. Accordingly, it is essential - as an ethical matter - that a receiving attorney promptly notify the sending attorney of an inadvertent disclosure in order to give the sending attorney a reasonable opportunity to promptly take whatever steps he or she feels are necessary to prevent any further disclosure of the information at issue.

The above approach best harmonizes the Code's concerns for the administration of justice, client confidences and secrets, and zealous representation. We recognize that critics may raise voices on both sides of the fence. Some might fear that an exception permitting even limited use of information learned from a misdirected communication will invite attorneys to read further in misdirected communications than they would read if they were not allowed to use the information at all. That is a valid concern but one which is tempered by the ethical obligations described in this opinion and which does not justify a blanket prohibition that otherwise prejudices the administration of justice.

On the other hand, some may advocate for unfettered use of inadvertent disclosures, arguing that this will fortify the attorney-client privilege (and consequently the administration of justice) by creating disincentives for careless disclosures. See, e.g., Int'l Digital Sys. Corp. v. Digital Equip. Corp., 120 F.R.D. 445, 450 (D. Mass. 1998) ("a strict rule that 'inadvertent' disclosure results in a waiver of the privilege would probably do more than anything else to instill in attorneys the need for effective precautions against such disclosure"). There is some merit to this point as well. The law is not without harsh consequences for law office

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

NYC Eth. Op. 2003-04, 2003 WL 23789274                                              Page 8
(N.Y.C.Assn.B.Comm.Prof.Jud.Eth.)

administrative failures. Consider, for example, statutes of limitations and appellate deadlines may foreclose legal rights when there is no good cause to excuse an administrative lapse. But we believe the " incentive" rationale is overstated when the carelessness in question is as innocent and as difficult to deter as attaching the wrong file attachment to an e-mail or pressing the wrong speed dial button on a fax machine. The practice of law is not a card game or sport. Some administrative errors are unavoidable and should be corrected, not exploited.[FN5] See United States v. Rigas, No. 02 CR 1236, 2003 WL 22203721, at *8 (S.D.N.Y. Sept. 22, 2003) (citing favorably ABA Opinion 92-368 and observing that attorneys "bear responsibility for acting in accordance with ethical norms of the legal profession, independent of any incentives or disincentives ...").

### III. Conclusion

Receipt of an inadvertent communication containing confidences or secrets triggers ethical obligations for the receiving attorney. A lawyer who receives such a communication should promptly notify the sender and refrain from further reading or listening to the communication and should follow the sender's directions regarding destruction or return of the communication. If, however, the receiving attorney believes in good faith that the communication appropriately may be retained and used, the receiving attorney may, subject to the conditions set forth in this opinion, submit the communication for in camera consideration by a tribunal. Where the receiving attorney has been exposed to content of the communication prior to knowing or having reason to know that the communication was misdirected, the attorney is not barred, at least as an ethical matter, from using the information. However, it is essential as an ethical matter that a receiving attorney promptly notify the sending attorney of an inadvertent disclosure in order to give the sending attorney a reasonable opportunity to promptly take whatever steps he or she feels are necessary to prevent any further disclosure.[FN6] Following these directives fulfills the obligation not to engage in conduct prejudicial to the administration of justice and appropriately balances the interests in both preserving client confidences and secrets and zealously representing

one's own client.

FN1. This Opinion addresses issues arising only from misdirected communications. It does not address questions arising from an attorney's receipt of confidential information obtained by other means, such as when a third party intentionally provides confidential information. See, e.g., New York State Bar Ass'n Opinion 700 (1998) (curtailing actions of lawyer receiving unsolicited and unauthorized disclosure of confidential or secret information from former employee of adversary firm).

FN2. New Jersey is another state that recently has adopted a formal rule regarding receipt of inadvertent disclosures. New Jersey Rule of Professional Conduct 4.4(b) (eff. Jan. 1, 2004) makes no distinction between confidential and non-confidential information and requires a receiving lawyer who has reasonable cause to believe the document was inadvertently sent to not read (or stop reading) the document, promptly notify the sender and return the document to the sender. The New Jersey rule does not address the question of use of information learned prior to the receiving lawyer's having reasonable cause to believe the document was inadvertently sent.

FN3. This Opinion is directed specifically to inadvertent communications containing confidences or secrets. We recognize, however, that much of the reasoning based on principles governing misdirected property and funds applies to misdirected communications of any type, not only those containing confidences or secrets. Indeed, those principles, along with respect for professional courtesy (see DR 7-101(A)(1)), suggest that attorneys should notify senders of and, if asked, return to them misdirected communications of any type. See, e.g., 1995 ABCNY Report (proposing rule encompassing any inadvertently produced document); Comments to ABA Model Rule 4.4(B) ( "the obligation is the same regardless of whether the document appears confidential"). Because of the special concern attending client confidences and secrets, however, this Opinion focuses on those communications.

FN4. This Opinion does not address whether an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

NYC Eth. Op. 2003-04, 2003 WL 23789274                              Page 9
(N.Y.C.Assn.B.Comm.Prof.Jud.Eth.)

inadvertent disclosure in discovery during litigation does in fact waive the attorney-client privilege or any other privilege or protection but merely acknowledges that the argument has been made and accepted by courts. Moreover, we note the increasingly popular practice in litigation of entering into agreements containing explicit provisions as to how the parties will deal with documents inadvertently produced during discovery. This practice appears to be a useful means of establishing ground rules and clarifying the parties' expectations, particularly where, as discussed further below, ethics rules and legal principles do not provide easy answers in all circumstances.

FN5. The Committee stresses, however, that attorneys who review or use misdirected communications in violation described here should not ordinarily be disqualified. See ABCNY Formal Opinion 2001-1 (receipt of unsolicited e-mail communication from potential client does not require disqualification of the attorney from continuing to represent a different client with adverse interests). Just as the receiving lawyer should not be able to exploit the sending lawyer's error, so too the sending lawyer should not be able to exploit their own error. Moreover, were disqualification to be among the available sanctions for violating the obligation not to review misdirected communications, that possibility could create incentives for improper gamesmanship. Attorneys and/or their clients might deliberately send otherwise confidential communications to their adversaries or their counsel, claiming mistake, in the hope of "tainting" the receiving lawyers and thereby establishing a basis for disqualification. Though such a tactic would be dishonest and worthy of sanctions, the deliberate nature of such misconduct might be difficult to detect. Accordingly, the Committee believes the best way to prevent such deception is to eliminate the possibility that it might be advantageous.

FN6. In any event, and as observed earlier, even if ethical rules do not foreclose an attorney from using inadvertently disclosed confidential information in particular circumstances, substantive or evidentiary legal principles may do so. Accordingly, any attorney contemplating use of such information should proceed with caution.

NYC Eth. Op. 2003-04, 2003 WL 23789274
(N.Y.C.Assn.B.Comm.Prof.Jud.Eth.)
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.